

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., <br><br> Plaintiff, <br><br> v. <br><br> LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2. <br><br> Defendants. | 07CV 6625 <br> JUDGE CONLON <br> MAGISTRATE JUDGE DENLOW <br><br> Magistrate Judge <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

### I.    INTRODUCTION

1.    This case arises out of LifeWatch's attempted theft of two CardioNet heart monitoring kits containing CardioNet's valuable trade secrets and LifeWatch's efforts to cover up and justify its actions with multiple and inconsistent lies. LifeWatch continues to illegally retain one of the CardioNet kits despite CardioNet's repeated demands that the kit be returned immediately.

### II.    ALLEGATIONS CONCERNING THE PARTIES

2.    CardioNet, Inc. ("CardioNet") is a corporation organized and existing under the laws of the State of California, whose headquarters are located at 1010 Second Avenue, Suite 700, San Diego, California 92101.

3.    Upon information and belief, LifeWatch Corporation ("LifeWatch") is a Delaware corporation, whose headquarters are located at 10255 West Higgins Road, Suite 100, Rosemont, Illinois, 60018.

4.     CardioNet and LifeWatch are competitors in the heart monitoring business.

5.     Upon information and belief, Hanna Konarzewka, M.D. ("Konarzewka") is a contractor or employee of defendant LifeWatch, and a resident of Cook County, Illinois. Konarzewka joined LifeWatch in May of 2007 as the on site Medical Advisor and Director of its Monitoring Program. Konarzewka also continues to work at Loyola University, and to practice as the Medical Director of Electrophysiology at Swedish Covenant Hospital and as EP Cardiologist at Oak Park Cardiology in the Chicago area.

6.     Upon information and belief, Doe 1 and Doe 2 are employees of defendant LifeWatch, and residents of Cook County, Illinois. Although CardioNet knows the true names and capacities of the defendants named in this action as Doe 1 and Doe 2, CardioNet has not identified them at this time in order to ensure full compliance with its privacy obligations pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). Upon filing this Complaint, CardioNet intends to submit a motion to this Court seeking an Order allowing CardioNet to identify Doe 1 and Doe 2 and amend the Complaint accordingly, because identifying Doe 1 and Doe 2 for the purposes of this lawsuit would not reveal personal health information subject to protection under HIPAA.

### III.     JURISDICTION

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     Jurisdiction also arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

### IV.     VENUE

9.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) and (c). Venue is proper in this Court because, among other things, Defendant LifeWatch is a corporation that is subject to personal jurisdiction in the United States District Court for the Northern District

of Illinois. Similarly, upon information and belief, Defendants Doe 1, Doe 2, and Konarzewka are residents of the Northern District of Illinois.

## V.    INTRA-DISTRICT ASSIGNMENT

10.     Assignment of this action to the Eastern Division is proper because a substantial part of the events giving rise to the claims alleged herein occurred in this Division, where there were meetings and communications giving rise to this action, and where Defendants are located.

## VI.    FACTUAL ALLEGATIONS

### A.    Plaintiff CardioNet and Defendant LifeWatch are Competing Providers of Cardiac Monitoring Services.

11.     Plaintiff CardioNet was the first company to offer an ambulatory outpatient wireless telemetry system for monitoring a p.kmatient's heart while the patient is at home, at work or traveling. Once enrolled with CardioNet, physicians prescribe CardioNet's Mobile Cardiac Outpatient Telemetry ("MCOT") kit for patients for a short-term period up to 21 days of monitoring the patient's heart's electrocardiogram signal. CardioNet's MCOT kit monitors patients' hearts 24 hours a day as the patients continue with their normal daily routine. A patient using the CardioNet MCOT kit wears a lightweight, three lead sensor (the "sensor"). The sensor communicates with a small mobile monitor (the "monitor") that can be carried in a pocket or purse. The monitor, sensor, and other miscellaneous equipment necessary to operation, such as bases, power cords, cases and guides, altogether comprise the CardioNet MCOT kit. A complete inventory of the equipment comprising the kit is shown in Exhibit A. If the patient experiences certain cardiac events, an electrocardiogram is transmitted from the monitor to CardioNet's monitoring center. The MCOT kit performs its monitoring and transmitting functions without the need for any manual intervention from the patient whatsoever.

12.     CardioNet's MCOT kits are issued to patients who are then obligated to return the systems at the end of the short-term monitoring period. The patient (or his insurance) is responsible for the cost of monitoring, but does not pay for the actual MCOT kit itself. CardioNet does not sell its MCOT kits. The systems are only available by prescription to

-3-

patients with health conditions that require this type of the electrocardiogram monitoring program.

13.    As a condition of receiving the MCOT kit, a patient must agree to return the kit to CardioNet immediately upon completion of monitoring. The patient's affirmative assent to this obligation is required as part of the activation process. Screenshots of the activation process are attached hereto as Exhibit B.

14.    As shown on the first screen shown in Exhibit B (identified on Exhibit B as IDD_Patient_Consent_1), the patient must press yes or no to the statement: "I agree to the terms and conditions of the Assignment of Benefits and Services Agreement." The patient may only activate the device by pressing "yes" and accepting the Assignment of Benefits and Services Agreement.

