UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., <br><br> Plaintiff, <br><br> v. <br><br> LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2. <br><br> Defendants. | Case No. 07 C 6625 <br><br> Judge Suzanne B. Conlon <br><br> Magistrate Judge Morton Denlow |

___

**CARDIONET'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS EMERGENCY MOTION FOR EXPEDITED DISCOVERY**
___

This case arises out of Defendant LifeWatch's unauthorized examination and attempted theft of two CardioNet heart monitoring kits in violation of CardioNet's contracts limiting distribution and use of CardioNet's devices. LifeWatch was able to examine CardioNet's devices only after two LifeWatch employees, Doe 1 and Doe 2, received fraudulent prescriptions from a LifeWatch doctor, and then delivered the devices to LifeWatch in violation of CardioNet's agreements with patients. By this motion for expedited discovery, plaintiff CardioNet seeks to learn what information LifeWatch illegally obtained from CardioNet's devices.

Pursuant to Rule 33(b)(3), Rule 34(b), Rule 36(a), and the Federal Rules of Civil Procedure, Plaintiff CardioNet, Inc. ("CardioNet") respectfully moves the Court for an order allowing it to commence expedited discovery related to: its fourth claim for relief (fraud), fifth

claim for relief (breach of contract), sixth (interference with contract), and eighth claims for relief (unfair competition), and to expedite that discovery.  This discovery is necessary in support of CardioNet's request for a preliminary injunction based on the same claims for relief, which is directed to preventing Defendants from using information they have improperly obtained until this matter can be resolved on its merits.

CardioNet has purposefully chosen not to pursue discovery at this time on its claim for misappropriation of trade secrets.  Setting aside the issue of trade secrets at this time will allow the parties to focus on a fundamental question in this suit – what did Defendants actually do with the CardioNet MCOT kits which they fraudulently attained?  The structure of this case will be determined by the answer to this question, because if Defendants merely obtained the kits, activated them, and did no more, then the issues to be resolved and the scope of discovery are greatly simplified and narrowed.  However, if Defendants also disassembled the kits, or reverse engineered components or software in the kits implicating CardioNet's protected trade secrets, the scope of the case and of discovery is broadened.

Thus, CardioNet seeks to phase discovery, initially focusing on the narrower question of exactly what Defendants did with these kits, and what information they took.  Under this approach, discovery at this phase is not, for example, about identifying the CardioNet trade secrets embodied in the computer code contained in its heart monitor.  That discovery, and the attendant risks to CardioNet of detailing those trade secrets even under a protective order, may not be necessary if LifeWatch did not take or examine the computer code.  CardioNet's proposed phasing allows the parties to keep the issues narrow and focused until the nature of Defendants' use of the MCOT devices can be known, and will allow for a far more efficient and expeditious resolution of this dispute than if expedited discovery is allowed to go forward at this time on all

aspects of the underlying action, including CardioNet's trade secrets claim.

Expedited discovery is necessary to allow CardioNet to prepare for the evidentiary hearing on its motion for preliminary injunction. Pursuant to Rule 26(d), CardioNet requests leave to serve the attached document requests and to permit depositions of the individual defendants pursuant to Rule 30(b)(1) and of LifeWatch pursuant to Rule 30(b)(6) on the topics set forth in the attached deposition notice. CardioNet requests that Defendants be ordered to serve responsive documents upon CardioNet, or otherwise provide responses as required under Rule 34, no later than December 13, 2007. CardioNet also requests that the Defendants make themselves available for deposition during the week of December 17, 2007.

Pursuant to Civil Local Rule 37.2, CardioNet's counsel met and conferred by telephone with counsel for LifeWatch regarding these requests (most recently on November 27, 2007 at or about 12:00 p.m. CST by telephone conference that included CardioNet counsel Michael Kelleher and Gregory Chinlund and LifeWatch counsel Kevin Perra and Sean Gallagher), but after good faith efforts to resolve their differences, the parties were unable to reach an accord. Affidavit of Michael F. Kelleher In Support of Emergency Motion for Expedited Discovery ("Kelleher Aff.") ¶ 8.

