MARSHALL, GERSTEIN & BORUN LLP
Thomas L. Duston
Gregory J. Chinlund
233 South Wacker Drive
6300 Sears Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

FOLGER LEVIN & KAHN LLP
Michael F. Kelleher (pro hac vice application to be filed)
Julie L. Fieber (pro hac vice application to be filed)
Amy L. Kashiwabara (pro hac vice application to be filed)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiff CARDIONET, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC.,<br><br>     Plaintiff,<br><br> v.<br><br>LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2.<br><br>    Defendants. | Case No.<br><br>**AFFIDAVIT OF EDWARD STONE IN SUPPORT OF PLAINTIFF CARDIONET'S MOTION FOR EXPEDITED DISCOVERY** |

I, Edward Stone, hereby declare as follows:

1.    I am Vice President of Compliance & Regulatory Affairs for CardioNet, Inc. (CardioNet"), the plaintiff in the above-entitled action.  I have personal knowledge of the following matters and could and would testify competently with respect to them.

2.    CardioNet was the first company to offer an ambulatory outpatient wireless telemetry system for monitoring a patient's heart while the patient is at home, at work or traveling.  Once enrolled with CardioNet, physicians prescribe CardioNet's Mobile Cardiac Outpatient Telemetry ("MCOT") kit for patients for a short-term period of up to 21 consecutive days of monitoring the patient's heart's electrocardiogram signal.  CardioNet's MCOT kit monitors patients' hearts 24 hours a day as the patients continue with their normal daily routine.

3.    A patient using the CardioNet MCOT kit wears a lightweight, three lead sensor (the "sensor").  The sensor communicates with a small mobile monitor (the "monitor") that can be carried in a pocket or purse.  The monitor, sensor, and other miscellaneous equipment necessary to operation, such as bases, power cords, cases and guides, altogether comprise the MCOT kit.  A complete inventory of the equipment comprising the kit is shown in Exhibit A.

4.    If the patient experiences certain cardiac events, an electrocardiogram is transmitted from the monitor to CardioNet's monitoring center.  The MCOT kit performs its monitoring and transmitting functions without the need for any manual intervention from the patient whatsoever.

5.    CardioNet does not sell its MCOT kits.  The systems are only available by prescription to patients with health conditions that require this type of the electrocardiogram monitoring program.

6.    CardioNet's MCOT kits are issued to patients who are then obligated to return the systems at the end of the short-term monitoring period.  The patient (or his insurance) is responsible for the cost of monitoring, but does not pay for the purchase of the actual MCOT kit itself.

7.    As a condition of receiving the MCOT kit, a patient must agree to return the kit to CardioNet immediately upon completion of monitoring.  The patient's affirmative assent to this

obligation is required as part of the activation process.  Screenshots of the activation process are attached hereto as Exhibit B.

8.     As shown on the first screen shown in Exhibit B (identified on Exhibit B as IDD_Patient_Consent_1), the patient must press yes or no to the statement:  "I agree to the terms and conditions of the Assignment of Benefits and Services Agreement."  The patient may only activate the device by pressing "yes" and accepting the Assignment of Benefits and Services Agreement.

9.     A copy of the Assignment of Benefits and Services Agreement which every patient must accept to activate the CardioNet device is attached as Exhibit C to this affidavit.  A copy of the Assignment of Benefits and Services Agreement is provided to patients with the CardioNet MCOT kit.

10.     The Assignment of Benefits and Services Agreement provides that patients will only use the MCOT for heart monitoring and that they will not allow third-parties such as LifeWatch to tamper with or reverse engineer the device:

> **1. Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service **solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician**. . . . **Patient shall not**, in whole or in part, sublicense, **provide access to, tamper with**, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, **disassemble, or reverse engineer or create a derivative work of the System or Service**. Patient shall not, in whole or in part, transfer or assign this Agreement or any right granted hereunder, except upon the prior written consent of CardioNet. Any prohibited transfer or assignment shall be null and void. Subject to the licenses granted herein, as between CardioNet and Patient, **CardioNet holds all right, title and interest in and to the System and the Service including, without limitation, any patents, trademarks, trade secrets, copyrights or other intellectual property rights therein**. CardioNet reserves

all rights not expressly granted to Patient under this Agreement.

