UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff, | Case No. 07 C 6625 |
| v. | Judge Suzanne B. Conlon |
| LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2. | Magistrate Judge Morton Denlow |
| Defendants. | |

**PLAINTIFF CARDIONET'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ENTRY OF PRELIMINARY INJUNCTION ON EXPEDITED BASIS**

**I.     INTRODUCTION**

This case arises out of Defendant LifeWatch's unauthorized examination and attempted theft of two CardioNet heart monitoring kits in violation of CardioNet's contracts limiting distribution and use of CardioNet's devices. LifeWatch was able to examine CardioNet's devices only after two LifeWatch employees, Doe 1 and Doe 2, received fraudulent prescriptions from a LifeWatch doctor, and then delivered the devices to LifeWatch in knowing and willful violation of CardioNet's agreements with patients. By this motion for preliminary injunction, plaintiff CardioNet seeks to prohibit LifeWatch from using the information it illegally obtained from CardioNet's devices. CardioNet seeks this relief based on: its fourth claim for relief (fraud), fifth claim for relief (breach of contract), sixth (interference with contract), and eighth claims for relief (unfair competition).

While CardioNet's devices incorporate trade secret information, for example in the computer code on the monitors, CardioNet is not presently seeking an injunction on its trade secret claims. Rather, the present injunction request is narrowly tailored to give CardioNet the benefits of its contracts by preventing competitors such as LifeWatch from using information taken through fraud and breach of contract.

**A.     Plaintiff CardioNet and Defendant LifeWatch are Competing Providers of Cardiac Monitoring Services.**

CardioNet and LifeWatch are competing providers of cardiac monitoring services. Affidavit of Edward Stone in Support of Application for Preliminary Injunction ("Stone Affidavit"), ¶ 2. CardioNet's Mobile Cardiac Outpatient Telemetry ("MCOT") kit continuously monitors a patient's heart's electrocardiogram signal for periods up to 21 days, and is available only by prescription. *Id.* ¶ 5. CardioNet does not sell its MCOT kits. *Id.* ¶ 5.

As a condition of receiving the MCOT kit, a patient must agree to return the kit to CardioNet immediately upon completion of monitoring. *Id.* ¶ 7. Activation of the device requires the patient's affirmative assent to this obligation. *Id.* Screenshots of the activation process are attached as Exhibit B to the Stone affidavit. To activate the device, the patient agrees that "I will return the CardioNet Monitor Equipment immediately upon completion of monitoring," (See Exhibit B as IDD_Patient_Consent_3). *Id.* ¶ 8.

To activate the device, the patient must further assent to the following statement: "I agree to the terms and conditions of the Assignment of Benefits and Services Agreement." *Id.* The patient may only activate the device by pressing "yes" and accepting the Assignment of Benefits and Services Agreement. *Id.* and Exhibit B.

The Assignment of Benefits and Services Agreement, a copy of which patients receive with the MCOT kit, provides that patients will only use the kit for heart monitoring and that they will not allow third-parties such as LifeWatch to tamper with or reverse engineer the device:

> **1. Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service **solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician**. . . . **Patient shall not**, in whole or in part, sublicense, **provide access to, tamper with**, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, **disassemble, or reverse engineer or create a derivative work of the System or Service**. Patient shall not, in whole or in part, transfer or assign this Agreement or any right granted hereunder, except upon the prior written consent of CardioNet. Any prohibited transfer or assignment shall be null and void. Subject to the licenses granted herein, as between CardioNet and Patient, **CardioNet holds all right, title and interest in and to the System and the Service including, without limitation, any patents, trademarks, trade secrets, copyrights**

-3-

> **or other intellectual property rights therein**. CardioNet reserves all rights not expressly granted to Patient under this Agreement.

*Id.* ¶ 10 and Exhibit C (emphasis added).

CardioNet's MCOT kits contain proprietary design, engineering and software that have made CardioNet the industry leader in mobile heart monitoring with the most advanced system. *Id.* ¶ 12.  The MCOT kits also incorporate software which is subject to protection under the United States copyright laws.  *Id.*

### B. LifeWatch Improperly Obtained and Tested CardioNet's Devices, While Its Employee Actively Concealed That Fact.

On or about September 11, 2007, defendant Konarzewka, an in-house medical advisor for LifeWatch, wrote prescriptions for CardioNet's MCOT services for two LifeWatch employees, Does 1 and 2. *Id.* ¶ 16.  Doe 1 and Doe 2 received heart monitoring equipment from CardioNet pursuant to these false prescriptions, paying with cash.  *Id.* ¶ 18.

Both Doe 1 and Doe 2 activated their kits, thereby agreeing to the Assignment of Benefits and Services Agreement and to return the CardioNet MCOT kit "immediately" upon completion of monitoring.  *Id.* ¶ 19 and Exhibits B and C.

