UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff, | Case No. 07 C 6625 |
| v. | Judge Suzanne B. Conlon |
| LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2, | Magistrate Judge Morton Denlow |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO CARDIONET'S MOTION FOR EXPEDITED DISCOVERY**

## **PRELIMINARY STATEMENT**

Plaintiff CardioNet, Inc.'s ("CardioNet") motion for expedited discovery would be entirely unnecessary were it not for CardioNet's desire to avoid (1) actually asserting and presenting evidence to support its trade secrets claim and (2) providing meaningful discovery to LifeWatch. Defendants' counsel expressly stated to CardioNet's attorneys that LifeWatch was willing to proceed with expedited discovery as CardioNet has requested, provided that LifeWatch is given a similarly opportunity to expedite the discovery that it needs to respond to CardioNet's preliminary injunction motion. CardioNet refused this reasonable proposal for reciprocal discovery and filed this motion instead.

CardioNet has tried to manipulate its claims in order to engineer a one-way path for discovery. Rather than moving for a preliminary injunction and seeking discovery on its trade secrets claim CardioNet has deliberately chosen *not* to assert that claim in support of its request for injunctive relief. Instead, CardioNet purports to be seeking an injunction and expedited discovery on its claims for fraud, interference with contract, unfair competition and breach of contract. CardioNet has carved up its claims in this way in a vain effort to insulate itself from discovery on the core issue in this case – CardioNet's trade secrets claim.

None of the claims under which CardioNet is seeking a preliminary injunction or expedited discovery are sustainable as a matter of law. CardioNet's claims for fraud, interference with contract and unfair competition are all preempted under the Illinois Trade Secrets Act. CardioNet's breach of contract claim can be asserted only against the individual Doe defendants, not LifeWatch or Dr. Konarzerka, and it cannot legally be asserted in this Court because the contract upon which the claim is based contains a forum selection clause requiring all disputes to be maintained in the courts in San Diego, California.

LifeWatch is not seeking to forestall discovery or a hearing on CardioNet's motion. To the contrary, LifeWatch is confident that discovery will show that it did nothing wrong. LifeWatch is willing – as indicated in the meet and confer discussions – to provide pertinent discovery on an appropriately expedited basis. But if CardioNet is intent on pursuing a motion for a preliminary injunction, it must do so in connection with its misappropriation of trade secrets claim and it must be willing to engage in *reciprocal* discovery as the Federal Rules of Civil Procedure and case law mandate.

## STATEMENT OF FACTS

### A.   LifeWatch's Investigation of Plaintiff's Product

LifeWatch's investigation of CardioNet marketing and CardioNet's device was not nefarious or illegitimately motivated, and no trade secrets were unveiled or retained. Discovery will show that LifeWatch had a good faith and reasonable belief that CardioNet, its competitor in the marketplace for heart monitoring systems, had been interfering with LifeWatch's business in several ways. Discovery will also show that the conduct that CardioNet cites as the basis for its Complaint was part of a legitimate effort by LifeWatch to investigate CardioNet's interference with LifeWatch's business.

Specifically, discovery will show that LifeWatch undertook an examination of certain of CardioNet's products, which it calls an MCOT kit, in order to determine whether CardioNet was infringing any of LifeWatch's intellectual property and/or making false claims to doctors and health care providers and/or insurers. LifeWatch believes that the purpose of these marketing claims was and is to influence doctors to prescribe CardioNet's product rather than LifeWatch's, or to discourage insurers or Medicare carriers from reimbursing hospitals and patients for the costs of using LifeWatch's product.

By way of example, discovery will show that certain CardioNet marketing claims about the memory capability of its device raised concerns that CardioNet might be infringing one or more of LifeWatch's patents that relate (at least in part) to memory issues. To investigate these issues, LifeWatch conducted a limited examination of certain parts of CardioNet's device. LifeWatch's inspection was narrowly tailored to its concerns about its intellectual property and CardioNet's marketing claims. LifeWatch believes that discovery in this case will confirm that CardioNet's marketing claims are indeed false and that LifeWatch's investigation was, for that reason, fully warranted.

As CardioNet asserts, its device is available only by prescription and allegedly subject to non-negotiable contract terms that preclude anyone from looking inside the device to evaluate its capabilities (Br. at 2-3). Thus, patients, doctors and the consuming public must accept CardioNet's representations regarding the performance of the MCOT kit without being able to evaluate the device themselves. LifeWatch was unwilling to accept CardioNet's representations, and at the same time feared that its intellectual property was being infringed. To protect its business interests and test the veracity of CardioNet's claims in the marketplace, LifeWatch undertook the investigation that is the subject of CardioNet's complaint. Having already attempted to prevent disclosure of its product's limitations by contract, CardioNet is now attempting to use this lawsuit to prevent LifeWatch and the public from knowing the truth about the capabilities of its product.

