UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
|       Plaintiff, | Case No. 07C 6625 |
| v. | District Judge Conlon |
| LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2. | Magistrate Judge Denlow |
|       Defendants. | |

_____

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION FOR EXPEDITED DISCOVERY**
_____

Defendants' opposition to Plaintiff CardioNet's Motion for Expedited Discovery sidesteps the fundamental question underlying CardioNet's motion. CardioNet seeks expedited discovery to answer a straightforward question – what is the nature of LifeWatch's "limited examination of certain parts of CardioNet's device" (Defs.' Opp'n at 4)? Those facts will determine whether CardioNet's trade secrets were accessed by LifeWatch, which could substantially narrow the scope of this suit. It is a much more efficient use of the parties' and this Court's resources to phase discovery, such that discovery targeted at this question comes first, before discovery for the preliminary injunction hearing and discovery on other issues in the case, including CardioNet's trade secrets. LifeWatch's contrary arguments ignore that question, and lack merit.

    **A.**    **CardioNet's Claims Are Not Preempted.**

Defendants argue CardioNet's motion should be denied because its common law claims are preempted under the Illinois Trade Secret Act ("ITSA"). First, the ITSA does not preempt

contract claims, so even if this preemption argument were valid, which it is not, expedited discovery should be allowed based on CardioNet's claim for breach of contract.

Second, Defendants' preemption argument mischaracterizes CardioNet's claims. For example, CardioNet's conversion claim is predicated not just on Defendants' conversion of <u>information</u> embodied in the CardioNet MCOT kits, but also on conversion of the tangible devices. On that point, there appears to be no dispute that Defendants wrongfully obtained these devices using fraudulent prescriptions, and then wrongfully kept the devices for approximately two months despite CardioNet's repeated demands for their return. Similarly, CardioNet's claims for fraud and interference with contract rest in part on LifeWatch's misappropriation of the tangible devices, not just the confidential, proprietary, and trade secret information obtained in them. Likewise with CardioNet's claim for unfair competition. Thus, these claims are not preempted under the Illinois Trade Secret Act.

Third, courts have recognized exceptions to preemption which are applicable here. For example, in *FAIP North America, Inc. v. Sistema S.R.L.*, 2005 WL 3436398 (N.D. Ill. 2005), the court distinguished *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968 (N.D. Ill. 2000), upon which Defendants rely. The court reasoned that the preemption argument in *Thomas & Betts* was predicated on the notion that the claims could not be made without reliance on the misappropriation of plaintiff's trade secrets alone. It also noted that *Thomas & Betts* was decided on summary judgment, but *FAIP* involved a motion to dismiss, where fact discovery was still open. At this stage, the court was unwilling to limit the alleged misappropriation of confidential information to just trade secrets, holding that plaintiff had yet to directly identify the nature of the alleged misappropriated confidential information, and at this point of the litigation it did not have to. 2005 WL 3436398, *6. Similarly, here fact discovery has not started, CardioNet plead claims broader than just trade secrets, and Defendants' misappropriation included both tangible and intangible property.

Similarly, in *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 489 F. Supp. 2d 865 (N.D. Ind. 2007), the district court denied in part a motion for judgment on the pleadings that

was based on a similar preemption argument under the Indiana Trade Secret Act (which has preemption language like the Illinois act). The court reasoned that there the plaintiff had plead more than just the misappropriation of trade secrets. Like CardioNet, it plead that defendants were "exercising unauthorized control over [plaintiff's] property, including but not limited to its copyright, trade secret, proprietary and confidential information." The court also distinguished *Thomas & Betts*, because in *Patriot Homes* it could not be said that the tangible items taken by defendant here have but an immaterial intrinsic value. Similarly, here the CardioNet MCOT kits Defendants converted did not have immaterial intrinsic value.

For these reasons, CardioNet's common law claims also serve as a basis for ordering expedited discovery.

### B. The Contractual Forum Selection Clause Does Not Require Dismissing CardioNet's Contract Claim.

Defendants argue that CardioNet's breach of contract claim cannot support an order for expedited discovery because the underlying contract has a forum selection clause that provides for dispute resolution in San Diego, California. While such clauses may certainly be enforceable, at the same time courts are not bound by them. For example, in *Rouse Woodstock, Inc. v. Surety Fed. Sav. & Loan Assn.*, 630 F. Supp. 1004, 1008 (N.D. Ill. 1986), the defendant moved to transfer venue. The court declined to be bound by a forum selection clause in the underlying contract, reasoning that the clause was just a part of the overall consideration of factors relating to venue. At most, such clauses affect consideration of the convenience of the parties. *Id.* Thus, this Court is not compelled to dismiss CardioNet's contract claim merely because of the forum selection clause.

