UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff, | Case No. 07C 6625 |
| v. | District Judge Conlon |
| LIFEWATCH CORP., HANNA KONARZEWSKA, M.D., JOEL LEHMAN and LISA AMENT, | Magistrate Judge Denlow |
| Defendants. | |

**SECOND AMENDED COMPLAINT**

### I. INTRODUCTION

1. This case arises out of LifeWatch's attempted theft of two CardioNet heart monitoring kits containing CardioNet's valuable confidential, proprietary and trade secret information and LifeWatch's efforts to cover up and justify its actions with multiple and inconsistent lies.

### II. ALLEGATIONS CONCERNING THE PARTIES

2. CardioNet, Inc. ("CardioNet") is a corporation organized and existing under the laws of the State of California, whose headquarters are located at 1010 Second Avenue, Suite 700, San Diego, California 92101.

3. Upon information and belief, LifeWatch Corporation ("LifeWatch") is a Delaware corporation, whose headquarters are located at 10255 West Higgins Road, Suite 100, Rosemont, Illinois, 60018.

4. CardioNet and LifeWatch are competitors in the heart monitoring business.

5.  Upon information and belief, Hanna Konarzewska, M.D. ("Konarzewska") is a contractor or employee of defendant LifeWatch, and a resident of Cook County, Illinois. Konarzewska joined LifeWatch in May of 2007 as the on site Medical Advisor and Director of its Monitoring Program. Konarzewska also continues to work at Loyola University, and to practice as the Medical Director of Electrophysiology at Swedish Covenant Hospital and as EP Cardiologist at Oak Park Cardiology in the Chicago area.

6.  Upon information and belief, Joel Lehman ("Lehman") and Lisa Ament ("Ament") are employees of defendant LifeWatch, and residents of Cook County, Illinois.

### III.  JURISDICTION

7.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.  Jurisdiction also arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

### IV.  VENUE

9.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) and (c). Venue is proper in this Court because, among other things, Defendant LifeWatch is a corporation that is subject to personal jurisdiction in the United States District Court for the Northern District of Illinois. Similarly, upon information and belief, Defendants Lehman, Ament, and Konarzewska are residents of the Northern District of Illinois.

### V.  INTRA-DISTRICT ASSIGNMENT

10.  Assignment of this action to the Eastern Division is proper because a substantial part of the events giving rise to the claims alleged herein occurred in this Division, where there were meetings and communications giving rise to this action, and where Defendants are located.

## VI.     FACTUAL ALLEGATIONS

### A.     Plaintiff CardioNet and Defendant LifeWatch are Competing Providers of Cardiac Monitoring Services.

11.     Plaintiff CardioNet was the first company to offer an ambulatory outpatient wireless telemetry system for monitoring a patient's heart while the patient is at home, at work or traveling.  Once enrolled with CardioNet, physicians prescribe CardioNet's Mobile Cardiac Outpatient Telemetry ("MCOT") kit for patients for a short-term period up to 21 days of monitoring the patient's heart's electrocardiogram signal.  CardioNet's MCOT kit monitors patients' hearts 24 hours a day as the patients continue with their normal daily routine.  A patient using the CardioNet MCOT kit wears a lightweight, three lead sensor (the "sensor").  The sensor communicates with a small mobile monitor (the "monitor") that can be carried in a pocket or purse.  The monitor, sensor, and other miscellaneous equipment necessary to operation, such as bases, power cords, cases and guides, altogether comprise the CardioNet MCOT kit.  A complete inventory of the equipment comprising the kit is shown in Exhibit A.  If the patient experiences certain cardiac events, an electrocardiogram is transmitted from the monitor to CardioNet's monitoring center.  The MCOT kit performs its monitoring and transmitting functions without the need for any manual intervention from the patient whatsoever.

12.     CardioNet's MCOT kits are issued to patients who are then obligated to return the systems at the end of the short-term monitoring period.  The patient (or his insurance) is responsible for the cost of monitoring, but does not pay for the purchase of the actual MCOT kit itself.  CardioNet does not sell its MCOT kits.  The systems are only available by prescription to patients with health conditions that require this type of the electrocardiogram monitoring program.

