BARTLIT BECK HERMAN PALENCHAR
  & SCOTT LLP
Sean W. Gallagher (6239367)
54 W. Hubbard, Suite 300
Chicago, IL 60610
(312) 494-4428
sean.gallagher@bartlit-beck.com

PROSKAUER ROSE LLP
Kevin J. Perra (Admitted *pro hac vice*)
Alexander Kaplan (Admitted *pro hac vice*)
1585 Broadway
New York, New York 10036
(212) 969-3000
kperra@proskauer.com

*Attorneys for LifeWatch Corp.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff, | Case No. 07 C 6625 |
| v. | Judge Suzanne B. Conlon |
| LIFEWATCH CORP., HANNA KONARZEWKA, M.D., DOE 1 and DOE 2, | Magistrate Judge Morton Denlow |
| Defendants. | |
| LIFEWATCH CORP., | |
| Counterclaim Plaintiff, | **COUNTERCLAIMS** |
| v. | |
| CARDIONET, INC., | |
| Counterclaim Defendant. | |

1

## **INTRODUCTION**

1. Over the past several months, the plaintiff in this action, CardioNet, Inc. ("CardioNet"), rather than compete fairly in the marketplace, has embarked on a course of wrongful conduct intended to stem the increasing market share of its principal competitor, defendant and counterclaim plaintiff LifeWatch Corp. ("LifeWatch").

2. First, CardioNet improperly obtained one of LifeWatch's heart monitoring devices and surreptitiously opened and examined it in June 2007. CardioNet did not examine LifeWatch's device for any legitimate purpose. Rather, CardioNet obtained a LifeWatch device in order that its head of research and development could conduct a thorough inspection of the device. CardioNet took the LifeWatch device apart, inspected it inside and out, conducted extensive testing, and ultimately learned things about the device that it could not previously have known. CardioNet used its newly learned information about the LifeWatch device in the marketplace and in connection with developing improvements to the next generation of its own device.

3. Second, CardioNet has engaged in a pattern of false and misleading advertising and marketing claims, designed to harm CardioNet's business and reputation in the marketplace while falsely promoting itself and its heart monitoring products.

4. Third, despite its own conduct in improperly obtaining a LifeWatch device, CardioNet brought suit in November 2007 based on allegations of similar conduct by LifeWatch. CardioNet concealed its prior actions in the complaint it filed in this case and never told LifeWatch of its actions until its corporate representative was forced to admit to its conduct under oath in a deposition.

5.      LifeWatch seeks injunctive relief to enjoin CardioNet's wrongful behavior, as well as compensatory and exemplary damages in an amount to be determined at trial.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the allegations arise under the laws of the United States (the Lanham Act) and under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. 1391 because LifeWatch does business in the Northern District of Illinois.  CardioNet is subject to personal jurisdiction in this judicial district because it does business in this district.

## THE PARTIES

8.      Counterclaim plaintiff LifeWatch is a Delaware Corporation with a principal place of business located at O'Hare International Center II, 10255 W. Higgins Road, Rosemont, IL  60018.

9.      Upon information and belief, Counterclaim defendant CardioNet is a corporation organized and existing under the laws of the State of California with a principal place of business located at 1010 Second Avenue, Suite 700, San Diego, CA  92101.

## FACTUAL BACKGROUND

**The LifeWatch LifeStar ACT Device**

10.      CardioNet and LifeWatch are competitors in the heart monitoring business and each company makes heart monitoring devices.

11.     One of the heart monitoring devices sold by LifeWatch is the LifeStar ACT device. ("ACT" refers to Ambulatory Cardiac Telemetry). LifeWatch launched the LifeStar ACT device in the US market in January 2007.

12.     The LifeStar ACT system consists of a small wireless sensor that is worn by patients on their bodies and a dedicated cellular phone that analyzes the heart rhythm of the patients. Any irregular heart events are transmitted to a LifeWatch service center for analysis and response, thereby providing physicians with the documentation and data that they need to make a diagnosis.

13.     LifeWatch and its affiliated companies have spent millions of dollars of engineering time and research to develop the LifeStar ACT system. The LifeStar ACT system contains confidential, proprietary and trade secret information that have made the product successful in the marketplace. By way of example, the LifeStar ACT system contains trade secret algorithms which analyze the data captured by the sensors worn by the patient.

14.     In addition, the LifeStar ACT system incorporates confidential, proprietary and trade secret software that is subject to protection under US copyright laws, and proprietary engineering and components that are the subject of US patent protection.