15.    A copy of the Assignment of Benefits and Services Agreement which every patient must accept to activate the CardioNet device is attached as Exhibit C to this complaint. A copy of the Assignment of Benefits and Services Agreement is provided to patients with the CardioNet MCOT kit.

16.    The Assignment of Benefits and Services Agreement provides that patients will only use the MCOT for heart monitoring and that they will not allow third-parties such as LifeWatch to tamper with or reverse engineer the device:

> **1. Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service **solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician**. . . . **Patient shall not**, in whole or in part, sublicense, **provide access to, tamper with**, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, **disassemble, or reverse engineer or create a derivative work of the System or Service**. Patient shall not, in whole or in part, transfer or assign this Agreement or

> any right granted hereunder, except upon the prior written consent
> of CardioNet. Any prohibited transfer or assignment shall be null
> and void. Subject to the licenses granted herein, as between
> CardioNet and Patient, **CardioNet holds all right, title and
> interest in and to the System and the Service including, without
> limitation, any patents, trademarks, trade secrets, copyrights
> or other intellectual property rights therein**. CardioNet reserves
> all rights not expressly granted to Patient under this Agreement.

Exhibit C (emphasis added).

17.     In addition to agreeing to the Assignment of Benefits and Services Agreement, the patient must agree during activation of the CardioNet device that "I will return the CardioNet Monitor Equipment immediately upon completion of monitoring," (See Exhibit B as IDD_Patient_Consent_3). By so agreeing, a contractual obligation is created, obligating the patient to immediately return the MCOT kit upon completion of monitoring.

18.     CardioNet's MCOT kits contain confidential, proprietary and trade secret information that have made CardioNet the industry leader in mobile heart monitoring with the most advanced system. CardioNet's monitoring equipment incorporates millions of dollars of engineering and investigative research that CardioNet has invested in the development and improvement of its system. The MCOT kits also incorporate confidential, proprietary and trade secret software, which is subject to protection under the United States copyright laws.

19.     CardioNet has taken reasonable measures to protect the trade secrets incorporated in its devices from disclosure to the public and competitors. CardioNet never sells its monitoring equipment. CardioNet allows patients who have a prescription for cardiac monitoring to have access to the CardioNet monitoring equipment only if they agree to the Assignment of Benefits and Services Agreement (exhibit C) and the device activation acceptance screens (exhibit B).

20.     Defendant LifeWatch is a competitor of CardioNet, marketing a competing ambulatory cardiac telemetry system.

**B.      Defendant Konarzewka Wrote False Prescriptions for LifeWatch Employees Does 1 and 2 for CardioNet's MCOT Services.**

21.      On information and belief, on or about September 11, 2007, defendant Konarzewka wrote prescriptions for CardioNet's MCOT services for Does 1 and 2, which provided for 21 days of cardiac monitoring for each. On information and belief, Konarzewka wrote prescriptions for Doe 1 and Doe 2 in order to allow defendant LifeWatch to unlawfully obtain CardioNet's MCOT kits. Given these factual circumstances, identifying Does 1 and 2 does not disclose personal health information subject to protection under HIPAA, and CardioNet will move the Court for an Order allowing Doe 1 and Doe 2 to be identified in an amended version of this Complaint.

22.      On information and belief, pursuant to Konarzewka's false prescriptions, on September 11, 2007, CardioNet provided both Doe 1 and Doe 2 with heart monitoring devices for the purpose of a diagnostic test. Both Doe 1 and Doe 2 paid cash for these diagnostic tests even though they were both insured employees of LifeWatch. On information and belief, CardioNet alleges that Doe 1 and Doe 2 paid cash in order to conceal from CardioNet that LifeWatch was the employer of Doe 1 and Doe 2.

23.      On information and belief, Doe 1 and Doe 2 both agreed to the Assignment of Benefits and Services Agreement and agreed that they would return the CardioNet MCOT kit "immediately" upon completion of monitoring. Both Doe 1 and Doe 2 activated their systems, and activation is not possible without agreeing to these obligations, as explained *supra* in Paragraphs 13 to 17 and Exhibits B and C.

**C.      Doe 1 Used a Cardiac Simulator to Fake a Heart Attack.**

24.      On information and belief, on the afternoon of October 26, 2007, Doe 1 used his CardioNet MCOT kit with a cardiac simulator, causing signals to be transmitted to the CardioNet monitoring center of a false cardiac emergency. Upon receiving the false data, CardioNet's monitoring center contacted emergency rescue personnel. Chicago authorities responded to a call based on the fraudulent transmission by sending emergency rescue personnel to the home of

Doe 1. In fact, there was no emergency, because the CardioNet MCOT kit was not monitoring Doe 1, but was instead attached to a machine that simulated a cardiac emergency.

25.    On information and belief, the fact that Doe 1 used a cardiac simulator to fake a heart attack confirms that CardioNet's MCOT kit was not obtained for the valid purpose of monitoring a suspected heart condition in Doe 1 serious enough to require CardioNet's MCOT kit. To the contrary, it shows that Konarzewka improperly prescribed the system, and Doe 1 improperly obtained it, for the purpose of allowing LifeWatch to improperly obtain the system in order to wrongfully acquire CardioNet's confidential, proprietary and trade secret information.