## FACTUAL BACKGROUND

### A. Plaintiff CardioNet and Defendant LifeWatch are Competing Providers of Cardiac Monitoring Services.

CardioNet and LifeWatch are competing providers of cardiac monitoring services. Affidavit of Edward Stone in Support of Emergency Motion for Expedited Discovery ("Stone Affidavit"), ¶ 2. CardioNet's Mobile Cardiac Outpatient Telemetry ("MCOT") kit continuously monitors a patient's heart's electrocardiogram signal for periods up to 21 days, and is available

only by prescription. *Id.* ¶ 5. CardioNet does not sell its MCOT kits. *Id.* ¶ 5.

As a condition of receiving the MCOT kit, a patient must agree to return the kit to CardioNet immediately upon completion of monitoring. *Id.* ¶ 7. Activation of the device requires the patient's affirmative assent to this obligation. *Id.* Screenshots of the activation process are attached as Exhibit B to the Stone affidavit. To activate the device, the patient agrees that "I will return the CardioNet Monitor Equipment immediately upon completion of monitoring," (See Exhibit B as IDD_Patient_Consent_3). *Id.* ¶ 8.

To activate the device, the patient must further assent to the following statement: "I agree to the terms and conditions of the Assignment of Benefits and Services Agreement." *Id.* The patient may only activate the device by pressing "yes" and accepting the Assignment of Benefits and Services Agreement. *Id.* and Exhibit B.

The Assignment of Benefits and Services Agreement, a copy of which patients receive with the MCOT kit, provides that patients will only use the kit for heart monitoring and that they will not allow third-parties such as LifeWatch to tamper with or reverse engineer the device:

> **1. Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service **solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician**. . . . **Patient shall not**, in whole or in part, sublicense, **provide access to, tamper with**, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, **disassemble, or reverse engineer or create a derivative work of the System or Service**. Patient shall not, in whole or in part, transfer or assign this Agreement or any right granted hereunder, except upon the prior written consent of CardioNet. Any prohibited transfer or assignment shall be null and void. Subject to the licenses granted herein, as between CardioNet and Patient, **CardioNet holds all right, title and**

> **interest in and to the System and the Service including, without limitation, any patents, trademarks, trade secrets, copyrights or other intellectual property rights therein**. CardioNet reserves all rights not expressly granted to Patient under this Agreement.

*Id.* ¶ 10 and Exhibit C (emphasis added).

CardioNet's MCOT kits contain proprietary design, engineering and software that have made CardioNet the industry leader in mobile heart monitoring with the most advanced system. *Id.* ¶ 12. The MCOT kits also incorporate software which is subject to protection under the United States copyright laws. *Id.*

### B. LifeWatch Improperly Obtained and Tested CardioNet's Devices, While Its Employee Actively Concealed This Fact.

On or about September 11, 2007, defendant Konarzewka, an in-house medical advisor for LifeWatch, wrote prescriptions for CardioNet's MCOT services for two LifeWatch employees, Does 1 and 2. *Id.* ¶ 16. Doe 1 and Doe 2 received heart monitoring equipment from CardioNet pursuant to these false prescriptions, paying with cash. *Id.* ¶ 18.

Both Doe 1 and Doe 2 activated their kits, thereby agreeing to the Assignment of Benefits and Services Agreement and to return the CardioNet MCOT kit "immediately" upon completion of monitoring. *Id.* ¶ 19 and Exhibits B and C.

On the afternoon of October 26, 2007, CardioNet's monitoring center received a signal from Doe 1's monitor indicating a cardiac emergency. *Id.* ¶ 20. CardioNet's monitoring center immediately contacted Chicago emergency rescue personnel. *Id.* Chicago authorities responded to the call. Doe 1, however, had used a cardiac simulator--a machine that simulated a cardiac emergency--to cause his CardioNet MCOT kit to transmit a false signal to the CardioNet's monitoring center. *Id.* As a result of the false alarm issued by Doe 1, Chicago authorities unnecessarily responded to what was not, in fact, an emergency situation.