Exhibit C (emphasis added).

11.    In addition to agreeing to the Assignment of Benefits and Services Agreement, the patient must agree during activation of the CardioNet device that "I will return the CardioNet Monitor Equipment immediately upon completion of monitoring," (See Exhibit B as IDD_Patient_Consent_3).  By so agreeing, a contractual obligation is created, obligating the patient to immediately return the MCOT kit upon completion of monitoring.

12.    CardioNet's MCOT kits contain confidential, proprietary and trade secret information that have made CardioNet the industry leader in mobile heart monitoring with the most advanced system.  CardioNet's monitoring equipment incorporates millions of dollars of engineering and investigative research that CardioNet has invested in the development and improvement of its system.  The MCOT kits also incorporate confidential, proprietary and trade secret software, which is subject to protection under the United States copyright laws.

13.    CardioNet has taken reasonable measures to protect the trade secrets incorporated in its devices from disclosure to the public and competitors.  CardioNet never sells its monitoring equipment.  CardioNet allows patients who have a prescription for cardiac monitoring to have access to the CardioNet monitoring equipment only if they agree to the Assignment of Benefits and Services Agreement (exhibit C) and the device activation acceptance screens (exhibit B).

14.    Defendant LifeWatch is a competitor of CardioNet, and markets the "LifeStar ACT Ambulatory Cardiac Telemetry" system.  According to LifeWatch's website, www.lifewatchinc.com, the ACT system utilizes an integrated cellular phone to detect arrhythmias, and then transmits the data to the LifeWatch Services, Inc. Monitoring Center for analysis.

15.    Also according to the LifeWatch website, defendant Hanna Konarzewka, M.D. ("Konarzewka") is a contractor or employee of defendant LifeWatch, who joined LifeWatch in May of 2007 as the on site Medical Advisor and Director of its Monitoring Program.

Konarzewka also continues to work at Loyola University, and to practice as the Medical Director of Electrophysiology at Swedish Covenant Hospital and as EP Cardiologist at Oak Park Cardiology in the Chicago area.

16.     On or about September 11, 2007, Konarzewka wrote prescriptions for CardioNet's MCOT services for the individuals identified as Does 1 and 2, which provided for 21 days of cardiac monitoring for each.

17.     I know the true names of Doe 1 and Doe 2, and understand that they are LifeWatch employees. CardioNet has not used the names of Doe 1 and Doe 2 in order to prevent claims that it has violated health privacy rules under the Health Insurance Portability and Accountability Act ("HIPAA").

18.     Pursuant to Konarzewka's prescriptions, on September 11, 2007, CardioNet provided both Doe 1 and Doe 2 with heart monitoring devices for the purpose of a diagnostic test. Both Doe 1 and Doe 2 paid cash for these diagnostic tests.

19.     Both of the MCOT kits that CardioNet provided to Doe 1 and Doe 2 were activated, meaning that cardiac monitoring through the CardioNet monitoring center was initiated. Since activation is only possible by stepping through the activation process described above, which includes explicitly agreeing to return the MCOT kits immediately upon cessation of monitoring, I believe that Doe 1 and Doe 2, or someone accessing the kits pursuant to their prescriptions must have made this agreement, because it is a condition of activation.

20.     On information and belief, on the afternoon of October 26, 2007, Doe 1, or someone using the CardioNet MCOT kit prescribed to him, used that kit with a cardiac simulator and caused signals to be transmitted to the CardioNet monitoring center of a false cardiac emergency. Upon receiving the false data, CardioNet's monitoring center contacted emergency rescue personnel. Chicago authorities responded to a call based on the fraudulent transmission by sending personnel to the home of Doe 1. In fact, as CardioNet was later able to determine through review of the transmitted cardiac data from Doe 1's MCOT kit, there was no emergency

-5-

because the CardioNet MCOT kit was not monitoring Doe 1, but was instead attached to a machine that simulated a cardiac emergency.

     21.    Doe 1 and Doe 2 did not immediately return their MCOT kits at the conclusion of the 21-day monitoring period, despite having agreed to during the activation process. CardioNet has since contacted both individuals repeatedly and demanded the return of the kits.