On the afternoon of October 26, 2007, CardioNet's monitoring center received a signal from Doe 1's monitor indicating a cardiac emergency.  *Id.* ¶ 20.  CardioNet's monitoring center immediately contacted Chicago emergency rescue personnel.  *Id.*  Chicago authorities responded to the call.  Doe 1, however, had used a cardiac simulator--a machine that simulated a cardiac emergency--to cause his CardioNet MCOT kit to transmit a false signal to the CardioNet's monitoring center.  *Id.*  As a result of the false alarm issued by Doe 1, Chicago authorities unnecessarily responded to what was not, in fact, an emergency situation.

Doe 1 and Doe 2 did not immediately return their MCOT kits at the conclusion of

monitoring as they had agreed during the activation process. *Id.* ¶ 21. CardioNet contacted both individuals and demanded the return of the kits. *Id.* Doe 1 did not return his kit until November 15, 2007. *Id.* ¶ 22.

Doe 2 initially claimed her MCOT kit was lost during a move and refused to return it despite several attempts by CardioNet. *Id.* ¶ 23.

After CardioNet sent LifeWatch a demand for return of the Doe 2 device, LifeWatch admitted that it had possession of the device. LifeWatch finally agreed to return the device on November 26, 2007, the day the complaint in this case was filed. Affidavit of Michael Kelleher in Support of Motion for Preliminary Injunction ("Kelleher Affidavit"), ¶ 2. LifeWatch claims its actions were legal, however, and has refused to agree to an injunction prohibiting use of the information obtained from its illegal inspection and testing of the CardioNet devices. *Id.*

## II.    ARGUMENT

### A.    A Preliminary Injunction is Appropriate When the Balance of Harms Favor an Injunction and Where a Party Shows Reasonable Likelihood of Success on the Merits and a Sufficiently Imminent Threat of Irreparable Harm.

A preliminary injunction is appropriate under Federal Rule of Civil Procedure 65 when a party shows "a reasonable likelihood of success on the merits of its claims and a sufficiently imminent threat of irreparable harm to it if no injunction is issued." *Frontier Corp. v. Telco Comm. Group, Inc.*, 965 F. Supp. 1200 (S.D. Ind. 1997) (citing *Advent Elecs., Inc. v. Buckman*, 112 F.3d 267 (7th Cir. 1997) and *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1267 (7th Cir. 1995)). "If the moving party meets these two criteria, the court must then balance the harms of erroneously granting or erroneously denying injunctive relief, and must consider the public interest, including the effects an injunction or the absence of an injunction would have on the interests of persons not before the court. *Id. See, also Roland Machinery Co. v. Dresser Ind.,*

*Inc.*, 749 F.2d 380 (7th Cir. 1984).

This motion for preliminary injunction is narrowly tailored to maintain the status quo. As a condition of activation of the CardioNet MCOT kits, Doe 1 and Doe 2 agreed that they would not "provide access to, tamper with, modify, distribute . . . transfer, disassemble, or reverse engineer or create a derivative work of the System of Service." The injunctive relief sought here is narrowly tailored to enforce that contractual obligation, by enjoining Defendants from examining, testing, copying or using any information, including computer code, obtained through their breach of these contractual obligations, and requiring that they preserve evidence related to their breach and interference with CardioNet's contractual rights.

In coordination with this motion, CardioNet is also seeking expedited discovery with the goal of answering the fundamental question in this suit – what did Defendants actually do with the CardioNet MCOT kits which they fraudulently attained? This structure of this case will be determined by the answer to this question. If Defendants merely obtained the kits, activated them, and did no more, then the issues to be resolved are greatly simplified and narrowed. However, if Defendants also disassembled the kits, or reverse engineered components or software in the kits, implicating CardioNet's protected trade secrets, the scope of the case is broadened. By bringing this motion with one for expedited discovery to obtain the answer to that fundamental question, CardioNet seeks to phase the initial phases of this action, keeping the issues narrow and focused until the nature of Defendants' use of the MCOT devices can be known.

**B.      Given That LifeWatch Has Essentially Admitted That It Obtained CardioNet's MCOT Kits By Fraud and Deception, CardioNet is Reasonably Likely to Succeed on the Merits of Its Claims.**

As set forth in the Stone Affidavit, LifeWatch employees Does 1 and 2 obtained

CardioNet's MCOT kits pursuant to prescriptions written for them by LifeWatch medical advisor Konarzewka.  Stone Affidavit, ¶ 16-18.  It is now clear that these prescriptions were medically unnecessary and written solely to permit LifeWatch to improperly obtain CardioNet's MCOT kits.  Having improperly obtained the MCOT kits, defendants told stories to try to keep the devices from CardioNet.  *Id.* ¶ 23 (Doe 2 claimed to have "lost" her kit).  However, after receiving cease and desist letters from CardioNet's counsel, LifeWatch's counsel finally acknowledged that LifeWatch had taken possession of the MCOT kits falsely prescribed to its employees.  Kelleher Affidavit ¶¶ 2-3.  Given these facts, CardioNet is reasonably likely to prevail on the merits of its claims for conversion, fraud, breach of contract and inducement of breach of contract.