**B.    Defendants Agreed to Reciprocal Expedited Discovery**

The day after CardioNet filed its complaint, counsel for both parties discussed CardioNet's proposal for expedited discovery by telephone. On that call, LifeWatch agreed to engage in expedited discovery (once CardioNet filed its preliminary injunction motion) and

4

suggested a schedule under which both parties would serve and take expedited discovery. (Ex. A) CardioNet rejected the proposal and insisted instead that CardioNet be allowed to proceed with expedited discovery to support its motion, without any provision for LifeWatch also to take discovery on a similar basis in order to defend itself. (Id.)

LifeWatch further suggested that CardioNet defer filing its motion for expedited discovery until after filing its preliminary injunction motion, thereby affording LifeWatch the opportunity to draft its own discovery requests on the issues that were raised. (Id.) At that point, LifeWatch's counsel suggested, the parties could confer meaningfully about the scope of discovery needed to be taken and the timing of that discovery, which would allow for the narrowing or elimination of issues needed to be addressed by the Court. (Id.) CardioNet rejected this proposal and filed the present motion.

## ARGUMENT

I. ALL OF PLAINTIFF'S CLAIMS THAT FORM THE BASIS OF THIS MOTION AND ITS MOTION FOR A PRELIMINARY INJUNCTION CANNOT BE SUSTAINED

The Illinois Trade Secrets Act ("ITSA") provides that the Act "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8. (The ITSA does not affect conflicting contractual remedies. See 765 Ill. Comp. Stat. 1065/8(b)(1).) "In other words, facts constituting a misappropriation of trade secrets give rise to liability under the ITSA, but not under any other state law theory." Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (dismissing plaintiff's common law tort claims as preempted by ITSA claim). Consequently, the ITSA preempts CardioNet's claims for conversion (Count 2), fraud (Count 4), interference with contract (Count 6) and unfair competition (Count 8), because

those claims rest on the same conduct by which CardioNet alleges LifeWatch misappropriated its trade secrets (Count 7).

In Thomas & Betts Corp., the court held that plaintiff's fraud claim was preempted because the allegations in support of its fraud claim simply stated that defendant misled and concealed its intention to take devices containing confidential information from plaintiff. 108 F. Supp. 2d at 974. The court also found that plaintiff's tortious interference with contract claim was preempted because it merely alleged that defendant "encouraged and directed" an individual to disclose confidential information in violation of a contract. Id. at 976. In C.H. Robinson Worldwide, Inc. v. Command Transp., LLC, the court found that plaintiff's unfair competition claim was preempted by the ITSA because it was dependent on the "existence of competitively significant secret information" and that allegations of defendant's unlawful use of plaintiff's trade secrets "underscore[d]" plaintiff's unfair competition claim. 2005 U.S. Dist. LEXIS 28063, at *19-20 (N.D. Ill. Nov. 16, 2005).

As in the above cases, CardioNet's fraud, interference with contract and unfair competition claims – three of the four claims underlying this discovery motion and CardioNet's motion for preliminary injunction – are based on the same factual allegations that underscore its ITSA claim for misappropriation of trade secrets:

- In support of its fraud claim, CardioNet relies on the same allegations that support its trade secrets claim – that Defendants engaged in conduct to obtain CardioNet's purported trade secrets and that the injury it suffered was the loss of "the proprietary, confidential and trade secret information" contained in the MCOT kits. Compl. ¶¶ 57, 60.

- CardioNet's intentional interference with contract claim also "re-alleges and incorporates by reference" all of the previous factual allegations concerning Defendant's alleged misappropriation of trade secrets before alleging that Defendants will continue to engage in that conduct, and that CardioNet "has been and continues to be injured in its business and property." Compl. ¶¶ 68-70.

- CardioNet's unfair competition claim also "re-alleges and incorporates by reference" all of the previous factual allegations concerning Defendant's alleged misappropriation of trade secrets and alleges that CardioNet will be caused irreparable injury by Defendants' "possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits." Compl. ¶¶ 79, 82.[1]

CardioNet's claims are based, at least in part if not in their entirety, on the core allegation that LifeWatch misappropriate trade secrets. As a result, CardioNet's claims for fraud (Count 4), interference with contract (Count 6), and unfair competition (Count 8) are preempted under the Illinois Trade Secret Act.