Moreover, the forum selection clause, if it is even relevant, would only be so for CardioNet's contract claim. CardioNet's remaining claims would remain in this Court. Under similar circumstances, courts have recognized a public policy against splitting litigation among different forums based on a forum selection clause. For example, in *Mylan Pharmaceuticals Inc. v. American Safety Razor Co.*, 265 F. Supp. 2d 635 (N.D. W.Va. 2002), there were multiple

claims among multiple parties, but one defendant moved to either dismiss or transfer a single cross claim against it, based solely on a forum selection clause. The court denied the motion, finding it a gross waste of the parties' and the court's resources and unreasonable. *Id.* at 640. Defendants' attempt to partition CardioNet's claim is similarly wasteful and unreasonable. It appears a mere stalling tactic, because presumably Illinois is a far more convenient forum for Defendants than California. Regardless, the forum selection clause is not a proper basis to deny the limited expedited discovery CardioNet has requested.

**C.  In Order to Focus and Potentially Narrow the Issues, This Phase of Discovery Should Be Reciprocal but Limited to the Facts Surrounding Defendants' Examination of CardioNet's Kits.**

Defendants argue that expedited discovery should be reciprocal and include discovery on CardioNet's trade secrets. CardioNet has no objection to this first phase of discovery being reciprocal. However, it submits that the first phase should focus on determining what Defendants did with CardioNet's MCOT kits.

Defendants' argument ignores that the circumstances here are different from those of a typical trade secret case, where expedited discovery on the plaintiff's trade secrets would be warranted. In a typical trade secret case, plaintiff seeks discovery <u>about the defendant's product</u>, to show that defendant had access to and used plaintiff's trade secrets. In that situation, there is a valid basis for early discovery <u>on plaintiff's trade secrets</u>, to identify up front the trade secrets at issue and narrow the dispute (and discovery) to those issues actually in contention. *In contrast, here CardioNet does not seek expedited discovery about LifeWatch products, only about what LifeWatch did with CardioNet's two MCOT kits.* Indeed, in the circumstances here, the rationale of allowing expedited discovery on issues which may allow the parties to narrow the scope of litigation weighs in favor of granting CardioNet's motion, because knowing what LifeWatch did with its kits may allow CardioNet to determine that its trade secrets were not misappropriated, which would simplify this litigation.

Finally, LifeWatch cannot excuse its unlawful conduct by claiming it was justified by a need to examine CardioNet's products to determine whether they infringed its own intellectual property. *See, e.g., Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 730 (C.A.7 (Ill.) 2003) ("Reverse engineering can defeat a trade secret claim, but only if the product could have been properly acquired by others").

For the reasons set forth above, CardioNet's Motion for Expedited Discovery should be granted.

Dated: November 29, 2007

Respectfully submitted,
CARDIONET, INC.

By: s/Gregory J. Chinlund
Thomas L. Duston
Gregory J. Chinlund
Alisa C. Simmons
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive, 6300 Sears Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

FOLGER LEVIN & KAHN LLP
Michael F. Kelleher (pro hac vice application to be filed)
Julie L. Fieber (pro hac vice application to be filed)
Amy L. Kashiwabara (pro hac vice app. to be filed)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiff CARDIONET, INC.

CERTIFICATE OF SERVICE

      I hereby certify that on November 29, 2007, I electronically filed the foregoing Plaintiff's Reply Brief In Support Of Motion For Expedited Discovery with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the following:

Sean W. Gallagher
Sean.Gallagher@bartlit-beck.com

                                                  s/ Gregory J. Chinlund
                                                  Gregory J. Chinlund
                                                  Attorney for CardioNet, Inc.
                                                  MARSHALL, GERSTEIN & BORUN LLP
                                                  6300 Sears Tower
                                                  233 South Wacker Drive
                                                  Chicago, IL  60606-6357
                                                  (312) 474-6300 (Phone)
                                                  (312) 474-0448 (Facsimile)