13.     As a condition of receiving the MCOT kit, a patient must agree to return the kit to CardioNet immediately upon completion of monitoring.  The patient's affirmative assent to this obligation is required as part of the activation process.  Screenshots of the activation process are attached hereto as Exhibit B.

14. As shown on the first screen shown in Exhibit B (identified on Exhibit B as IDD_Patient_Consent_1), the patient must press yes or no to the statement: "I agree to the terms and conditions of the Assignment of Benefits and Services Agreement." The patient may only activate the device by pressing "yes" and accepting the Assignment of Benefits and Services Agreement.

15. A copy of the Assignment of Benefits and Services Agreement which every patient must accept to activate the CardioNet device is attached as Exhibit C to this complaint. A copy of the Assignment of Benefits and Services Agreement is provided to patients with the CardioNet MCOT kit.

16. The Assignment of Benefits and Services Agreement provides that patients will only use the MCOT for heart monitoring and that they will not allow third-parties such as LifeWatch to tamper with or reverse engineer the device:

> **1. Use of Cardiac Monitoring System ("System") and Access to and Use of CardioNet Monitoring Service ("Service").** Subject to Patient's compliance with the terms and conditions on both sides of this enrollment form (the "Agreement"), CardioNet hereby grants Patient a personal, nonexclusive, nontransferable license to use the System and to access and use the features and functions of the Service **solely for purposes of monitoring Patient's heart rate as prescribed by Patient's physician**. . . . **Patient shall not**, in whole or in part, sublicense, **provide access to, tamper with**, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, **disassemble, or reverse engineer or create a derivative work of the System or Service**. Patient shall not, in whole or in part, transfer or assign this Agreement or any right granted hereunder, except upon the prior written consent of CardioNet. Any prohibited transfer or assignment shall be null and void. Subject to the licenses granted herein, as between CardioNet and Patient, **CardioNet holds all right, title and interest in and to the System and the Service including, without limitation, any patents, trademarks, trade secrets, copyrights or other intellectual property rights therein**. CardioNet reserves all rights not expressly granted to Patient under this Agreement.

Exhibit C (emphasis added).

17. In addition to agreeing to the Assignment of Benefits and Services Agreement, the patient must agree during activation of the CardioNet device that "I will return the CardioNet Monitor Equipment immediately upon completion of monitoring," (See Exhibit B as IDD_Patient_Consent_3). By so agreeing, a contractual obligation is created, obligating the patient to immediately return the MCOT kit upon completion of monitoring.

18. CardioNet's MCOT kits contain confidential, proprietary and trade secret information that have made CardioNet the industry leader in mobile heart monitoring with the most advanced system. CardioNet's monitoring equipment incorporates millions of dollars of engineering and investigative research that CardioNet has invested in the development and improvement of its system. The MCOT kits also incorporate confidential, proprietary and trade secret software, which is subject to protection under the United States copyright laws.

19. CardioNet has taken reasonable measures to protect the trade secrets incorporated in its devices from disclosure to the public and competitors. CardioNet never sells its monitoring equipment. CardioNet allows patients who have a prescription for cardiac monitoring to have access to the CardioNet monitoring equipment only if they agree to the Assignment of Benefits and Services Agreement (exhibit C) and the device activation acceptance screens (exhibit B).

20. Defendant LifeWatch is a competitor of CardioNet, marketing a competing ambulatory cardiac telemetry system.

**B.   Defendant Konarzewska Wrote False Prescriptions for LifeWatch Employees Lehman and Ament for CardioNet's MCOT Services.**

21. On information and belief, on or about September 11, 2007, defendant Konarzewska wrote prescriptions for CardioNet's MCOT services for Lehman and Ament, which provided for 21 days of cardiac monitoring for each. On information and belief, Konarzewska wrote prescriptions for Lehman and Ament in order to allow defendant LifeWatch to unlawfully obtain CardioNet's MCOT kits.

22. On information and belief, pursuant to Konarzewska's false prescriptions, on September 11, 2007, CardioNet provided both Lehman and Ament with heart monitoring devices

for the purpose of a diagnostic test. Both Lehman and Ament paid cash for these diagnostic tests even though they were both presumably <u>insured</u> employees of LifeWatch. On information and belief, CardioNet alleges that Lehman and Ament paid cash in order to conceal from CardioNet that LifeWatch was the employer of Lehman and Ament.