15.     LifeWatch has taken reasonable measures to protect the confidential, proprietary and trade secret information embodied in its LifeStar ACT system. LifeWatch does not sell the LifeStar ACT system and it is available only through a prescription from a physician.

**CardioNet Obtains the LifeStar ACT System Through Improper Means**

16.     In approximately June 2007, a physician who had a relationship with one or more individuals on CardioNet's sales team invited CardioNet's Chief Executive Officer ("CEO") to have dinner with him at the physician's parents' home.

17.    During that dinner, the physician offered to obtain a LifeStar ACT system for CardioNet to examine. Upon information and belief, CardioNet's CEO agreed that the physician would obtain and send to CardioNet a LifeStar ACT system.

18.    A short time after the dinner, the physician wrote a prescription for a LifeStar ACT system. On information and belief, the "patient" for whom this system was prescribed did not have any legitimate need for diagnostic testing. After LifeWatch delivered the ACT system to the patient, but before the patient ever used the device, the physician caused the system to be sent by overnight mail to CardioNet's headquarters in San Diego, California. The LifeStar ACT system arrived at CardioNet's headquarters on Saturday, June 23, 2007.

19.    LifeWatch maintains all right and title to the ACT devices that it leases to patients, as evidenced by the "Property of LifeWatch" label affixed to components of the system.

20.    CardioNet knew that it was obtaining and inspecting a device that was LifeWatch property, and that it was doing so without permission from LifeWatch or legal right.

21.    CardioNet's CEO, its head of research and development and its head of product development all came into CardioNet's office on that Saturday to examine the LifeStar ACT system. These three executives of CardioNet proceeded to do at least the following: (a) open and inspect the sensor and cellular phone portions of the LifeStar ACT system; (b) take detailed digital photographs of the inside of the system, including photographs of various components magnified under a microscope; (c) copy the written materials included with the LifeStar ACT system; (d) remove the circuit board from the sensor; and (e) perform certain electrical tests on the circuit board and other components of the sensor.

22.    On information and belief, CardioNet tampered with the sensor portion of the device by removing shielding that LifeWatch installs on the solder points connecting the ECG

leads to the sensor. This shielding material can be seen in some of the photographs taken by CardioNet; it is missing in others. Removal of this shielding material would adversely affect the performance of the ACT device.

23.     When confronted with the photographic evidence that shielding material had been removed from wiring in the LifeWatch sensor, CardioNet's head of research and development continued to deny that CardioNet had tampered with the device.

24.     CardioNet knew that the ACT device it inspected and tested would be prescribed to legitimate patients who were in need of diagnostic testing and heart monitoring. CardioNet knew that it would be wrong to tamper with the ACT device in a way that might affect its performance, and then allow the device to be returned to circulation. CardioNet nevertheless allowed the device that it tested to be returned to a supposed patient, and ultimately to be returned to LifeWatch for delivery to *other* patients, without informing LifeWatch or anyone of the steps CardioNet had taken to open and inspect at least the sensor components of the ACT device.

25.     Upon information and belief, CardioNet tested and/or inspected the LifeStar ACT system in ways other than that described above. Further discovery is necessary from CardioNet's CEO, its head of product development and/or other CardioNet employees to determine the full extent of CardioNet's conduct.

26.     Upon information and belief, CardioNet has obtained and used and/or disclosed confidential, proprietary and trade secret information as a result of having unauthorized and improper access to and use of the LifeStar ACT device.

27.     In particular, at the time that CardioNet engaged in its unauthorized inspection and testing of the LifeStar ACT device (*i.e.*, June 2007), it was actively developing the next

6

generation of its own competing device, which was recently launched in the marketplace. CardioNet's CEO, head of research and development and head of product development were the individuals most actively involved in the inspection and testing of the LifeStar ACT device. Upon information and belief, those individuals intended to use and used confidential, proprietary and trade secret information they learned about the LifeStar ACT device in developing their own new product.

**CardioNet's False and Misleading Marketing Strategy**

28.  After improperly obtaining, testing and inspecting the LifeStar ACT device, CardioNet purported to use certain information it learned as a result of its testing and inspection to further its marketing strategy.

29.  For example, CardioNet advertised to and told physicians and governmental and private third party insurers ("Insurers") that it was the only FDA approved and Medicare reimbursed arrhythmia detection and alarm system.  That statement was and is false and misleading because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device has no FDA approval when, in fact, the LifeStar ACT device had and has FDA approval.  That statement also was and is false and misleading because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device is somehow less safe or reliable than CardioNet's device when, in fact, the LifeStar ACT device is as safe and reliable as the CardioNet device.