**D.    Both Doe 1 and Doe 2 Failed to Immediately Return Their MCOT Kits At the End of Monitoring As They Had Agreed, and Doe 2 Falsely Claimed to Have Lost the Kit.**

26.    Doe 1 and Doe 2 did not immediately return their MCOT kits at the conclusion of monitoring as they had agreed during the activation process. CardioNet contacted both individuals and demanded the return of the kits. Doe 1 did not return his kit until November 15, 2007.

27.    At first, Doe 2 claimed her MCOT kit was lost by a third party moving service, though, upon information and belief, it was sent to her current address. Later, Doe 2 claimed that she did not know how or when it was lost. At one time, she even claimed she could not look for it because her basement light was burnt out. As recently as November 19, 2007, Doe 2 called CardioNet, still claiming she had lost its MCOT kit. Doe 2 has still not returned her MCOT kit, despite repeated demands from CardioNet that she do so.

28.    On information and belief, Defendants conspired to and did convert the CardioNet MCOT kits prescribed to Does 1 and 2 for their own wrongful use, including the misappropriation of CardioNet's confidential, proprietary and trade secret information.

E.    **After CardioNet Made Formal Demand for Return of Its MCOT Kit, LifeWatch Admitted That It Has CardioNet's Equipment, But Claims It Had a Right to Steal CardioNet's Kits And Lie to CardioNet.**

29.    On November 16, 2007, CardioNet's counsel sent cease and desist letters to LifeWatch and Konarzewka, demanding return of its devices. Up to this time, Defendants' story had been that the MCOT kits were legitimately prescribed, and Doe 2's failure to return the kit was merely because she lost it. Doe 1 never explained his delay in returning the kit.

30.    However, on November 20, 2007, LifeWatch's counsel wrote to CardioNet's counsel and, without denying that it had CardioNet's MCOT kit, for the first time claimed LifeWatch's actions were "taken with the intent to ensure that its patents or other proprietary rights have not been infringed."

31.    After receiving the letter from LifeWatch's counsel on November 20, 2007, CardioNet's counsel called LifeWatch's counsel to request the immediate return of the device. LifeWatch's counsel refused to confirm whether LifeWatch had the device, and refused to cooperate in its return.

32.    In a subsequent telephone conversation on November 23, 2007, LifeWatch's counsel admitted that LifeWatch had the CardioNet monitoring kit. LifeWatch's counsel refused to describe what had been done by LifeWatch with the kit other than stating that LifeWatch was investigating potential claims against CardioNet. LifeWatch's counsel refused to allow CardioNet's representatives to pick up the kit.

33.    As a direct result of Defendants' acts, CardioNet has had to undertake investigative and remedial measures, and upon information and belief, LifeWatch has also obtained confidential, proprietary and trade secret information from its unauthorized and improper access to and use of the CardioNet MCOT kit.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF 18 U.S.C. § 1030 (COMPUTER FRAUD AND ABUSE ACT)**

**(AGAINST ALL DEFENDANTS)**

34.    CardioNet re-alleges and incorporates by reference paragraphs 1 through 33 as though fully stated herein.

35.    Upon information and belief, by the acts plead above, Defendants violated 18 U.S.C. § 1030(a)(5)(A)(i) of the Computer Fraud and Abuse Act, by knowingly causing the transmission of information, and as a result of such conduct, intentionally caused damage without authorization to a protected computer. The CardioNet monitor and the monitoring center constitute protected computers within the meaning of the Act.

36.    Upon information and belief, Defendants obtained and activated MCOT kits under false pretenses, and then transmitted simulated cardiac signals to the CardioNet monitoring center, allowing them to examine and test the CardioNet system in order to obtain CardioNet's confidential, proprietary and trade secret information. That information reflects and incorporates millions of dollars of engineering and investigative research that CardioNet has invested in the development and improvement of its system. Upon information and belief, Defendants also knowingly causing the transmission of information (a false signal of cardiac emergency) to CardioNet's monitoring center, resulting in the dispatch of emergency personnel to Doe 1's home.

37.    Upon information and belief, by these acts Defendants also violated 18 U.S.C. § 1030(a)(5)(A)(ii), by intentionally accessing a protected computer without authorization, and as a result of such conduct recklessly caused damage, and also violated 18 U.S.C. § 1030(a)(5)(A)(iii), by intentionally accessing a protected computer without authorization, and as a result of such conduct caused damage.

38.    As a direct and proximate result of Defendants' acts in violation of the Computer Fraud and Abuse Act, CardioNet has had to undertake investigative and remedial measures,

causing losses to CardioNet in the past 1-year period aggregating at least $5,000 in value, to be determined at trial. 18 U.S.C. § 1030(a)(5)(B)(i).

39.     Upon information and belief, Defendants' improper and unauthorized use of the CardioNet MCOT kit with a cardiac simulator to transmit false cardiac signals to the CardioNet monitoring center caused impairment or potential impairment of CardioNet's medical examination, diagnosis, treatment, or care of one or more individuals, (18 U.S.C. § 1030(a)(5)(B)(ii)), by, *inter alia*, impairing or potentially impairing CardioNet's monitoring of legitimate patients, and by requiring the dispatch of Chicago emergency personnel to Doe 1's house for a false cardiac event.