Doe 1 and Doe 2 did not immediately return their MCOT kits at the conclusion of monitoring as they had agreed during the activation process. *Id.* ¶ 21. CardioNet contacted both individuals and demanded the return of the kits. *Id.* Doe 1 did not return his kit until November 15, 2007. *Id.* ¶ 22.

Doe 2 initially claimed her MCOT kit was lost during a move and refused to return it despite several attempts by CardioNet. *Id.* ¶ 23.

After CardioNet sent LifeWatch a demand for return of the Doe 2 device, LifeWatch admitted that it had possession of the device. LifeWatch finally agreed to return the device on November 26, 2007, the day the complaint in this case was filed. Affidavit of Michael F. Kelleher in Support of Emergency Motion for Expedited Discovery ("Kelleher Affidavit"), ¶ 2. LifeWatch claims its actions were legal, however, and has refused to agree to an injunction prohibiting use of the information obtained from its illegal inspection and testing of the CardioNet devices. *Id.*

## II.   ARGUMENT

### A.   CardioNet Needs Immediate Discovery About What LifeWatch Did With the Improperly Obtained MCOT Kits and the Information Therein.

CardioNet's request for expedited discovery should be granted so that CardioNet can learn what LifeWatch has done with the improperly obtained CardioNet MCOT kits and the commercially valuable information therein. Expedited discovery will allow CardioNet to learn the facts needed to prepare for a prompt hearing on preliminary injunctive relief, and is proper under these circumstances. *See, e.g., Dorel Juvenile Group, Inc. v. DiMartinis*, 495 F.3d 500 (7th Cir. 2007) (district court allowed expedited discovery prior to preliminary injunction hearing); *Exhibit Works, Inc. v. Inspired Exhibits, Inc.*, 2005 WL 3527254 (N.D. Ill. 2005).

Here, the facts needed for CardioNet to determine the extent of the harm from Defendants' conduct are solely in Defendants' possession, and CardioNet has no other means to obtain them absent formal discovery.  This is a case of ongoing breach of contract and misappropriation, where Defendants have not explained what information they took from the kits and the use they are making of that information.  The facts detailed above abundantly demonstrate Defendants' willful disregard of contractual and ethical obligations.  Moreover, the discovery sought is narrowly tailored and appropriate.  As an example, CardioNet seeks:

> All documents, including but not limited to drawings, schematics, parts lists, test sequences, test results, or computer code, derived from, reflecting or referencing examination of either of the CardioNet MCOT kits or any of their individual components.

The longer Defendants can freely use the information they have obtained from these kits without any accounting or limitation on their use, in direct disregard of the contractual obligations they agreed to in activating these kits, the greater the harm to CardioNet.  CardioNet now stands to lose the benefit of the millions of dollars of engineering and investigative effort it has invested in developing its heart monitoring equipment.  Expedited discovery is warranted to allow CardioNet to quickly determine the scope and seriousness of Defendants' access and use of CardioNet's confidential and proprietary information.  Based on this initial discovery, CardioNet can then determine whether further discovery and broader injunctive relief are needed from this Court in order to protect its valuable trade secrets.

### B.    Although LifeWatch Acknowledges Discovery Should Be Expedited, It Refuses to Agree to CardioNet's Schedule Unless It Can Immediately Learn About CardioNet's Trade Secrets.

As set forth in the Affidavit of Michael f. Kelleher in Support of Emergency Motion for Expedited Discovery ("Kelleher Affidavit") filed herewith, LifeWatch agrees with CardioNet that there should be expedited discovery on CardioNet's preliminary injunction motion.