     22.    Doe 1 did not return his kit until November 15, 2007. Doe 1 never provided CardioNet or its counsel any explanation for his failure to timely return the kit, nor did he account for its use while in his possession.

     23.    At first, when contacted by CardioNet and asked to return her MCOT kit, Doe 2 claimed the kit was lost by a third party moving service. However, I have reviewed CardioNet's records, which show that the MCOT kit was sent to what I am informed and believe to be Doe 2's current address. Doe 2's story changed with time, and later she claimed to CardioNet that she did not know how or when the MCOT kit was lost. At one time, she even told us she could not look for it because her basement light was burnt out. As recently as November 19, 2007, Doe 2 called CardioNet, still claiming she had lost its MCOT kit.

     24.    I am informed and believe that Doe 2's kit was picked up by CardioNet's representative on November 26, 2007 at LifeWatch pursuant to an agreement by counsel.

     I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct.

     Executed this _26_ day of November, 2007, in _Conshohocken, Pennsylvania_

Edward Stone

19084\2010\577646.1

-6-

# EXHIBIT A



# RETURNING THE CARDIONET KIT

**THESE ARE THE ITEMS TO RETURN:**

EQUIPMENT:
1 CardioNet monitor
1 CardioNet sensor
1 or 2 CardioNet base(s)
2 power cords
1 or 2 phone line(s)
1 neck strap
1 CardioNet sensor belt clip
1 CardioNet monitor pouch

UNUSED SUPPLIES:
AA batteries
Unopened packages of electrodes
Adhesive remover

INFORMATION:
Patient Education Guide
Reminder Card
Patient Satisfaction Survey

# RETURN CHECKLIST

### ABOUT THE DEACTIVATION MESSAGE

When your monitoring period is complete, a message will appear on your monitor.

You do not need to call CardioNet. It is your responsibility to return the kit as soon as possible so that other patients can benefit from using this valuable service, and to avoid being charged for the equipment.



**Please follow these steps the morning your prescription is complete:**

| | |
|---|---|
| ✓ | 1. Take off the sensor. Remove the sensor battery. |
| ✓ | 2. Turn off the monitor. Press the blue button then press "Yes" on the screen. |
| ✓ | 3. Disconnect the base(s) from your phone(s). |
| ✓ | 4. Complete the Patient Satisfaction Survey. |
| ✓ | 5. Place everything neatly back in the foam so it is not damaged during shipping. |
| ✓ | 6. Place the blue box in the reusable UPS shipping box you originally received with the CardioNet Kit. |
| ✓ | 7. Close the shipper box by following the illustrations provided on the reusable shipping box. |
| ✓ | 8. If you have received more than one monitor, please return the other monitor(s) in the box provided. |

# EXHIBIT B

Plug-n-Play

Activation Mode
(Configured)



**IDD_ACTIVATION_MODE**
1 - Press Yes or No

This Monitor is programmed for #000

Sensor #001

Is this correct?

[ Yes ]  [ No ]

**IDD_PATIENT_CONSENT_1**
2 - Press Yes or No

I agree to the Terms & Conditions in the Assignment of Benefits & Service Agreement.

[ Yes ]  [ No ]

**IDD_PATIENT_CONSENT_2**
3 - Press Yes or No

I have received CardioNet's Notice of Confidentiality and Privacy Practices.

[ Yes ]  [ No ]

**IDD_PATIENT_CONSENT_3**
4 - Press Yes or No

I will return the CardioNet Monitoring Equipment immediately upon completion of monitoring.

[ Yes ]  [ No ]

**IDD_PATIENT_CONSENT_4**
5 - Press Yes or No

I will allow CardioNet to use my data (without my personal information) for research purposes.

[ Yes ]  [ No ]

**IDD_CALL_FOR_PASSWORD**
6 - Press Back or Continue

CardioNet will provide you with a password during your scheduled appointment. Please remove Monitor from base and turn it off.