LifeWatch's admission that it obtained the CardioNet kits prescribed to LifeWatch's employees is sufficient to show breach of the contract of the Assignment of Benefits and Services Agreement pursuant to which Does 1 and 2 received the kits from CardioNet.  In order to activate the CardioNet kits, the activator must agree to the limitations of the Assignment of Benefits and Services Agreement, which clearly prohibits Does 1 and 2 from giving the kits to LifeWatch and prohibits the kits from being used other than for medical monitoring purposes.  The Assignment of Benefits and Services Agreement also requires that the kits be returned as soon as the medical purpose has ceased.  *See, e.g., ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (C.A.7 (Wis.), 1996) (finding shrinkwrap licenses valid).  CardioNet's contract prohibiting "reverse engineering" and "tampering" is enforceable, and waives any rights that Defendants have to claim that their unauthorized inspection of the device was allowed because the information on the device was not protected.  *Cf. Davidson & Associates v. Jung,* 422 F.3d 630, 639 (8th Cir. 2005) (software license included enforceable waivers of reverse engineering and

fair use).  CardioNet's information can only be protected by surrender of the information improperly obtained in violation of the contracts.

Similarly, CardioNet's fraud claim has a reasonable likelihood of success.  CardioNet reasonably relied on Konarzewka's prescriptions in providing its proprietary MCOT kits to Does 1 and 2.  It is apparent that those prescriptions were fraudulent -- both were written the same day, to two LifeWatch employees who both paid cash rather than identify their employer for insurance purposes; Doe 1 later used his kit to send a false signal of cardiac emergency to CardioNet's monitoring center; LifeWatch admits it had possession of the kits, and did not return the kit prescribed for Doe 2 until the day CardioNet filed its Complaint.  CardioNet has been damaged as a direct result.  At a minimum, CardioNet has had to undertake an investigation to determine these facts, and CardioNet now faces the actual and continuing misappropriation of its proprietary information.  These facts also establish conversion, both of the kits themselves, and of the information contained therein.

At this time, CardioNet is not seeking a preliminary injunction based on its claim for misappropriation of trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, because it does not yet have the concrete facts at hand to determine the scope of Defendants' misappropriation.  Depending upon the facts discovered in this first phase of expedited discovery, CardioNet may at a future date move to broaden its claim for injunctive relief, to directly address the issues of Defendants' misappropriation of CardioNet's trade secret information.

    **C.**    **LifeWatch's Ability to Benefit from the Information It Illegally Obtained Constitutes an Imminent Threat of Irreparable Harm to CardioNet.**

By this request for entry of a preliminary injunction, CardioNet seeks to preserve the status quo and prevent immediate and irreparable injury to its business.  The preliminary

injunction is narrowly tailored to prevent Defendants from using the information they have improperly obtained until this matter can be resolved on its merits. Defendants have illegally obtained and currently retain CardioNet's proprietary information. Kelleher Affidavit at ¶¶ 3-5 (LifeWatch claims right to use information obtained from CardioNet equipment). Unless a preliminary injunction is issued, Defendants have an unrestricted ability to use the illegally obtained information it obtained from the kits in any way that benefits Defendants, including ways that irreparably harm CardioNet.

CardioNet's agreements with its patients, Exhibits B and C to the Stone Affidavit, protect CardioNet's proprietary information by prohibiting any unauthorized distribution or use of CardioNet's heart monitoring equipment. Stone Affidavit, ¶¶ 9-11. LifeWatch and its employees have blatantly violated and interfered with these restrictions and obtained CardioNet's devices through fraudulent prescriptions and improper acts intended to cover up the theft of CardioNet's devices. LifeWatch cannot be trusted with CardioNet's equipment, nor with the information illegally obtained from CardioNet's equipment.

The facts above demonstrate LifeWatch's disregard for contractual and ethical obligations. There is no adequate legal remedy for this ongoing misappropriation because LifeWatch can use CardioNet's information to compete with CardioNet, and CardioNet stands to lose the benefits of the millions of dollars of engineering and investigative efforts it expended developing the MCOT kits. Only injunctive relief can preserve the status quo and stop LifeWatch from further benefiting from the illegally obtained information about CardioNet's devices. *See Frontier Corp. v. Telco Comm. Group, Inc.*, 965 F. Supp. 1200 (S.D. Ind. 1997) (issuing preliminary injunction against former employee and her new employer from further breaches of the contract between former employee and former employer, including "not to make

any further use of such confidential information" taken by employee and ordering disclosure within ten days "concerning the location and identity of any documents outside their control and custody containing any of" the improperly acquired confidential information).