The remaining claim underlying Plaintiff's motions for expedited discovery and preliminary injunctive relief is a claim for breach of contract asserted against Does 1 and 2. The purported contract on which this claim is based was drafted by CardioNet. The copy attached to Plaintiff's complaint as Exhibit C contains a forum selection clause requiring any disputes arising under the contract to be brought in the courts in San Diego, California.

Forum selection clauses are enforceable, particularly against the party that drafted the contract and clause. In Muzumdar v. Wellness Int'l Network, Ltd., the Seventh Circuit affirmed the trial court's dismissal for improper venue under FRCP 12(b)(3) where plaintiff and defendant had entered into a contract containing a forum selection clause that provided that "jurisdiction and venue over any disputes arising out of this agreement shall be proper only in the federal or state courts in Dallas County, Texas." 438 F.3d 759, 761 (7th Cir. 2006). Like here, despite the mandatory language in the forum selection clause, the plaintiff in Muzumdar filed suit in the

---

[1] Though not the basis of the present motions before the Court, CardioNet's claim for conversion (Count 2) also is preempted by the ITSA. See Systems America, Inc. v. Providential Bancorp, Ltd., 2006 WL 463314, *6-7 (N.D. Ill., Feb. 24, 2006) (dismissing plaintiffs' conversion claim based on preemption under the ITSA, finding that plaintiffs' conversion claim rested on defendants' alleged misappropriation of plaintiffs' trade secret); Thomas & Betts, 108 F. Supp. 2d at 973 (dismissing conversion claim as preempted by ITSA and noting that claim based on conversion of computers and disks belonging to plaintiff, besides the information contained within, is also preempted as the value of those items is little beyond the information contained therein).

Northern District of Illinois. The Court granted defendant's motion to dismiss the claims pursuant to the forum selection clause. See id. at 762.

Because all four claims upon which Plaintiff has chose to base its motion for expedited discovery (not to mention its motion for preliminary injunctive relief) cannot be sustained, this motion (and that for preliminary injunctive relief) must be denied.

II.     **DEFENDANT IS ENTITLED TO DISCOVERY IN ORDER TO DEFEND ITSELF AGAINST PLAINTIFF'S TRADE SECRETS CLAIM IN THE EVENT PLAINTIFF CHOOSES TO PURSUE IT**

The case law and federal rules are clear that discovery must be reciprocal. Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .") (emphasis added); White v. American Tobacco Co., 125 F.R.D. 508, 510 (D. Nev. 1989) (denying motion to prohibit adversary from taking discovery where adversary itself "had aggressively pursued discovery" and holding that adversary "will not be allowed to have the benefit of unilateral discovery in this case").

Where a plaintiff initiates a lawsuit and seeks relief from a court, a defendant is entitled to conduct discovery in order to defend itself against plaintiff's claims. For example, in a case similar to this, where a patent infringement plaintiff filed a motion to preserve evidence, accelerate discovery and require the defendant to permit inspection and photographing of its manufacturing process, without opening itself to discovery, the court denied the motion. See H.R. Techs., Inc. v. Astechnologies, Inc., 2000 U.S. Dist. LEXIS 21869, *3-4 (S.D. Mich. July 25, 2000). The plaintiff continued to try to pursue unilateral discovery and block discovery by defendant designed to determine whether plaintiff was the owner of the patent at issue to the

point that the magistrate judge recommended sanctions against the plaintiff in part based on plaintiff's conduct "delaying defendant's reasonable efforts to conduct discovery." Id. at *1.[2]

A plaintiff alleging misappropriation of trade secrets has the burden of establishing that it has protectable trade secrets before it can argue that they have been misappropriated and must be willing to provide discovery on that issue. See Service Ctrs. of Chicago, Inc. v. Minogue, 180 Ill. App. 3d 447, 453-54 (1st Dist. 1989) (holding that in order to prove that information constitutes a trade secret within the meaning of the ITSA, plaintiff must establish that the information was known only to limited persons to whom it was necessary to impart the information and that the information is sufficiently secret to derive economic value from not being generally known to other persons who could obtain economic value from disclosing or using the information). Indeed, one court has held that the most fundamental aspect of a trade secrets case is the identity of plaintiff's trade secrets and defendant's ability to conduct discovery to confront plaintiff's allegations:

> It is painfully obvious . . . that identification of the trade secrets at issue is the most fundamental and basic aspect of this case. Indeed, after entry of an appropriate protective order, exact and specific identification of trade secrets should have been the starting point of discovery in this cause, not a matter for disclosure at the eleventh hour.

Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 989 (S.D. Cal. 1999) (quoting Diversified Tech., Inc. v. Dubin, 31 U.S.P.Q.2d 1692, 1695 (S.D. Miss. 1994) (opinion withdrawn from bound volume)). The Diversified Tech. opinion continued, "Plaintiff's failure to provide the written trade secrets has, at the very least, prevented defendants' from obtaining

---

[2] The cases Plaintiff cites (Br. at 6) in support of its motion did not allow solely the plaintiff to take discovery in support of a preliminary injunction. They simply allowed expedited discovery before the hearing date and discovery was reciprocal. See Dorel Juvenile Group, Inc. v. DiMartinis, 495 F.3d 500, 501 ("the district court allowed the parties to engage in expedited discovery and then held a hearing . . ."); Exhibit Works, Inc. v. Inspired Exhibits, Inc., 2005 WL 3527254, *1 (N.D. Ill. Dec. 21, 2005) ("Expedited discovery proceeded and opposing counsel worked professionally and cooperatively to present the matter efficiently to the court"). Plaintiff has not cited any case permitting what it proposes here – unilateral discovery.

9

adequate discovery on the most fundamental issue in the case, from obtaining expert testimony or other similar evidence to confront the allegations of trade secrets, and from adequately preparing a defense for trial." 31 U.S.P.Q.2d at 1695.[3]

Here, CardioNet has gone to the extraordinary length of limiting its motion for injunctive relief to unsustainable and preempted common law tort claims in order to avoid having to identify its purported trade secrets and open itself up to discovery. CardioNet simply might not want to pursue its trade secrets claim. But CardioNet included the trade secrets claim in its Complaint and is seeking to take discovery that it could use to support that claim in the future. Indeed, CardioNet could use the discovery it plans to take concerning LifeWatch's alleged investigation of the MCOT kit as a basis for *tailoring* its own trade secrets allegations later; having learned what LifeWatch did, CardioNet could then claim that its protectable trade secrets were exactly what LifeWatch examined. CardioNet should not be permitted to artificially limit the claims on which it purports to be proceeding now in order to gain this advantage for itself later.

As a final matter, CardioNet seeks to have an expedited discovery schedule and hearing on its motion for preliminary injunction but at the same time argues that discovery in advance of the hearing on the preliminary injunction should be "phased." By its very nature, the "phased discovery" that CardioNet proposes will not be "expedited"; rather, proceeding with discovery in phases will only serve to delay any hearing on the preliminary injunction motion.

---

[3] The principle that a trade secrets plaintiff must identify the allegedly misappropriated trade secret(s) before it can conduct any discovery is so fundamental that some states have codified the requirement and provided a procedural mechanism to do so. See Computer Economics, 50 F. Supp. 2d at 982.

## CONCLUSION

For all these reasons, the Court should deny Plaintiff's motion for unilateral expedited discovery and instead establish a schedule that affords both parties an equal and fair opportunity to take expedited discovery in advance of the preliminary injunction hearing.

November 29, 2007                    By: /s/ Sean W. Gallagher

BARTLIT BECK HERMAN PALENCHAR
 & SCOTT LLP
Sean W. Gallagher (6239367)
54 W. Hubbard, Suite 300
Chicago, IL 60610
(312) 494-4428
sean.gallagher@bartlit-beck.com

PROSKAUER ROSE LLP
Kevin J. Perra (*Pro hac vice* to be filed)
Alexander Kaplan (*Pro hac vice* to be filed)
1585 Broadway
New York, New York  10036
(212) 969-3000
kperra@proskauer.com

*Attorneys for all Defendants*

CERTIFICATE OF SERVICE

I, Sean W. Gallagher, do hereby certify that on this 29th day of November 2007, I caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO CARDIONET'S MOTION FOR EXPEDITED DISCOVERY** to be served via electronic mail on CardioNet through its counsel listed below:

Gregory Dunston
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive, 6300 Sears Tower
Chicago, IL 60606-6357
Telephone: 312-474-6300

Michael Kelleher
FOLGER LEVIN & KAHN, LLP
275 Battery Street 23rd Floor
San Francisco, CA 94111
Telephone: 415-986-2800

By: _____
Sean W. Gallagher