23. On information and belief, Lehman and Ament both agreed to the Assignment of Benefits and Services Agreement and agreed that they would return the CardioNet MCOT kit "immediately" upon completion of monitoring. Both Lehman and Ament activated their systems, and activation is not possible without agreeing to these obligations, as explained *supra* in Paragraphs 13 to 17 and Exhibits B and C.

### C. Lehman Used a Cardiac Simulator to Fake a Heart Attack.

24. On information and belief, on the afternoon of October 26, 2007, Lehman used his CardioNet MCOT kit with a cardiac simulator, causing signals to be transmitted to the CardioNet monitoring center of a false cardiac emergency. Upon receiving the false data, CardioNet's monitoring center contacted emergency rescue personnel, and Chicago authorities responded by sending emergency personnel to the home of Lehman. In fact, there was no emergency, because the CardioNet MCOT kit was not monitoring Lehman, but was instead attached to a machine that simulated a cardiac emergency.

25. On information and belief, the fact that Lehman used a cardiac simulator to fake a heart attack confirms that CardioNet's MCOT kit was not obtained for the valid purpose of monitoring a suspected heart condition in Lehman serious enough to require CardioNet's MCOT kit. To the contrary, it shows that Konarzewska improperly prescribed the system, and Lehman improperly obtained it, for the purpose of allowing LifeWatch to improperly obtain the system in order to wrongfully acquire CardioNet's confidential, proprietary and trade secret information.

**D.   Both Lehman and Ament Failed to Immediately Return Their MCOT Kits At the End of Monitoring As They Had Agreed, and Ament Falsely Claimed to Have Lost the Kit.**

26.  Lehman and Ament did not immediately return their MCOT kits at the conclusion of monitoring as they had agreed during the activation process. CardioNet contacted both individuals and demanded the return of the kits. Lehman did not return his kit until November 15, 2007.

27.  At first, Ament claimed her MCOT kit was lost by a third party moving service, though, upon information and belief, it was sent to her current address. Later, Ament claimed that she did not know how or when it was lost. At one time, she even claimed she could not look for it because her basement light was burnt out. As recently as November 19, 2007, Ament called CardioNet, still claiming she had lost its MCOT kit.

28.  On information and belief, Defendants conspired to and did convert the CardioNet MCOT kits prescribed to Lehman and Ament for their own wrongful use, including the misappropriation of CardioNet's confidential, proprietary and trade secret information.

**E.   After CardioNet Made Formal Demand for Return of Its MCOT Kit, LifeWatch Admitted That It Has CardioNet's Equipment, But Claims It Had Acted within Its Rights.**

29.  On November 16, 2007, CardioNet's counsel sent cease and desist letters to LifeWatch and Konarzewska, demanding return of its devices. Up to this time, Defendants' story had been that the MCOT kits were legitimately prescribed, and Ament's failure to return the kit was merely because she lost it. Lehman never explained his delay in returning the kit.

30.  However, on November 20, 2007, LifeWatch's counsel wrote to CardioNet's counsel and, without denying that it had CardioNet's MCOT kit, for the first time claimed LifeWatch's actions were "taken with the intent to ensure that its patents or other proprietary rights have not been infringed."

31.  After receiving the letter from LifeWatch's counsel on November 20, 2007, CardioNet's counsel called LifeWatch's counsel to request the immediate return of the device.

LifeWatch's counsel refused to confirm whether LifeWatch had the device, and refused to cooperate in its return.

32. In a subsequent telephone conversation on November 23, 2007, LifeWatch's counsel admitted that LifeWatch had the CardioNet monitoring kit. LifeWatch's counsel refused to describe what had been done by LifeWatch with the kit other than stating that LifeWatch was investigating potential claims against CardioNet. LifeWatch's counsel refused to allow CardioNet's representatives to pick up the kit that day. LifeWatch finally allowed CardioNet's representative to pick up the kit from LifeWatch's office in Rosemont, Illinois, on November 26, 2007.