30.  Upon information and belief, CardioNet also advertised to and told physicians and Insurers that the LifeStar ACT device did not and could not meet FDA's requirements for approval of an arrhythmia detection and alarm system.  That statement also was and is false and misleading.  Contrary to CardioNet's statement, the LifeStar ACT device meets the FDA

requirements for approval as an arrhythmia detection and alarm system. That statement also was and is false and misleading because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device is somehow less safe or reliable than CardioNet's device when, in fact, the LifeStar ACT device is as safe and reliable as the CardioNet device.

31. Upon information and belief, CardioNet has advertised and made other statements to physicians and Insurers to the effect that its device is superior to and/or safer that then LifeStar ACT device. Such statements are false and misleading because, in fact, CardioNet's device is neither superior to nor safer than the LifeStar ACT device.

**CardioNet's Lawsuit and Concealment of Its Own Conduct**

32. Remarkably, given its own conduct as alleged above, CardioNet brought its trade secret and related claims against LifeWatch and the other defendants based on alleged actions by LifeWatch that are far less suspect than the actions of CardioNet itself.

33. In bringing its claims in this action, and seeking injunctive relief and expedited discovery, CardioNet made no mention of its own conduct in obtaining, testing and inspecting LifeWatch's device at the very moment that it was developing its next generation product.

## COUNT 1
## MISAPPROPRIATION OF TRADE SECRETS

34. LifeWatch realleges paragraphs 1 through 33 as though fully stated herein.

35. As alleged above, the LifeStar Act device embodies trade secrets, confidential and proprietary information.

36. LifeWatch has taken reasonable steps to protect the secrecy of its trade secrets.

37. LifeWatch denies that its own inspection of CardioNet's device violated the Illinois Trade Secret Act (or any other similar law of any other state). However, to the extent that the trier of fact concludes that LifeWatch's inspection constitutes a violation of the Illinois

Trade Secret Act (or any other similar law of any other state), then CardioNet's similar conduct with regard to the LifeStar ACT device constituted misappropriation of trade secrets.

38.     Further, upon information and belief, CardioNet's actions in testing and inspecting the LifeStar ACT device went further than the actions of LifeWatch in inspecting CardioNet's device.  Upon information and belief, CardioNet intended to use and used trade secret, proprietary and confidential information it learned as a result of its testing and inspection of the LifeStar ACT device in connection with the development of its next generation product.  Upon information and belief, these actions constitute misappropriation of trade secrets within the meaning of the Illinois Trade Secret Act and similar statutes enacted in other states.

39.     As a result of CardioNet's actual and/or threatened misappropriation of trade secrets, LifeWatch is entitled to injunctive relief enjoining CardioNet from misappropriating LifeWatch's trade secrets.  Unless and until CardioNet is so enjoined, LifeWatch is suffering and will continue to suffer irreparable harm.

40.     As a result of CardioNet's conduct, LifeWatch has sustained damages, and CardioNet has been unjustly enriched, in an amount to be determined at trial.

41.     Upon information and belief, CardioNet's misappropriation and threatened misappropriation of trade secrets was willful and malicious, thereby entitling LifeWatch to recover exemplary damages in an amount to be determined at trial.

### COUNT 2
### VIOLATION OF THE LANHAM ACT

42.     LifeWatch realleges paragraphs 1 through 41 as though fully stated herein.

43.     CardioNet's advertising is causing irreparable harm to LifeWatch.

44.     CardioNet's false and misleading advertising and marketing statements violate section 43 of the Lanham Act, 15 U.S.C. 1125(a).

9

45.     CardioNet's violations have been deliberate and willful, and LifeWatch is entitled to damages in an amount to be determined at trial.

### COUNT 3
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/2

46.     LifeWatch realleges paragraphs 1 through 45 as though fully stated herein.

47.     CardioNet's advertising and marketing claims involve trade practices addressed to the market generally or otherwise implicate consumer protection concerns.

48.     CardioNet has willfully performed deceptive acts, including misrepresentations and concealment or omission of material facts, in its advertising and marketing claims.

49.     CardioNet intended that others would rely upon the deception caused by its advertising and marketing claims.

50.     The deception caused by CardioNet's advertising and marketing claims occurred in the course of conduct involving interstate trade and commerce, and constitutes a violation of the Illinois Uniform Deceptive Practices Act and similar laws of other states.

51.     LifeWatch has suffered and is continuing to suffer economic losses directly and proximately caused by CardioNet's actions.

52.     CardioNet's violations have been deliberate and willful and LifeWatch is entitled to an injunction and costs and attorneys' fees.