40.     Upon information and belief, Defendants' improper and unauthorized use of the CardioNet MCOT kit with a cardiac simulator to transmit false cardiac signals to the CardioNet monitoring center, with the result that emergency medical technicians were dispatched to the home of Doe 1 for a false cardiac event, caused a threat to public health or safety. 18 U.S.C. § 1030(a)(5)(B)(iv).

41.     Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet because Defendants' continued possession of the MCOT kit fraudulently prescribed to Doe 2, and possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits, threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of the confidential, proprietary, and trade secret information incorporated into these systems. Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

## SECOND CLAIM FOR RELIEF

## CONVERSION (AGAINST ALL DEFENDANTS)

42.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 41 as though fully stated herein.

43.     CardioNet owns all rights to ownership and possession of the MCOT kit provided to Doe 2, because under the terms of its monitoring agreements, ownership of the kit stayed with CardioNet, and the kit was required to be returned to CardioNet immediately upon cessation of monitoring.

44.     CardioNet has an absolute and unconditional right to the immediate possession of the MCOT kit, because the short-term monitoring period has expired.

45.     CardioNet has made demand on Doe 2 and LifeWatch for return of its MCOT kit.

46.     Upon information and belief, Defendant Doe 2, acting as agent for defendant LifeWatch, and in conspiracy with defendants Konarzewka and Doe 1, has wrongfully and without authorization assumed ownership over her MCOT kit, falsely reporting it as lost to CardioNet, and refusing to return it.

47.     As a direct and proximate result of Defendants' conversion of this MCOT kit, CardioNet has suffered substantial damages in an amount in excess of the Court's jurisdiction to be determined at trial.

48.     Upon information and belief, Defendants' conversion, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet because Defendants' continued possession of the MCOT kit fraudulently prescribed to Doe 2, and possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits, threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of confidential, proprietary, and trade secret information incorporated into these systems.  Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

49.     Upon information and belief, at the time Defendants converted the MCOT kit, Defendants were guilty of malice, oppression, and a willful and conscientious disregard for the rights of CardioNet in that Defendants, without making any investigation and with reckless indifference and willful and conscious disregard of the rights of any person who may have had an interest in the property, and particularly the rights of CardioNet, did convert the property.

50.     Further, after knowledge and notice of CardioNet's interest in the converted property was given to Defendants, Defendants failed and refused, and continue to fail and refuse, to return the MCOT kit. By reasons of these acts CardioNet has been oppressed and seeks punitive and exemplary damages.

### THIRD CLAIM FOR RELIEF

### REPLEVIN (AGAINST ALL DEFENDANTS)

51.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 50 as though fully stated herein.

52.     CardioNet is, and at all times mentioned herein was, the owner of the MCOT kit prescribed to Doe 2. CardioNet's MCOT kits are not available for sale, and so there is no readily ascertainable market price. However, the CardioNet MCOT kit prescribed Doe 2 reflects and incorporates millions of dollars of engineering and investigative research that CardioNet has invested in the development and improvement of its system, and incorporates confidential, proprietary and trade secret software, which is subject to protection under the United States copyright laws.

53.     Upon information and belief, Doe 2 and LifeWatch have retained possession of the MCOT kit that CardioNet provided to Doe 2, despite CardioNet's demands for return of the kit, and despite Doe 2's contractual obligation to return the kit immediately to CardioNet upon the cessation of monitoring.

54.     Doe 2 has not retained the CardioNet MCOT kit for any tax, assessment, or fine levied by virtue of any law of the State of Illinois, against the property of CardioNet, or against CardioNet individually, nor seized the MCOT kit under any lawful process against the goods and chattels of CardioNet subject to such lawful process, nor held the kit by virtue of any order for replevin against CardioNet.

55.     CardioNet seeks an order of replevin from this Court, requiring Doe 2 and LifeWatch to immediately return the MCOT kit to CardioNet.

## FOURTH CLAIM FOR RELIEF

## COMMON LAW FRAUD (AGAINST ALL DEFENDANTS)

56.    CardioNet re-alleges and incorporates by reference paragraphs 1 through 55 as though fully stated herein.

57.    Upon information and belief, Defendants made false and fraudulent statements of fact to CardioNet, including, but not limited to, representations that Doe 1 and Doe 2 have cardiac health conditions warranting prescribing the CardioNet MCOT kit;  that defendant Konarzewka's prescriptions to Doe 1 and Doe 2 were for the purpose of monitoring the cardiac health conditions of Doe 1 and Doe 2; that Doe 1 and Doe 2 obtained the CardioNet MCOT kits for the purpose of monitoring their cardiac health conditions; and that Doe 1 and Doe 2 intended to comply with the promises made to CardioNet in the Assignment of Benefits and Services Agreement (Exhibit C) and in activating the device as shown in Exhibit B.  Upon information and belief, Defendants knew these statements were false.

58.    CardioNet had a right to rely on the statements and did, in fact, rely on the statements in deciding to provide Doe 1 and Doe 2 with CardioNet MCOT kits.