Kelleher Affidavit, ¶ 8.  Despite its acknowledgement that expedited discovery is appropriate, LifeWatch refuses to agree to the discovery and schedule proposed by CardioNet unless CardioNet provides simultaneous discovery, in particular, about its trade secrets.

LifeWatch's insistence on simultaneous discovery regarding CardioNet's confidential and trade secret information is inappropriate for the following reasons:

<u>First</u>, until CardioNet learns what LifeWatch did the MCOT kits and the information contained therein, CardioNet does not know what commercially valuable, confidential, proprietary and trade secret information LifeWatch has improperly acquired from CardioNet.  For example, CardioNet's MCOT kits contain chips with extensive software code that incorporates numerous trade secrets.  If LifeWatch never accessed the software code, it would be inappropriate and a waste of court and legal resources for CardioNet to identify all the trade secrets contained in the code.  On the other hand, if LifeWatch copied the chip and plans to decompile the software thereon (a process whereby object code is reverse engineered to obtain the source code), then CardioNet will need to identify any trade secrets in the code upon which it will base its claim under the Illinois Trade Secrets Act.

<u>Second</u>, given the circumstances, CardioNet is understandably wary about revealing information to LifeWatch or its agents, even if the material is designated attorneys' eyes only.  Thus, depending on what LifeWatch did with CardioNet's MCOT kits, CardioNet may or may not decide to reveal additional information.

<u>Third</u>, this is not a case where defendant properly purchased plaintiff's product that was available on the open market and opened it up and tried to reverse engineer it.  In such a case, the appropriateness of a preliminary injunction may depend on whether the plaintiff has protectible trade secrets and early discovery of the plaintiff's trade secret claims would be appropriate.  In

this case, defendant improperly acquired the MCOT kits and the information therein through deception and breaches of contract. CardioNet's contract prohibiting "reverse engineering" and "tampering" is enforceable, and waives any rights that Defendants have to claim that their unauthorized inspection of the device was allowed because the information on the device was not protected. *Cf. Davidson & Associates v. Jung,* 422 F.3d 630, 639 (8th Cir. 2005) (software license included enforceable waivers of reverse engineering and fair use). Therefore, CardioNet's motion for a preliminary injunction does not depend on its trade secrets claims. To the contrary, CardioNet is entitled to a preliminary injunction to prevent LifeWatch from further benefiting from its wrongful acquisition of CardioNet's information on the strength of its claims for conversion, breach of contract, inducement of breach of contract and fraud. Thus, the discovery relevant to CardioNet's motion is limited to issues related to how LifeWatch obtained the MCOT kits and the information therein, the applicable obligations, and what it has done with the information in breach of contract.

### III.   CONCLUSION

Plaintiff CardioNet, Inc. respectfully requests that the Court enter the attached Proposed Order, expediting discovery so that LifeWatch produces documents on December 13, 2007, and depositions of Defendants will be taken the week of December 17, 2007.

Respectfully submitted,

CARDIONET, INC.

Dated: November 29, 2007       By: s/Gregory J. Chinlund
Thomas L. Duston
Gregory J. Chinlund
Alisa C. Simmons
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive, 6300 Sears Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

FOLGER LEVIN & KAHN LLP
Michael F. Kelleher (pro hac vice application to be filed)
Julie L. Fieber (pro hac vice application to be filed)
Amy L. Kashiwabara (pro hac vice app. to be filed)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiff CARDIONET, INC.

CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2007, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS EMERGENCY MOTION FOR EXPEDITED DISCOVERY with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the following:

Sean W. Gallagher
Sean.Gallagher@bartlit-beck.com

                          s/ Gregory J. Chinlund
                          Gregory J. Chinlund
                          Attorney for CardioNet, Inc.
                          MARSHALL, GERSTEIN & BORUN LLP
                          6300 Sears Tower
                          233 South Wacker Drive
                          Chicago, IL  60606-6357
                          (312) 474-6300 (Phone)
                          (312) 474-0448 (Facsimile)