Cell Strength: #006

[ Back ]  [ Continue ]

**IDD_BEGIN_MONITORING_PASSWORD**
7 - Enter Patient Password

[1] [2] [3]
[4] [5] [6]
[7] [8] [9]
[*] [0] [#]

[ Clear ]  [ Cancel/Enter ]

——cancel——

——error——

**IDD_INVALID_PASSWORD**

Invalid Password

Invalid Password

[ OK ]

# EXHIBIT C



## Assignment of Benefits & Service Agreement

**Please read this before accepting the agreement on the monitor. You will be asked to accept the terms of this agreement prior to the activation of your monitor. Answering "Yes" to the questions on the monitor's touch screen prior to activation is your acceptance of the terms listed in this document.**

I request authorized health insurance (including governmental sponsored plans such as Medicare) benefits to me or on my behalf for any services furnished me by CardioNet to be paid directly to CardioNet. I authorize any holder of medical and/or insurance information to release requested information to CardioNet and/or my insurer as required to facilitate the processing of health claims provided under this agreement. This assignment includes all dates of services rendered by CardioNet for all insurance plans.

### SERVICE AGREEMENT

Financial Terms
I understand that I am fully responsible for any co-payments, co-insurance, deductibles, all payments made directly to me by my insurer for CardioNet services, and when allowed by law, services not-covered (not payable) under my health insurance plan.

I acknowledge that I am financially responsible for the loaned CardioNet Monitoring System (sensor, monitor, bases, and accessories), which I am obligated to return to CardioNet upon completion of the service. If I do not immediately return the Monitoring System, I hereby authorize CardioNet to invoice me for, and agree to pay CardioNet, the value of the Monitoring System and any associated collection costs should collection or legal costs be incurred by CardioNet.

### OPERATIONAL NOTICES

I hereby acknowledge that, given the variance in cellular phone coverage and signal strength, the CardioNet Monitoring System may not always provide continuous transmission of my ECG rhythm to the CardioNet Service Center. In the event that there is no cellular phone coverage or adequate signal strength to transmit recorded events, I will move to an area to optimize transmission capability or connect the monitor and base to a direct telephone line as requested.

I hereby acknowledge that the CardioNet Monitoring System is intended to aid in diagnosis only, and is not designed for prevention or treatment of any event or condition. I agree to immediately discontinue use of the CardioNet Monitoring System upon any sign of discomfort or problems directly related to the CardioNet Monitoring System, and to promptly report such discomfort or other problems to CardioNet.

I give CardioNet my consent and permission to communicate with other members of my household, if necessary, with regard to my CardioNet service. I also authorize CardioNet to provide my monitoring data to my physician and his /her staff and to Emergency Medical Services by phone, e-mail, fax or through secure Internet access.

**I CERTIFY THAT I UNDERSTAND AND AGREE TO THE FOREGOING TERMS AND TO THE CARDIONET STANDARD TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS FORM.**

I will also be asked to give CardioNet permission to use my monitoring data, **without my identity**, in clinical research and case studies. This is an option and not required to continue to receive CardioNet monitoring services.

Copyright ©, CardioNet, Inc. 2007  |  227 Washington Street, Suite 300  |  Conshohocken, PA  |  19428  |  1.866.426.4401  |  All Rights Reserved.
CNF068, Rev A

1. **Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician. Patient expressly acknowledges and agrees that the Service, which is available only by physician prescription, is used solely to assist physicians in diagnosis and treatment, and is not intended for use as an emergency response system for patients who may experience serious or life-threatening medical problems. Patient is aware that cell phone coverage limitations and delays in land-line telephone communications could significantly delay transmission and analysis of patient monitoring data. Patient agrees to contact CardioNet immediately if problems are experienced using the system or if signs of physical discomfort occur, and to discontinue use of the system if the physician or CardioNet believe service discontinuation is advisable. Patient shall not, in whole or in part, sublicense, provide access to, tamper with, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, disassemble, or reverse engineer or create a derivative work of the System or Service. Patient shall not, in whole or in part, transfer or assign this Agreement or any right granted hereunder, except upon the prior written consent of CardioNet. Any prohibited transfer or assignment shall be null and void. Subject to the licenses granted herein, as between CardioNet and Patient, CardioNet holds all right, title and interest in and to the System and the Service including, without limitation, any patents, trademarks, trade secrets, copyrights or other intellectual property rights therein. CardioNet reserves all rights not expressly granted to Patient under this Agreement.