> D. **The Balance of Harms Clearly Favors CardioNet Because While CardioNet is in Immediate Danger of Suffering Irreparable Injury, LifeWatch Will Suffer No Harm from Maintaining the Status Quo.**

The balance of harm clearly favors CardioNet. LifeWatch has no legitimate interest in continuing to be able to use CardioNet's illegally obtained proprietary information. The injunctive relief sought by this motion is limited in scope, and designed to merely maintain the status quo. Finally, there is no evidence a preliminary injunction under these circumstances will do any disservice to the public interest.

> E. **No Security Should Be Required Because Preserving the Status Quo Will Not Harm LifeWatch in Any Way.**

Rule 65(c) of the Federal Rules of Civil Procedure provides that the Court may order appropriate security for entry of a preliminary injunction. No security should be required here because the injunction merely seeks to preserve the status quo and prevent LifeWatch from benefiting from its wrongful acquisition of CardioNet's MCOT kits. Because the preliminary injunction will not harm LifeWatch, no security is required. *See* Rule 65(c); *International Controls v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974), *cert. denied*, 417 U.S. 932 (1974); *Urbain v. Knapp Brothers Mfg. Co.*, 217 F.2d 810 (6th Cir. 1954) (no reversible error in district court's decision not to require bond, noting that it appeared that no material damage would result to defendants from not requiring a bond); *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d. Cir. 1961).

### III.    CONCLUSION

LifeWatch improperly obtained CardioNet's heart monitoring equipment through fraud

and improper acts, and sought to cover up its actions through further misrepresentations. LifeWatch cannot be trusted with the information obtained from CardioNet's equipment.

CardioNet respectfully requests entry of a preliminary injunction enjoining Defendants LifeWatch, Konarzewka, Doe 1, Doe 2, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise (the "Enjoined Parties") as follows:

1.  The Enjoined Parties and each of them are enjoined from copying or using any information, including computer code, obtained through the examination, use or testing of the CardioNet MCOT kits which are the subject of the Plaintiff's Complaint;

2.  The Enjoined Parties and each of them are enjoined from conducting any further examination, analysis or testing of information previously obtained from the CardioNet MCOT kits which are the subject of the Plaintiff's Complaint, including any computer object code or source code obtained from those kits;

3.  The Enjoined Parties and each of them are enjoined from any further breaches of the Assignment of Benefits and Services Agreement; and

4.  The Enjoined Parties and each of them are hereby directed to preserve any and all information, materials, computer code, records, test data, email, communications, or other information, documentation, or electronic files reflecting information gained from examination of the CardioNet MCOT kits, the analysis or use of information gained from that examination, or that otherwise relate or refer to those devices, their examination, or the information obtained thereby.

-12-

                                          Respectfully submitted,

                                          CARDIONET, INC.

Dated: November 29, 2007           By: s/Gregory J. Chinlund
                                          Thomas L. Duston
                                          Gregory J. Chinlund
                                          Alisa C. Simmons
                                          MARSHALL, GERSTEIN & BORUN LLP
                                          233 South Wacker Drive, 6300 Sears Tower
                                          Chicago, Illinois 60606-6357
                                          Telephone: (312) 474-6300
                                          Facsimile: (312) 474-0448

                                          FOLGER LEVIN & KAHN LLP
                                          Michael F. Kelleher (pro hac vice application to be filed)
                                          Julie L. Fieber (pro hac vice application to be filed)
                                          Amy L. Kashiwabara (pro hac vice app. to be filed)
                                          Embarcadero Center West
                                          275 Battery Street, 23rd Floor
                                          San Francisco, CA  94111
                                          Telephone: (415) 986-2800
                                          Facsimile: (415) 986-2827

                                          Attorneys for Plaintiff CARDIONET, INC.

CERTIFICATE OF SERVICE

    I hereby certify that on November 29, 2007, I electronically filed the foregoing Memorandum of Points and Authority in Support of Motion for Entry of Preliminary Injunction on Expedited Basis with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the following:

Sean W. Gallagher
Sean.Gallagher@bartlit-beck.com

                                              s/ Gregory J. Chinlund
                                              Gregory J. Chinlund
                                              Attorney for CardioNet, Inc.
                                              MARSHALL, GERSTEIN & BORUN LLP
                                              6300 Sears Tower
                                              233 South Wacker Drive
                                              Chicago, IL  60606-6357
                                              (312) 474-6300 (Phone)
                                              (312) 474-0448 (Facsimile)