33. As a direct result of Defendants' acts, CardioNet has had to undertake investigative and remedial measures, and upon information and belief, LifeWatch has also obtained confidential, proprietary and trade secret information from its unauthorized and improper access to and use of the CardioNet MCOT kit.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. § 1030 (COMPUTER FRAUD AND ABUSE ACT)
## (AGAINST ALL DEFENDANTS)

34. CardioNet re-alleges and incorporates by reference paragraphs 1 through 33 as though fully stated herein.

35. Upon information and belief, by the acts plead above, Defendants violated 18 U.S.C. § 1030(a)(5)(A)(i) of the Computer Fraud and Abuse Act, by knowingly causing the transmission of information, and as a result of such conduct, intentionally caused damage without authorization to a protected computer. The CardioNet monitor and the monitoring center constitute protected computers within the meaning of the Act.

36. Upon information and belief, Defendants obtained and activated MCOT kits under false pretenses, and then transmitted simulated cardiac signals to the CardioNet monitoring center, allowing them to examine and test the CardioNet system in order to obtain CardioNet's confidential, proprietary and trade secret information. That information reflects and incorporates

millions of dollars of engineering and investigative research that CardioNet has invested in the development and improvement of its system. Upon information and belief, Defendants also knowingly causing the transmission of information (a false signal of cardiac emergency) to CardioNet's monitoring center, resulting in the dispatch of emergency personnel to Lehman's home.

37. Upon information and belief, by these acts Defendants also violated 18 U.S.C. § 1030(a)(5)(A)(ii), by intentionally accessing a protected computer without authorization, and as a result of such conduct recklessly caused damage, and also violated 18 U.S.C. § 1030(a)(5)(A)(iii), by intentionally accessing a protected computer without authorization, and as a result of such conduct caused damage.

38. As a direct and proximate result of Defendants' acts in violation of the Computer Fraud and Abuse Act, CardioNet has had to undertake investigative and remedial measures, causing losses to CardioNet in the past 1-year period aggregating at least $5,000 in value, to be determined at trial. 18 U.S.C. § 1030(a)(5)(B)(i).

39. Upon information and belief, Defendants' improper and unauthorized use of the CardioNet MCOT kit with a cardiac simulator to transmit false cardiac signals to the CardioNet monitoring center caused impairment or potential impairment of CardioNet's medical examination, diagnosis, treatment, or care of one or more individuals, (18 U.S.C. § 1030(a)(5)(B)(ii)), by, *inter alia*, impairing or potentially impairing CardioNet's monitoring of legitimate patients, and by requiring the dispatch of Chicago emergency personnel to Lehman's house for a false cardiac event.

40. Upon information and belief, Defendants' improper and unauthorized use of the CardioNet MCOT kit with a cardiac simulator to transmit false cardiac signals to the CardioNet monitoring center, with the result that emergency medical technicians were dispatched to the home of Lehman for a false cardiac event, caused a threat to public health or safety. 18 U.S.C. § 1030(a)(5)(B)(iv).

41. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet because Defendants' continued possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of the confidential, proprietary, and trade secret information incorporated into these systems. Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

## SECOND CLAIM FOR RELIEF

## CONVERSION (AGAINST ALL DEFENDANTS)

42. CardioNet re-alleges and incorporates by reference paragraphs 1 through 41 as though fully stated herein.

43. CardioNet owns all rights to ownership and possession of the confidential, proprietary, and trade secret information embodied in the MCOT kits provided to Lehman and Ament, because under the terms of its monitoring agreements, ownership of the kit stayed with CardioNet and Lehman and Ament were expressly prohibited from allowing a third party, like LifeWatch, to have access to, tamper with, disassemble, reverse engineer, or create a derivative work from the kits.

44. CardioNet has an absolute and unconditional right to the immediate possession of any confidential, proprietary, or trade secret information LifeWatch has obtained from the MCOT kits.

45. CardioNet has made demand on Defendants for return of any confidential, proprietary, or trade secret information obtained from its MCOT kits.

46. Upon information and belief, Defendants have wrongfully and without authorization assumed ownership over confidential, proprietary, and trade secret information obtained from the MCOT kits.

47.     As a direct and proximate result of Defendants' conversion of this information, CardioNet has suffered substantial damages in an amount in excess of the Court's jurisdiction to be determined at trial.

48.     Upon information and belief, Defendants' conversion, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet because Defendants' continued possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of confidential, proprietary, and trade secret information incorporated into these kits. Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

49.     Upon information and belief, at the time Defendants converted the MCOT kits and the confidential, proprietary, and trade secret information embodied in these kits, Defendants were guilty of malice, oppression, and a willful and conscientious disregard for the rights of CardioNet in that Defendants, without making any investigation and with reckless indifference and willful and conscious disregard of the rights of any person who may have had an interest in the property, and particularly the rights of CardioNet, did convert the property.