### COUNT 4
### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 505/2

53.     LifeWatch realleges paragraphs 1 through 52 as though fully stated herein.

54.     CardioNet's advertising and marketing claims involve trade practices addressed to the market generally or otherwise implicate consumer protection concerns.

55. CardioNet has willfully performed deceptive acts, including misrepresentations and concealment or omission of material facts, in its advertising and marketing claims.

56. CardioNet intended that others would rely upon the deception caused by its advertising and marketing claims.

57. The deception caused by CardioNet's advertising and marketing claims occurred in the course of conduct involving interstate trade and commerce, and constitutes a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act and similar laws of other states.

58. LifeWatch has suffered and is continuing to suffer economic losses directly and proximately caused by CardioNet's actions.

59. CardioNet's violations have been deliberate and willful and LifeWatch is entitled to an injunction and damages in an amount to be determined at trial.

## COUNT 5
## INTERFERENCE WITH EXPECTATION OF BUSINESS RELATIONSHIPS

60. LifeWatch realleges paragraphs 1 through 59 as though fully stated herein.

61. By virtue of its false, misleading and deceptive advertising and marketing claims, CardioNet has interfered, without justification, with LifeWatch's reasonable expectation of maintaining current and forming future prospective business relationships with consumers of heart monitoring systems, the physicians that prescribe such systems and the entities that reimburse patients for the costs of such systems.

62. LifeWatch has suffered and is continuing to suffer economic losses directly and proximately caused by CardioNet's advertising and marketing claims.

63. CardioNet's violations have been deliberate and willful and LifeWatch is entitled to damages in an amount to be determined at trial.

## COUNT 6
## COMMON LAW UNFAIR COMPETITION

64.LifeWatch realleges paragraphs 1 through 63 as though fully stated herein.

65.CardioNet's advertising and marketing claims involve trade practices addressed to the market generally or otherwise implicate consumer protection concerns.

66.CardioNet has performed deceptive acts, including misrepresentations and concealment or omission of material facts, in its advertising and marketing claims.

67.CardioNet intended that the deception caused by its advertising and marketing be relied upon.

68.LifeWatch has suffered and is continuing to suffer economic losses directly and proximately caused by CardioNet's advertising and marketing claims.

69.CardioNet's violations have been deliberate and willful and LifeWatch is entitled to damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, LifeWatch prays that this Court:

(1) enter judgment in favor of LifeWatch and against CardioNet;

(2) enter a preliminary and permanent injunction:

(a) enjoining CardioNet from misappropriating LifeWatch's trade secrets;

(b) requiring that CardioNet issue a public statement retracting all such misleading and/or false statements;

(c) requiring that CardioNet engage in appropriate corrective advertising;

(d) prohibiting and enjoining CardioNet, its officers, agents, successors and assignees from using in commerce any false or misleading statements or representations concerning LifeWatch's LifeStar ACT device; and

    (e) directing CardioNet to recall and destroy all advertising, marketing claims and promotional materials that contain such false and misleading statements.

(3) enter an award of compensatory, exemplary and punitive damages in an amount to be determined at trial; and

(4) grant LifeWatch its attorneys' fees and costs in bringing this action and such other relief as is just, equitable and necessary.

<u>JURY DEMAND</u>:  LifeWatch demands trial by jury of all of the issues in this action as to which it is entitled to trial by jury.

Dated:  January 4, 2008

                                                By: <u>/s/ Sean Gallagher</u>

                                                BARTLIT BECK HERMAN PALENCHAR
                                                  & SCOTT LLP
Sean W. Gallagher (6239367)
54 W. Hubbard, Suite 300
Chicago, IL 60610
(312) 494-4428
sean.gallagher@bartlit-beck.com

PROSKAUER ROSE LLP
Kevin J. Perra (Admitted *pro hac vice*)
Alexander Kaplan (Admitted *pro hac vice*)
1585 Broadway
New York, New York  10036
(212) 969-3000
kperra@proskauer.com

*Attorneys for LifeWatch Corp.*

CERTIFICATE OF SERVICE

      I, Sean W. Gallagher, do hereby certify that on this 4th day of January 2008, I caused a true and correct copy of the foregoing **COUNTERCLAIMS** to be served via electronic mail on CardioNet through its counsel listed below:

      Gregory Dunston
      MARSHALL, GERSTEIN & BORUN LLP
      233 South Wacker Drive, 6300 Sears Tower
      Chicago, IL 60606-6357
      Telephone: 312-474-6300

      Michael Kelleher
      FOLGER LEVIN & KAHN, LLP
      275 Battery Street, 23rd Floor
      San Francisco, CA 94111
      Telephone: 415-986-2800

      By: /s/ Sean W. Gallagher