59.    Upon information and belief, Defendants' false statements to CardioNet were made for the purpose of inducing CardioNet to provide Doe 1 and Doe 2 with CardioNet MCOT kits.

60.    CardioNet's reliance upon Defendants' false statements led to CardioNet's injury in the loss of the MCOT kits and the wrongful acquisition of the MCOT kits, and the proprietary, confidential and trade secret information contained therein, by its competitor defendant LifeWatch.

61.    If not for the false representations by Defendants, CardioNet would not have provided Doe 1 and Doe 2 with CardioNet MCOT kits.

62.    Upon information and belief, Defendants' acts of deception were outrageous, because performed with malice, an evil motive and/or with reckless indifference to CardioNet's

rights. Therefore, CardioNet is entitled to recover exemplary damages against Defendants in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

## BREACH OF CONTRACT (AGAINST DOE 1 AND DOE 2)

63.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 62 as though fully stated herein.

64.     Doe 1 and Doe 2 each entered into agreements as part of the activation process as shown in Exhibits B and C to this complaint and described above.

65.     Upon information and belief, Doe 1 and Doe 2 each breached their agreements with CardioNet by:

>    a.  Using the MCOT kits for purposes other than monitoring pursuant to a prescription;

>    b.  Failing to return the MCOT kits once monitoring ended;

>    c.  Providing third-parties including LifeWatch with access to the kits for misappropriation of trade secrets and reverse engineering.

66.     As a direct and proximate result of breaches of their agreements by Doe 1 and Doe 2, CardioNet has sustained and will continue to sustain substantial damages in an amount to be determined at trial.

67.     CardioNet has no adequate remedy at law against these breaches of contract as alleged herein. Unless the agreements are specifically enforced, CardioNet will suffer irreparable harm.

## SIXTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH CONTRACT (AGAINST LIFEWATCH)

68.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 67 as though fully stated herein.

69.     LifeWatch has improperly interfered with and, if not enjoined, will continue to interfere with CardioNet's agreements with Doe 1 and Doe 2 by inducing Doe 1 and Doe 2 to

enter into contracts with CardioNet under false pretenses and to breach those contracts by the acts described above.

70.    CardioNet has been and continues to be injured in its business and property and has sustained and will continue to sustain substantial damage.

71.    CardioNet has been damaged in an amount to be determined in accordance with proof at trial. CardioNet has no adequate remedy at law against this intentional interference with contractual relations. Unless LifeWatch is restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

72.    CardioNet is informed and believes and on that basis alleges that LifeWatch's interference with contractual relations was and is willful and malicious, and was and is intended to obtain an unfair competitive advantage such that CardioNet is entitled to recover exemplary damages against LifeWatch in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF

### MISAPPROPRIATION OF TRADE SECRETS (AGAINST ALL DEFENDANTS)

73.    CardioNet re-alleges and incorporates by reference paragraphs 1 through 72 as though fully stated herein.

74.    Upon information and belief, by the acts set forth in detail above Defendants have used and disclosed, and threaten to use and disclose CardioNet's trade secrets as embodied in its MCOT kits, in order to avoid incurring the time, effort, and expense of independently developing such trade secret information for use in LifeWatch's competing cardiac monitoring product. Defendants' acts constitute misappropriation and threatened misappropriation of trade secrets within the meaning of the Illinois Trade Secret Act (765 ILCS 1065 *et seq.*).

75.    Upon information and belief Defendants' misappropriation is ongoing and unless restrained from doing so, Defendants will continue to misappropriate CardioNet's trade secrets to unfairly compete with CardioNet.

76.     As a result of Defendants' misappropriation, CardioNet has sustained actual damages, and LifeWatch has been unjustly enriched in an amount to be determined in accordance with proof at trial.

77.     Defendants' continuing misappropriation, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet, because it threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of the trade secrets incorporated into the CardioNet MCOT kits. Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

78.     Defendants' misappropriation and threatened misappropriation of CardioNet's trade secrets was and is willful and malicious. Accordingly, CardioNet is entitled to recover exemplary damages against Defendants in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

## COMMON LAW UNFAIR COMPETITION (AGAINST ALL DEFENDANTS)

79.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 78 as though fully stated herein.

80.     Defendants' acts as alleged above constitute unfair competition under the governing common law.

81.     As a direct and proximate result of Defendants' unfair competition, CardioNet has suffered substantial damages in an amount in excess of the Court's jurisdiction to be determined at trial.

82.     Defendants' unfair competition, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet because Defendants' continued possession of the MCOT kit fraudulently prescribed to Doe 2, and possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits, threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of the confidential, proprietary, and trade

secret information incorporated into these systems. Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

83.    CardioNet is informed and believes that Defendants' acts of unfair competition were outrageous, because performed with malice, an evil motive and/or with reckless indifference to CardioNet's rights. Therefore, CardioNet is entitled to recover exemplary damages against Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff CardioNet prays for judgment as follows:

1.    On each of the Claims for Relief, compensatory damages according to proof at trial;

2.    On the First, Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief, for unjust enrichment, accounting and restitution in an amount to be determined at trial;

3.    On the Second, Fourth, Sixth, Seventh and Eighth Claims for Relief, punitive damages according to proof at trial;

4.    On the Third Claim for Relief, for an order of replevin requiring Doe 2 and LifeWatch to immediately return the MCOT kit to CardioNet.