2. **Term and Termination.** This Agreement shall commence on the date that CardioNet accepts Patient's enrollment hereunder, and shall continue until terminated by either party as set forth herein. Either party may terminate this Agreement, for any or no reason, upon thirty (30) days' written notice to the other party, except that this Agreement shall immediately terminate if Patient breaches Paragraph 1 above. Upon any termination of this Agreement, Patient shall immediately discontinue all use of the Service, and shall promptly return the System to CardioNet. The limitations in Paragraph 1, and Paragraphs 3-6 shall survive any termination of this Agreement.

3. **QUALCOMM and Wireless Carrier Limitations.** Patient acknowledges that in providing the Service hereunder, CardioNet may utilize a digital telephone service that is furnished to CardioNet via Qualcomm Inc. ("QUALCOMM") by a wireless carrier ("Wireless Carrier") pursuant to an agreement between QUALCOMM and such Wireless Carrier and is subject to the terms, conditions and limitations therein set forth. Patient acknowledges and agrees that: (a) the CardioNet Service may be temporarily refused, interrupted, curtailed or otherwise limited because of Wireless Carrier network transmission limitations caused by any factor, including atmospheric, environmental or topographical conditions, Wireless Carrier facilities limitations or constraints, or Wireless Carrier facilities changes, modifications, updates, relocations, repairs, maintenance or other similar activities necessary for the proper or improved operation of the Wireless Carrier facilities; and (b) situations may arise due to highly concentrated usage in limited areas on the Wireless Carrier network, which may result in Patient encountering temporary capacity constraint-related symptoms, such as excessive call blocking or call dropping. In no event is CardioNet, QUALCOMM or the Wireless Carrier liable to Patient with respect to any claim or damage related to or arising out of or in connection with: (i) any such temporary capacity constraint; (ii) any coverage gap; or (iii) any temporary Service refusal, interruption, curtailment or other limitation because of transmission limitations caused by any factor, including atmospheric, environmental or topographical conditions, Wireless Carrier facilities limitations or constraints, or Wireless Carrier facilities changes, modifications, updates, relocations, repairs, maintenance or other similar activities necessary for the proper or improved operation of the Wireless Carrier facilities. PATIENT FURTHER ACKNOWLEDGES THAT CARDIONET, QUALCOMM AND THE WIRELESS CARRIER DISCLAIM ALL LIABILITY OF ANY NATURE TO PATIENT, WHETHER DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL, ARISING OUT OF PATIENT'S USE OF THE CARDIONET SYSTEM OR SERVICE, AND PATIENT AGREES THAT PATIENT SHALL HAVE NO CLAIMS AGAINST CARDIONET, QUALCOMM OR THE WIRELESS CARRIER OF ANY KIND WITH RESPECT THERETO.

4. **NO WARRANTY.** THE SYSTEM AND THE SERVICE ARE PROVIDED BY CARDIONET HEREUNDER SOLELY ON AN "AS-IS" AND "AS AVAILABLE" BASIS WITHOUT WARRANTY OF ANY KIND. TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, CARDIONET HEREBY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT AND/OR QUIET ENJOYMENT, AS WELL AS ANY IMPLIED WARRANTIES OTHERWISE ARISING OUT OF COURSE OF DEALING, COURSE OF PERFORMANCE OR TRADE USAGE. PATIENT FURTHER ACKNOWLEDGES AND AGREES THAT CARDIONET SHALL NEITHER BE RESPONSIBLE NOR LIABLE FOR PATIENT'S INABILITY TO ACCESS OR USE THE SERVICE AS A RESULT OF ANY DEFICIENCY IN THE INTERNET, THE TELEPHONE SERVICE, OR OTHER CONNECTION BETWEEN CARDIONET AND PATIENT. PATIENT EXPRESSLY ACKNOWLEDGES AND AGREES THAT NEITHER THE SYSTEM, NOR THE SERVICE (AS WELL AS ANY SUPPORT GIVEN BY ANY CARDIONET SUPPORT STAFF), NOR ANY MATERIAL AVAILABLE THROUGH PATIENT'S USE OF THE SYSTEM OR SERVICE IS INTENDED TO PROVIDE PATIENT WITH MEDICAL ADVICE, A DIAGNOSIS OR TREATMENT. PATIENT MUST ALWAYS SEEK THE ADVICE OF PATIENT'S PHYSICIAN OR OF ANOTHER QUALIFIED MEDICAL PRACTITIONER WITH ANY QUESTIONS PATIENT MAY HAVE REGARDING A SPECIFIC MEDICAL CONDITION OR PERCEIVED CONDITION.