50.     Further, after knowledge and notice of CardioNet's interest in the converted property was given to Defendants, Defendants initially failed and refused to return the kit prescribed to Ament, and continue to fail and refuse to return confidential, proprietary, and trade secret information obtained from the MCOT kits. By reasons of these acts CardioNet has been oppressed and seeks punitive and exemplary damages.

### THIRD CLAIM FOR RELIEF

### COMMON LAW FRAUD (AGAINST ALL DEFENDANTS)

51.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 50 as though fully stated herein.

52. Upon information and belief, Defendants made false and fraudulent statements of fact to CardioNet, including, but not limited to, representations that Lehman and Ament have cardiac health conditions warranting prescribing the CardioNet MCOT kit; that defendant Konarzewska's prescriptions to Lehman and Ament were for the purpose of monitoring the cardiac health conditions of Lehman and Ament; that Lehman and Ament obtained the CardioNet MCOT kits for the purpose of monitoring their cardiac health conditions; and that Lehman and Ament intended to comply with the promises made to CardioNet in the Assignment of Benefits and Services Agreement (Exhibit C) and in activating the device as shown in Exhibit B. Upon information and belief, Defendants knew these statements were false.

53. CardioNet had a right to rely on the statements and did, in fact, rely on the statements in deciding to provide Lehman and Ament with CardioNet MCOT kits.

54. Upon information and belief, Defendants' false statements to CardioNet were made for the purpose of inducing CardioNet to provide Lehman and Ament with CardioNet MCOT kits.

55. CardioNet's reliance upon Defendants' false statements led to CardioNet's injury in the loss of the MCOT kits and the wrongful acquisition of the MCOT kits, and the proprietary, confidential and trade secret information contained therein, by its competitor defendant LifeWatch.

56. If not for the false representations by Defendants, CardioNet would not have provided Lehman and Ament with CardioNet MCOT kits.

57. Upon information and belief, Defendants' acts of deception were outrageous, because performed with malice, an evil motive and/or with reckless indifference to CardioNet's rights. Therefore, CardioNet is entitled to recover exemplary damages against Defendants in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## BREACH OF CONTRACT (AGAINST LEHMAN AND AMENT)

58. CardioNet re-alleges and incorporates by reference paragraphs 1 through 57 as though fully stated herein.

59. Lehman and Ament each entered into agreements as part of the activation process as shown in Exhibits B and C to this complaint and described above.

60. Upon information and belief, Lehman and Ament each breached their agreements with CardioNet by:

   a. Using the MCOT kits for purposes other than monitoring pursuant to a prescription;

   b. Failing to return the MCOT kits immediately once monitoring ended;

   c. Providing third-parties with access to the kits for misappropriation of confidential, proprietary, and trade secret information and reverse engineering.

61. As a direct and proximate result of breaches of their agreements by Lehman and Ament, CardioNet has sustained and will continue to sustain substantial damages in an amount to be determined at trial.

62. CardioNet has no adequate remedy at law against these breaches of contract as alleged herein. Unless the agreements are specifically enforced, CardioNet will suffer irreparable harm.

## FIFTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH CONTRACT (AGAINST LIFEWATCH)

63. CardioNet re-alleges and incorporates by reference paragraphs 1 through 62 as though fully stated herein.

64. LifeWatch has improperly interfered with and, if not enjoined, will continue to interfere with CardioNet's agreements with Lehman and Ament by inducing Lehman and Ament to enter into contracts with CardioNet under false pretenses and to breach those contracts by the acts described above.

65. CardioNet has been and continues to be injured in its business and property and has sustained and will continue to sustain substantial damage.