5.    On the Fifth Claim for Relief, for an order specifically enforcing the contracts and requiring Doe 2 to immediately return the MCOT kit to CardioNet.

6.    On the First, Second, Fourth, Seventh and Eighth Claims for Relief, for a preliminary and permanent injunction against LifeWatch, its agents, and persons acting in concert with it, including Doe 1, Doe 2, and Konarzewka:

    a.    Requiring the immediate return of the CardioNet MCOT kit prescribed to Doe 2;

    b.    Requiring a full accounting under oath of how both MCOT kits were used and accessed while in Defendants' possession;

    c.  Requiring the return of any of CardioNet's confidential, proprietary, or trade secret information, including any information obtained from examination, use or testing of the CardioNet MCOT kits; and

    d.  Enjoining the copying and use of any confidential, proprietary or trade secret information, including source code, obtained from examination, use or testing of the CardioNet MCOT kits.

7.     For an award of attorneys' fees expended in bringing and maintaining this action;

8.     For prejudgment interest in an amount to be determined at trial;

9.     For costs incurred in bringing this action; and

10.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,
CARDIONET, INC.

Dated: November 26, 2007

By: _Alisa Simmons_

Thomas L. Duston
Gregory J. Chinlund
Alisa C. Simmons
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive, 6300 Sears Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

FOLGER LEVIN & KAHN LLP
Michael F. Kelleher (pro hac vice application to be filed)
Julie L. Fieber (pro hac vice application to be filed)
Amy L. Kashiwabara (pro hac vice app. to be filed)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiff CARDIONET, INC.

# EXHIBIT A



# RETURN CHECKLIST

## ABOUT THE DEACTIVATION MESSAGE

When your monitoring period is complete, a message will appear on your monitor.

You do not need to call CardioNet. It is your responsibility to return the kit as soon as possible so that other patients can benefit from using this valuable service, and to avoid being charged for the equipment.



| Please follow these steps the morning your prescription is complete: |
|---|
| ✓ 1. Take off the sensor.  Remove the sensor battery. |
| ✓ 2. Turn off the monitor. Press the blue button then press "Yes" on the screen. |
| ✓ 3. Disconnect the base(s) from your phone(s). |
| ✓ 4. Complete the Patient Satisfaction Survey. |
| ✓ 5. Place everything neatly back in the foam so it is not damaged during shipping. |
| ✓ 6. Place the blue box in the reusable UPS shipping box you originally received with the CardioNet Kit. |
| ✓ 7. Close the shipper box by following the illustrations provided on the reusable shipping box. |
| ✓ 8. If you have received more than one monitor, please return the other monitor(s) in the box provided. |

# EXHIBIT B



Plug-n-Play

Activation Mode
(Configured)

IDD_ACTIVATION MODE

This Monitor is
programmed for

#000

Sensor #001

Is this correct?

Yes        No

IDD_PATIENT_CONSENT_1

I agree to the
Terms & Conditions in the
Assignment of Benefits &
Service Agreement.

Yes        No

IDD_PATIENT_CONSENT_2

I have received
CardioNet's Notice of
Confidentiality and Privacy
Practices

Yes        No

IDD_PATIENT_CONSENT_3

I will return the
CardioNet Monitoring
Equipment
immediately upon
completion of monitoring

Yes        No

IDD_PATIENT_CONSENT_4

I will allow CardioNet to
use my data without my
personal information for
research purposes

Yes        No

IDD_CALL FOR PASSWORD

CardioNet will provide
you with a password
during your scheduled
appointment.
Please remove
Monitor from base
and turn it off.

Cell Strength: #006

Back        Continue

IDD_BEGIN_MONITORING_PASSWORD

1    2    3
4    5    6
7    8    9
.    0    #

Clear    Cancel/Enter

IDD_INVALID_PASSWORD

Invalid Password

OK

error

cancel

# EXHIBIT C



## Assignment of Benefits & Service Agreement

**Please read this before accepting the agreement on the monitor. You will be asked to accept the terms of this agreement prior to the activation of your monitor. Answering "Yes" to the questions on the monitor's touch screen prior to activation is your acceptance of the terms listed in this document.**

I request authorized health insurance (including governmental sponsored plans such as Medicare) benefits to me or on my behalf for any services furnished me by CardioNet to be paid directly to CardioNet. I authorize any holder of medical and/or insurance information to release requested information to CardioNet and/or my insurer as required to facilitate the processing of health claims provided under this agreement. This assignment includes all dates of services rendered by CardioNet for all insurance plans.

### SERVICE AGREEMENT

Financial Terms
I understand that I am fully responsible for any co-payments, co-insurance, deductibles, all payments made directly to me by my insurer for CardioNet services, and when allowed by law, services not-covered (not payable) under my health insurance plan.

I acknowledge that I am financially responsible for the loaned CardioNet Monitoring System (sensor, monitor, bases, and accessories), which I am obligated to return to CardioNet upon completion of the service. If I do not immediately return the Monitoring System, I hereby authorize CardioNet to invoice me for, and agree to pay CardioNet, the value of the Monitoring System and any associated collection costs should collection or legal costs be incurred by CardioNet.