5. **LIMITATION OF LIABILITY.** TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW: (I) IN NO EVENT SHALL CARDIONET OR ITS LICENSORS OR SUPPLIERS BE LIABLE TO PATIENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT INCLUDING, WITHOUT LIMITATION, LOST PROFITS, COSTS OF DELAY, ANY FAILURE OF DELIVERY, BUSINESS INTERRUPTION, COSTS OF LOST OR DAMAGED DATA, UNAUTHORIZED DISCLOSURE TO OR ACCESS OF PATIENT DATA, OR LIABILITIES TO THIRD PARTIES ARISING FROM ANY PERSONAL INJURY OR PROPERTY DAMAGE CLAIM OR ANY OTHER TYPE OF CLAIM, EVEN IF CARDIONET HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; AND, (II) IN NO EVENT SHALL CARDIONET'S AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE AMOUNT PAID BY PATIENT TO CARDIONET UNDER THIS AGREEMENT. THE PARTIES AGREE THAT THE ALLOCATION OF LIABILITY SET FORTH IN THIS SECTION 5 FORMS AN ESSENTIAL BASIS OF CARDIONET'S WILLINGNESS TO GRANT PATIENT THE USE OF THE SYSTEM AND ACCESS TO AND USE OF THE SERVICE AND IS INDEPENDENT OF EACH AND EVERY LIMITED REMEDY THAT PATIENT MAY HAVE.

6. **Indemnity.** Patient agrees to indemnify and hold harmless CardioNet, and its officers, directors, employees, agents and suppliers from and against all claims of third parties arising out of or related to Patient's use or misuse of the System and/or the Service, or attributable to Patient's breach of this Agreement. CardioNet shall control the defense and any settlement of such claim, and Patient shall cooperate with CardioNet in defending against such claims.

7. **General Provisions.** This Agreement may be modified or amended only by a written instrument signed by Patient and CardioNet. Any terms and conditions issued by Patient shall not be binding on CardioNet and shall not modify these Terms and Conditions. No term or provision contained herein shall be deemed waived and no breach excused unless such waiver or consent shall be in writing and signed by the party against whom enforcement thereof is sought. Neither party hereto shall be liable to the other for any failure to perform its obligations under this Agreement due to causes beyond the reasonable control of that party, including, but not limited to, strikes, boycotts, labor disputes, embargoes, unavailability of or failures due to telecommunication networks (including, without limitation, the Internet), acts of God, unavailability of or insufficient utilities, acts of public enemy, acts of governmental authority, floods, riots, or rebellion. This Agreement shall be governed by and construed solely in accordance with the laws of the State of California, without reference to its choice of law rules. Any and all proceedings arising under or in any way relating to this Agreement shall be maintained in the state or federal courts located in the County of San Diego, California, which courts shall have exclusive jurisdiction for such purpose, and Patient hereby consents to the personal jurisdiction of such courts. Patient acknowledges that in the event of an actual or threatened violation of the terms and conditions of this Agreement, CardioNet may not have an adequate monetary remedy and shall be entitled to seek injunctive relief without any requirement to post bond, in addition to any other available remedies. If any term or provision of this Agreement is illegal or unenforceable, it shall be deemed adjusted to the minimum extent to cure such invalidity or unenforceability and all other terms and provisions of this Agreement shall remain in full force and effect.

Copyright © CardioNet, Inc. 2007  |  227 Washington Street, Suite 300  |  Conshohocken, PA  |  19428  |  1.866.426.4401  |  All Rights Reserved.
CNF068, Rev A