66. CardioNet has been damaged in an amount to be determined in accordance with proof at trial. CardioNet has no adequate remedy at law against this intentional interference with contractual relations. Unless LifeWatch is restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

67. CardioNet is informed and believes and on that basis alleges that LifeWatch's interference with contractual relations was and is willful and malicious, and was and is intended to obtain an unfair competitive advantage such that CardioNet is entitled to recover exemplary damages against LifeWatch in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRETS (AGAINST ALL DEFENDANTS)

68. CardioNet re-alleges and incorporates by reference paragraphs 1 through 67 as though fully stated herein.

69. Upon information and belief, by the acts set forth in detail above Defendants have used and disclosed, and threaten to use and disclose CardioNet's trade secrets as embodied in its MCOT kits, in order to avoid incurring the time, effort, and expense of independently developing such trade secret information for use in LifeWatch's competing cardiac monitoring product. Defendants' acts constitute misappropriation and threatened misappropriation of trade secrets within the meaning of the Illinois Trade Secret Act (765 ILCS 1065 *et seq.*).

70. Upon information and belief Defendants' misappropriation is ongoing and unless restrained from doing so, Defendants will continue to misappropriate CardioNet's trade secrets to unfairly compete with CardioNet.

71. As a result of Defendants' misappropriation, CardioNet has sustained actual damages, and LifeWatch has been unjustly enriched in an amount to be determined in accordance with proof at trial.

72.     Defendants' continuing misappropriation, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet, because it threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of the trade secrets incorporated into the CardioNet MCOT kits.  Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

73.     Defendants' misappropriation and threatened misappropriation of CardioNet's trade secrets was and is wanton, willful and malicious.  Accordingly, CardioNet is entitled to recover exemplary damages against Defendants in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

## COMMON LAW UNFAIR COMPETITION (AGAINST ALL DEFENDANTS)

74.     CardioNet re-alleges and incorporates by reference paragraphs 1 through 73 as though fully stated herein.

75.     Defendants' acts as alleged above constitute unfair competition under the governing common law.

76.     As a direct and proximate result of Defendants' unfair competition, CardioNet has suffered substantial damages in an amount in excess of the Court's jurisdiction to be determined at trial.

77.     Defendants' unfair competition, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to CardioNet because Defendants' continued possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits threatens CardioNet with the irreplaceable loss of the substantial benefits flowing from its development of the confidential, proprietary, and trade secret information incorporated into these systems.  Unless restrained by injunctive relief as requested in the Prayer for Relief, CardioNet will suffer irreparable harm.

78.     CardioNet is informed and believes that Defendants' acts of unfair competition were outrageous, because performed with malice, an evil motive and/or with reckless

indifference to CardioNet's rights. Therefore, CardioNet is entitled to recover exemplary damages against Defendants in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff CardioNet prays for judgment as follows:

1. On each of the Claims for Relief, compensatory damages according to proof at trial;

2. On the First, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief, for unjust enrichment, accounting and restitution in an amount to be determined at trial;

3. On the Second, Third, Fifth, Sixth, and Seventh Claims for Relief, for punitive damages according to proof at trial;

4. On the Fourth Claim for Relief, for an order specifically enforcing the contracts and requiring Defendants to immediately return to CardioNet any confidential, proprietary, or trade secret information obtained from its MCOT kits.

5. On the First, Second, Third, Fifth, Sixth, and Seventh Claims for Relief, for a preliminary and permanent injunction against LifeWatch, its agents, and persons acting in concert with it, including Lehman, Ament, and Konarzewska:

   a. Requiring a full accounting under oath of how both MCOT kits were used and accessed while in Defendants' possession;

   b. Requiring the return of any of CardioNet's confidential, proprietary, or trade secret information, including any information obtained from examination, use or testing of the CardioNet MCOT kits; and

   c. Enjoining the copying and use of any confidential, proprietary or trade secret information, including source code, obtained from examination, use or testing of the CardioNet MCOT kits.

6. For an award of attorneys' fees expended in bringing and maintaining this action;

7. For prejudgment interest in an amount to be determined at trial;

8. For costs incurred in bringing this action; and

9. For such other and further relief as the Court deems just and proper.

Respectfully submitted,
CARDIONET, INC.

Dated: January 2, 2008

By:     /s Michael F. Kelleher
Thomas L. Duston
Gregory J. Chinlund
Julianne Hartzell
Marshall, gerstein & borun llp
233 South Wacker Drive, 6300 Sears Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

Folger Levin & Kahn llp
Michael F. Kelleher (pro hac vice)
Julie L. Fieber (pro hac vice)
Amy L. Kashiwabara (pro hac vice)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiff CARDIONET, INC.

19084\2010\582340.1