### OPERATIONAL NOTICES

I hereby acknowledge that, given the variance in cellular phone coverage and signal strength, the CardioNet Monitoring System may not always provide continuous transmission of my ECG rhythm to the CardioNet Service Center. In the event that there is no cellular phone coverage or adequate signal strength to transmit recorded events, I will move to an area to optimize transmission capability or connect the monitor and base to a direct telephone line as requested.

I hereby acknowledge that the CardioNet Monitoring System is intended to aid in diagnosis only, and is not designed for prevention or treatment of any event or condition. I agree to immediately discontinue use of the CardioNet Monitoring System upon any sign of discomfort or problems directly related to the CardioNet Monitoring System, and to promptly report such discomfort or other problems to CardioNet.

I give CardioNet my consent and permission to communicate with other members of my household, if necessary, with regard to my CardioNet service. I also authorize CardioNet to provide my monitoring data to my physician and his /her staff and to Emergency Medical Services by phone, e-mail, fax or through secure Internet access.

**I CERTIFY THAT I UNDERSTAND AND AGREE TO THE FOREGOING TERMS AND TO THE CARDIONET STANDARD TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS FORM.**

I will also be asked to give CardioNet permission to use my monitoring data, **without my identity**, in clinical research and case studies. This is an option and not required to continue to receive CardioNet monitoring services.

1. **Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician. Patient expressly acknowledges and agrees that the Service, which is available only by physician prescription, is used solely to assist physicians in diagnosis and treatment, and is not intended for use as an emergency response system for patients who may experience serious or life-threatening medical problems. Patient is aware that cell phone coverage limitations and delays in land-line telephone communications could significantly delay transmission and analysis of patient monitoring data. Patient agrees to contact CardioNet immediately if problems are experienced using the system or if signs of physical discomfort occur, and to discontinue use of the system if the physician or CardioNet believe service discontinuation is advisable. Patient shall not, in whole or in part, sublicense, provide access to, tamper with, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, disassemble, or reverse engineer or create a derivative work of the System or Service. Patient shall not, in whole or in part, transfer or assign this Agreement or any right granted hereunder, except upon the prior written consent of CardioNet. Any prohibited transfer or assignment shall be null and void. Subject to the licenses granted herein, as between CardioNet and Patient, CardioNet holds all right, title and interest in and to the System and the Service including, without limitation, any patents, trademarks, trade secrets, copyrights or other intellectual property rights therein. CardioNet reserves all rights not expressly granted to Patient under this Agreement.

2. **Term and Termination.** This Agreement shall commence on the date that CardioNet accepts Patient's enrollment hereunder, and shall continue until terminated by either party as set forth herein. Either party may terminate this Agreement, for any or no reason, upon thirty (30) days' written notice to the other party, except that this Agreement shall immediately terminate if Patient breaches Paragraph 1 above. Upon any termination of this Agreement, Patient shall immediately discontinue all use of the Service, and shall promptly return the System to CardioNet. The limitations in Paragraph 1, and Paragraphs 3-6 shall survive any termination of this Agreement.

3. **QUALCOMM and Wireless Carrier Limitations.** Patient acknowledges that in providing the Service hereunder, CardioNet may utilize a digital telephone service that is furnished to CardioNet via Qualcomm Inc. ("QUALCOMM") by a wireless carrier ("Wireless Carrier") pursuant to an agreement between QUALCOMM and such Wireless Carrier and is subject to the terms, conditions and limitations therein set forth. Patient acknowledges and agrees that: (a) the CardioNet Service may be temporarily refused, interrupted, curtailed or otherwise limited because of Wireless Carrier network transmission limitations caused by any factor, including atmospheric, environmental or topographical conditions, Wireless Carrier facilities limitations or constraints, or Wireless Carrier facilities changes, modifications, updates, relocations, repairs, maintenance or other similar activities necessary for the proper or improved operation of the Wireless Carrier facilities; and (b) situations may arise due to highly concentrated usage in limited areas on the Wireless Carrier network, which may result in Patient encountering temporary capacity constraint-related symptoms, such as excessive call blocking or call dropping. In no event is CardioNet, QUALCOMM or the Wireless Carrier liable to Patient with respect to any claim or damage related to or arising out of or in connection with: (i) any such temporary capacity constraint; (ii) any coverage gap; or (iii) any temporary Service refusal, interruption, curtailment or other limitation because of transmission limitations caused by any factor, including atmospheric, environmental or topographical conditions, Wireless Carrier facilities limitations or constraints, or Wireless Carrier facilities changes, modifications, updates, relocations, repairs, maintenance or other similar activities necessary for the proper or improved operation of the Wireless Carrier facilities. PATIENT FURTHER ACKNOWLEDGES THAT CARDIONET, QUALCOMM AND THE WIRELESS CARRIER DISCLAIM ALL LIABILITY OF ANY NATURE TO PATIENT, WHETHER DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL, ARISING OUT OF PATIENT'S USE OF THE CARDIONET SYSTEM OR SERVICE, AND PATIENT AGREES THAT PATIENT SHALL HAVE NO CLAIMS AGAINST CARDIONET, QUALCOMM OR THE WIRELESS CARRIER OF ANY KIND WITH RESPECT THERETO.

4. **NO WARRANTY.** THE SYSTEM AND THE SERVICE ARE PROVIDED BY CARDIONET HEREUNDER SOLELY ON AN "AS-IS" AND "AS AVAILABLE" BASIS WITHOUT WARRANTY OF ANY KIND. TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, CARDIONET HEREBY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT AND/OR QUIET ENJOYMENT, AS WELL AS ANY IMPLIED WARRANTIES OTHERWISE ARISING OUT OF COURSE OF DEALING, COURSE OF PERFORMANCE OR TRADE USAGE. PATIENT FURTHER ACKNOWLEDGES AND AGREES THAT CARDIONET SHALL NEITHER BE RESPONSIBLE NOR LIABLE FOR PATIENT'S INABILITY TO ACCESS OR USE THE SERVICE AS A RESULT OF ANY DEFICIENCY IN THE INTERNET, THE TELEPHONE SERVICE, OR OTHER CONNECTION BETWEEN CARDIONET AND PATIENT. PATIENT EXPRESSLY ACKNOWLEDGES AND AGREES THAT NEITHER THE SYSTEM, NOR THE SERVICE (AS WELL AS ANY SUPPORT GIVEN BY ANY CARDIONET SUPPORT STAFF), NOR ANY MATERIAL AVAILABLE THROUGH PATIENT'S USE OF THE SYSTEM OR SERVICE IS INTENDED TO PROVIDE PATIENT WITH MEDICAL ADVICE, A DIAGNOSIS OR TREATMENT. PATIENT MUST ALWAYS SEEK THE ADVICE OF PATIENT'S PHYSICIAN OR OF ANOTHER QUALIFIED MEDICAL PRACTITIONER WITH ANY QUESTIONS PATIENT MAY HAVE REGARDING A SPECIFIC MEDICAL CONDITION OR PERCEIVED CONDITION.

5. **LIMITATION OF LIABILITY.** TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW: (I) IN NO EVENT SHALL CARDIONET OR ITS LICENSORS OR SUPPLIERS BE LIABLE TO PATIENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT INCLUDING, WITHOUT LIMITATION, LOST PROFITS, COSTS OF DELAY, ANY FAILURE OF DELIVERY, BUSINESS INTERRUPTION, COSTS OF LOST OR DAMAGED DATA, UNAUTHORIZED DISCLOSURE TO OR ACCESS OF PATIENT DATA, OR LIABILITIES TO THIRD PARTIES ARISING FROM ANY PERSONAL INJURY OR PROPERTY DAMAGE CLAIM OR ANY OTHER TYPE OF CLAIM, EVEN IF CARDIONET HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; AND, (II) IN NO EVENT SHALL CARDIONET'S AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE AMOUNT PAID BY PATIENT TO CARDIONET UNDER THIS AGREEMENT. THE PARTIES AGREE THAT THE ALLOCATION OF LIABILITY SET FORTH IN THIS SECTION 5 FORMS AN ESSENTIAL BASIS OF CARDIONET'S WILLINGNESS TO GRANT PATIENT THE USE OF THE SYSTEM AND ACCESS TO AND USE OF THE SERVICE AND IS INDEPENDENT OF EACH AND EVERY LIMITED REMEDY THAT PATIENT MAY HAVE.

6. **Indemnity.** Patient agrees to indemnify and hold harmless CardioNet, and its officers, directors, employees, agents and suppliers from and against all claims of third parties arising out of or related to Patient's use or misuse of the System and/or the Service, or attributable to Patient's breach of this Agreement. CardioNet shall control the defense and any settlement of such claim, and Patient shall cooperate with CardioNet in defending against such claims.

7. **General Provisions.** This Agreement may be modified or amended only by a written instrument signed by Patient and CardioNet. Any terms and conditions issued by Patient shall not be binding on CardioNet and shall not modify these Terms and Conditions. No term or provision contained herein shall be deemed waived and no breach excused unless such waiver or consent shall be in writing and signed by the party against whom enforcement thereof is sought. Neither party hereto shall be liable to the other for any failure to perform its obligations under this Agreement due to causes beyond the reasonable control of that party, including, but not limited to, strikes, boycotts, labor disputes, embargoes, unavailability of or failures due to telecommunication networks (including, without limitation, the Internet), acts of God, unavailability of or insufficient utilities, acts of public enemy, acts of governmental authority, floods, riots, or rebellion. This Agreement shall be governed and construed solely in accordance with the laws of the State of California, without reference to its choice of law rules. Any and all proceedings arising under or in any way relating to this Agreement shall be maintained in the state or federal courts located in the County of San Diego, California, which courts shall have exclusive jurisdiction for such purpose, and Patient hereby consents to the personal jurisdiction of such courts. Patient acknowledges that in the event of an actual or threatened violation of the terms and conditions of this Agreement, CardioNet may not have an adequate monetary remedy and shall be entitled to seek injunctive relief without any requirement to post bond, in addition to any other available remedies. If any term or provision of this Agreement is illegal or unenforceable, it shall be deemed adjusted to the minimum extent to cure such invalidity or unenforceability and all other terms and provisions of this Agreement shall remain in full force and effect.