BARTLIT BECK HERMAN PALENCHAR
  & SCOTT LLP
Sean Gallagher (6239367)
54 W. Hubbard, Suite 300
Chicago, IL 60610
(312) 494-4428
sean.gallagher@bartlit-beck.com

PROSKAUER ROSE LLP
Kevin J. Perra (admitted *pro hac vice*)
Alexander Kaplan (admitted *pro hac vice*)
1585 Broadway
New York, New York  10036
(212) 969-3000
kperra@proskauer.com

*Attorneys for all Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

CARDIONET, INC.,

　　　　　Plaintiff,

　v.

LIFEWATCH CORP., HANNA
KONARZEWKA, M.D., JOEL LEHMAN
and LISA AMENT,

　　　　　Defendants.

---

Case No. 07 C 6625

Judge Suzanne B. Conlon

Magistrate Judge Morton Denlow

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS COUNTS I, II, III, V and VII
OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

January 7, 2008

1

**PRELIMINARY STATEMENT**

Plaintiff CardioNet, Inc. ("CardioNet") has asserted seven claims against a combination of defendant LifeWatch Corp. ("LifeWatch") and three individual defendants, Joel Lehman, Lisa Ament and Hanna Konarzewka, M.D. CardioNet's claims are as follows: violation of the Computer Fraud and Abuse Act (Count 1), conversion (Count 2), fraud (Count 3), breach of contract (Count 4), interference with contract (Count 5), misappropriation of trade secrets (Count 6) and unfair competition (Count 7). All but CardioNet's breach of contract claim and its trade secrets claim fail as a matter of law and must be dismissed.

As a matter of law, CardioNet's common law tort claims for fraud, conversion, interference with contract and unfair competition are all preempted by virtue of CardioNet's assertion of a claim under the Illinois Trade Secrets Act ("ITSA"). CardioNet has likewise failed to state a claim under the Computer Fraud and Abuse Act ("CFAA"), because it has not alleged that any computer system, nor any data stored on a computer system, has been "damage[d]" as required under that Act. Thus, CardioNet is left with only its claim for breach of contract, asserted against only Lehman and Ament, and its claim for misappropriation of trade secrets, asserted against all Defendants. The remaining claims must be dismissed.

**RELEVANT ALLEGATIONS**

As CardioNet's Second Amended Complaint makes clear, plaintiff's claims are all fundamentally based on alleged theft of trade secrets. CardioNet alleges that Dr. Konarzewka wrote prescriptions for Lehman and Ament so that their employer, LifeWatch, could obtain access to CardioNet's MCOT kits. CardioNet asserts that LifeWatch desired to obtain the prescriptions for the MCOT device "for the purpose of allowing LifeWatch to improperly obtain the system in order to wrongfully acquire CardioNet's confidential, proprietary and trade secret

information." (Second Am. Compl. ¶ 25.) This core allegation is repeated, by reference, as a basis for *each* Count of the Second Amended Complaint.

Indeed, every time CardioNet alleges harm in its Second Amended Complaint, it explains the damage it suffered as LifeWatch having obtained "confidential, proprietary and trade secret information." (See Second Am. Compl. at ¶¶ 25, 28, 33, 41, 48, 55, 60(c), 69, 70, 72, 77.) In each of its common law tort claims, the harm CardioNet alleges it suffered is the alleged discovery by LifeWatch of CardioNet's confidential, proprietary and trade secret information. (See id. at ¶¶ 46, 48, 55, 63, 65[1] and 77.)

CardioNet's discovery responses also indicate that all of the harm alleged concerns the loss of its purported trade secrets. (See CardioNet Inc.'s Objection to Defendant LifeWatch Corp.'s Notice of Deposition Under Fed. R. Civ. Proc. 30(b)(6), Response to Subject 20 ("CardioNet will designate one or more witnesses to provide testimony on [the factual basis for CardioNet's allegation that it has suffered irreparable harm due to Defendants' actions as alleged in the Amended Complaint] as it relates to confidential, proprietary, and/or trade secret information that can be obtained through a visual inspection of the CardioNet MCOT monitor hardware and sensor hardware that were in Defendants' possession." (emphasis added).)

As the factual basis of its CFAA claim, parroting the statute, CardioNet alleges that "Defendants . . . intentionally access[ed] a protected computer without authorization, and as a result of such conduct recklessly caused damage, and . . . intentionally access[ed] a protected computer without authorization, and as a result of such conduct caused damage." (Second Am.

---

[1] With respect to its claim for interference with contract, CardioNet simply asserts it "has been and continues to be injured in its business and property and will continue to sustain substantial damage." (Second Am. Compl. ¶ 65.) CardioNet incorporates by reference all paragraphs previously alleged (id. at 63) and it can only be assumed that the harm CardioNet is referring to, as in every other claim, is the purported loss of confidential, proprietary and trade secret information. CardioNet alleges no other harm resulting from the supposed intentional interference with contractual relations.

Compl. ¶ 37.) CardioNet, however, fails to allege that any of LifeWatch's actions caused any damage to any of its computers (alleged here to be one of the CardioNet heart monitors licensed to one of the individual defendants and CardioNet's "monitoring center" (id. ¶ 35)) or any software or data stored thereon, as the CFAA requires.[2]

## ARGUMENT

The purpose of a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) is to test the legal sufficiency of a complaint. A complaint which consists of conclusory allegations unsupported by factual allegations cannot satisfy the Rule 12(b)(6) standard. See Jackson v. E. J. Brach Corp., 176 F.3d 971, 978 (7th Cir. 1999), citing Palda v. General Dynamics Corp., 47 F.3d 872, 875 (7th Cir. 1995). In order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. BAB Systems, Inc. v. Pilatus Investment Group Inc., 2005 U.S. Dist. LEXIS 25737, at *6-7 (N.D. Ill. Oct. 27, 2005).

**I.   PLAINTIFF'S CLAIMS FOR CONVERSION, FRAUD, UNFAIR COMPETITION AND INTERFERENCE WITH CONTRACT FAIL AS A MATTER OF LAW BECAUSE EACH IS PREEMPTED BY THE ITSA**

The Illinois Trade Secrets Act ("ITSA") provides that the Act "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil

---

[2]   It also must be noted that, despite the story CardioNet tells in its Amended Complaint, LifeWatch's investigation of CardioNet's MCOT device was not nefarious or illegitimately motivated, and no trade secrets were unveiled or retained. Expedited discovery has now shown that LifeWatch had a good faith and reasonable belief that CardioNet had and has been interfering with its business in multiple ways and that LifeWatch was concerned that CardioNet's device infringes LifeWatch's patents. Thus, LifeWatch's examination of CardioNet's MCOT device was undertaken to address CardioNet's interference and protect LifeWatch's own intellectual property.
    More significantly, as discussed in LifeWatch's Counterclaim, expedited discovery revealed that before LifeWatch examined CardioNet's MCOT device, CardioNet obtained, and undertook an examination of, a LifeWatch ACT device that went beyond what LifeWatch did in examining CardioNet's device. Despite this fact, CardioNet brought the underlying lawsuit and concealed its own similar conduct in its Second Amended Complaint and preliminary injunction motion papers.

4

remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8.[3] "In other words, facts constituting misappropriation of trade secrets give rise to liability under the ITSA, but not under any other state law theory." Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (dismissing plaintiff's common law tort claims as preempted by ITSA claim); see also J.H. Chapman Group, Ltd. v. Chapman, 1996 WL 89075, *2 (N.D. Ill. Feb. 28, 1996) (Conlon, J.) (dismissing common law claims as preempted by the ITSA). The ITSA preempts CardioNet's claims for conversion (Count 2), fraud (Count 3), interference with contract (Count 5) and unfair competition (Count 7). As pleaded, each of those claims rests on the very same conduct which CardioNet alleges gives rise to its misappropriation of trade secrets claim (Count 6).

Courts in this district routinely have dismissed each of the above claims as preempted by an ITSA claim. In Thomas & Betts Corp., the court held that plaintiff's fraud claim was preempted because the allegations in support of its fraud claim simply stated that defendant misled and concealed its intention to take devices containing confidential information from plaintiff. 108 F. Supp. 2d at 974. The court also found that plaintiff's tortious interference with contract claim was preempted because it merely alleged that defendant "encouraged and directed" an individual to disclose confidential information in violation of a contract. Id. at 976.

In C.H. Robinson Worldwide, Inc. v. Command Transp., LLC, the court found that plaintiff's unfair competition claim was preempted by the ITSA because it was "dependent upon the existence of competitively significant secret information" and because allegations of defendant's unlawful use of plaintiff's trade secrets "underscore[d]" plaintiff's unfair competition claim. 2005 U.S. Dist. LEXIS 28063, at *19-20 (N.D. Ill., Nov. 16, 2005). Indeed,

---

[3] The ITSA does not affect conflicting contractual remedies. See 765 Ill. Comp. Stat. 1065/8(b)(1).

5

as noted above, the ITSA explicitly preempts unfair competition claims. See 765 Ill. Comp. Stat. 1065/8.

In Systems America, Inc. v. Providential Bancorp, Ltd., plaintiffs' conversion claim was dismissed based on preemption under the ITSA, because the claim rested on defendants' alleged misappropriation of plaintiffs' trade secrets. 2006 WL 463314, at *6-7 (N.D. Ill., Feb. 24, 2006); see also Thomas & Betts Corp., 108 F. Supp. 2d at 973 (dismissing conversion claim as preempted by ITSA and noting that a claim based on conversion of computers and disks belonging to plaintiff, besides the information contained within, is also preempted as the value of those items is little beyond the information contained therein).

As in the above cases, CardioNet's fraud, conversion, interference with contract and unfair competition claims are based on the same factual allegations that underscore its ITSA claim for misappropriation of trade secrets – namely, that proprietary, confidential and trade secret information have been misappropriated. Moreover, the only harm alleged under each of those claims is the purported loss of proprietary, confidential and trade secret information, as a review of CardioNet's Second Amended Complaint shows:

- Fraud: CardioNet's fraud claim sets forth the alleged conduct Defendants engaged in to obtain CardioNet's purported trade secrets and that the injury CardioNet suffered was the loss of "the proprietary, confidential and trade secret information" contained in the MCOT kits. (Second Am. Compl. ¶ 55.)

- Conversion: CardioNet's conversion claim "realleges and incorporates by reference" all of the previous factual allegations concerning Defendants' alleged conduct and Plaintiff's injury, alleges that CardioNet owns "all rights to ownership and possession of the confidential, proprietary, and trade secret information embodied in the MCOT kits," that CardioNet has a right to "immediate possession of any confidential, proprietary or trade secret information LifeWatch has obtained from the MCOT kits," and that CardioNet has "made demand on Defendants for return of any confidential, proprietary, or trade secret information obtained from its MCOT kits." CardioNet alleges that the injury it suffered is a result of LifeWatch's "conversion of this information." (Id. ¶¶ 42-48.)[4]

---

4    Nowhere in CardioNet's conversion claim is any harm alleged from LifeWatch's alleged conversion of the MCOT kit itself, as opposed to the trade secrets alleged to be within the kit. This stands to reason: As the

- Interference with Contract: CardioNet's intentional interference with contract claim "re-alleges and incorporates by reference" all of the previous factual allegations concerning Defendant's alleged conduct and Plaintiff's injury and alleges that Defendants will continue to engage in that conduct. As noted above, the harm the Second Amended Complaint alleges under this claim is extremely vague but the alleged injury to CardioNet's "business and property" can only be understood to refer to its purported confidential, proprietary and trade secret information. (Id. ¶¶ 63-67.)

- Unfair Competition: CardioNet's unfair competition claim "re-alleges and incorporates by reference" all of the previous factual allegations concerning Defendant's alleged conduct and that it will be caused irreparable injury by Defendants' "possession and use of CardioNet's confidential, proprietary, and trade secret information obtained from examination and testing of the two MCOT kits." (Id. ¶¶ 74, 77.)

As noted above, CardioNet has also confirmed in its discovery responses that the harm it allegedly suffered was the loss of purported trade secrets. CardioNet has not identified any other harm or actionable basis for asserted claims for fraud, conversion, interference with contract or unfair competition. Those claims are preempted by the claim that CardioNet has asserted under the ITSA.

In its reply brief in support of its Motion for Expedited Discovery, CardioNet cited two cases it called "exceptions" to the preemption rule, where the plaintiffs alleged their trade secrets and other confidential information had been misappropriated. Because the plaintiffs alleged that other confidential information had been misappropriated separate and apart from trade secrets, those courts did not find certain of plaintiffs' common law claims preempted. See FAIP North

---

Second Amended Complaint concedes, defendants had returned both MCOT kits to CardioNet before CardioNet filed this lawsuit. (Id. ¶ 32.) To the extent that CardioNet argues its conversion claim should survive because Defendants retained for a period of time one of the MCOT kits after it was due to be returned, as discussed above, CardioNet's conversion claim alleges harm only from the loss of trade secrets contained in the device, not harm from the temporary loss of the device itself. Even if CardioNet had alleged harm from the alleged conversion of the device itself, LifeWatch returned it and CardioNet cannot claim to have suffered harm to sustain its conversion claim. See Thomas & Betts Corp., 108 F. Supp. 2d at 973 (dismissing conversion claim as preempted by ITSA and noting that a claim based on conversion of computers and disks belonging to plaintiff, besides the information contained within, is also preempted as the value of those items is little beyond the information contained therein).

America, Inc. v. Sistema, 2005 U.S. Dist. LEXIS 32798, at *17-18 (N.D. Ill., Dec. 14, 2005); Patriot Homes, Inc. v. Forest River Housing, Inc., 489 F. Supp. 2d 865, 871 (N.D. Ind. 2007).

To the extent those cases hold that as long as a plaintiff alleges "other confidential information" to have been misappropriated, the common law tort claim is not preempted, those decisions contradict the intent of the ITSA and this Court's holding in J.H. Chapman Group, 1996 WL 89075, at *3. There, on a motion to dismiss, this Court held as follows: "Count VIII is based in part on allegedly misappropriated trade secrets referred to as trade secrets and significant confidential, proprietary and business information. Accordingly, Count VIII must be dismissed to the extent it alleges Norman Chapman breached his fiduciary duty to J.H. Chapman Group by misappropriating J.H. Chapman's trade secrets and significant confidential, proprietary and business information." Concerning a separate tort claim found also to be preempted by an ITSA claim, this Court similarly held: "Count VII [for breach of a confidential relationship] is based on a misappropriation of trade secrets theory without regard to the terminology J.H. Chapman Group uses to refer to allegedly misappropriated information as either 'commercially valuable information' or 'trade secrets.'" Id at *2 (quoting Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992)). Simply put, CardioNet's allegation that "confidential or proprietary information" has been misappropriated, in addition to "trade secrets," cannot be used to save its common law tort claims from preemption.[5]

Moreover, both of the above cases involved individuals leaving the plaintiff's firm and taking confidential information to the defendants, in one case in contravention of a non-disclosure agreement signed by the individual defendants. See FAIP North America, 2005 U.S. Dist. LEXIS 32798, at *3. The ITSA does not preempt claims for breach of contract. 765 Ill.

---

[5] Notably, CardioNet nowhere identifes any information that meets the supposedly lower standard of "confidential or proprietary" without rising to the level of being a "trade secret."

8

Comp. Stat. 1065/8(b)(1). And the factual situation that lead the courts in these two cases to find against preemption is not present here. There is no non-disclosure agreement protecting any CardioNet confidential information. [6]

## II. PLAINTIFF'S CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT ALSO FAILS AS A MATTER OF LAW

CardioNet's first claim is for a violation of the CFAA. As multiple federal courts have recognized, the CFAA's purpose is to create a cause of action against computer hackers and electronic trespassers and to provide redress for "high-tech" crimes. See, e.g., Int'l Ass'n of Machinists and Aerospace Workers v. Werner-Matsuda, 390 F. Supp. 2d 479, 495 (D. Md. 2005) (citing Sherman & Co. v. Salton Maxim Housewares, Inc., 94 F. Supp. 2d 817, 820 (E.D. Mich. 2000); State Wide Photocopy Corp. v. Tokai Fin. Servs., Inc., 909 F. Supp. 137, 145 (S.D.N.Y. 1995); In re AOL, Inc. Version 5.0 Software Litig., 168 F. Supp. 2d 1359, 1370 (S.D.Fla. 2001)). As the Maryland court cited above noted, the legislative history of the CFAA confirms that "a civil cause of action was created under the CFAA to redress damage and loss as a result of serious computer abuse, such as transmission of computer 'viruses' and 'worms'." Int'l Ass'n of Machinists and Aerospace Workers, 390 F. Supp. 2d at 496 (quoting S. Rep. No. 101-544, at 4-5 (1990)). CardioNet's complaint alleges nothing of this sort and it cannot maintain a CFAA claim here.

Considering the elements of the statute itself, CardioNet's CFAA claim fails as a matter of law because CardioNet has not alleged the "damage" that the statute requires. The CFAA requires that a plaintiff allege that defendant's unauthorized access to a computer resulted in

---

[6] Plaintiff's unfair competition claim against Defendants Does 1 and 2 and Konarzewka (the "Individual Defendants") fails for an additional reason. Those individuals do not compete with CardioNet.. As such, CardioNet cannot assert an "unfair competition" claim against them. See Zenith Electronics Corp. v. Exzec, Inc., 1996 U.S. Dist. LEXIS 10793, at *18 (N.D. Ill., July 18, 1996) (unfair competition "includes a broad range of deceptive acts and practices by a competitor") (emphasis added).

"damage." 18 U.S.C. § 1030(a)(5)(A)(iii). The term "damage" is defined in the CFAA as, "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Thus, under the CFAA, "damage" refers to harm to a computer system or information or software stored thereon. Damage to something other than the above does not give rise to a cognizable claim under the CFAA.

The CFAA does not define "integrity" as that term is used in section 18 U.S.C. § 1030(e)(8) but courts have looked to its dictionary definition in order to ascertain its meaning and determine if a plaintiff has adequately alleged damage. In <u>Worldspan v. Orbitz LLC</u>, the court set forth the dictionary definition of "integrity": "an unimpaired or unmarred condition: entire correspondence with an original condition; soundness." 2006 U.S. Dist. LEXIS 26153 at *14-15 (N.D. Ill. Apr. 19, 2006). The court held that, based on the dictionary definition of "integrity," its use in the definition of the term "damage" in the CFAA context required a plaintiff to allege "some diminution in the completeness or usability of data or information on a computer system." <u>Id.</u> (citing <u>Resdev, LLC v. Lot Builders Ass'n</u>, 2005 U.S. Dist. LEXIS 19099, at *5 n.3 (M.D. Fla., Aug. 10, 2005)); <u>see also</u> <u>Spangler, Jennings, & Doherty, P.C. v. Mysliwy,</u> 2006 U.S. Dist. LEXIS 39602 at *17-18 (N.D. Ind., Mar. 31, 2006) (denying summary judgment on plaintiff's CFAA claim because plaintiff had failed to plead any "damage" as required under the statute, and noting that the financial loss plaintiff incurred from remedial measures met the CFAA definition for "loss" but did not constitute "damage").

CardioNet alleges that LifeWatch intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage, either recklessly or intentionally. (Second Am. Compl. ¶ 37.) However, CardioNet has not alleged any "damage" within the meaning of that term under the CFAA. Nowhere in its Second Amended Complaint does

10

CardioNet allege that LifeWatch acted in a manner that caused "some diminution in the completeness or usability of data or information on a computer system." Worldspan, 2006 U.S. Dist. LEXIS 26153 at *14-15. CardioNet's attempt to satisfy the damage requirement by alleging the impairment of CardioNet's medical treatment of patients and the costs allegedly incurred from investigative and remedial measures (Am. Compl. ¶¶ 38, 39) fails under the CFAA because those consequences do not result in any diminution to CardioNet's computer system within the meaning of the terms "damage" and "integrity" under the CFAA.[7]  See e.g. Spangler, 2006 U.S. Dist. LEXIS 39602 at *18-19 (finding that plaintiff had "seemingly overlooked" the damage element and "has completely failed to provide any proof of 'damage'" despite the fact that plaintiff's allegations "seem[ed] to fit neatly within the CFAA definition of loss"). Because CardioNet has failed to satisfy the "damage" requirement of the CFAA, the claim must be dismissed.

---

[7] Discovery has also shown that LifeWatch's investigation in no way impaired CardioNet's ability to provide medical treatment to patients. Indeed, it would be surprising for CardioNet to suggest that its inventory of heart monitors and the capacity of its monitoring facility were so limited that the prescription of two devices to LifeWatch employees or a single cardiac event reported on a single device prevented CardioNet from servicing other customers.

11

**CONCLUSION**

For the reasons stated herein, Plaintiff's claims for violations of the CFAA, conversion, fraud, interference with contract and unfair competition must be dismissed as against all parties against whom those claims have been asserted.

Dated: January 7, 2008

By: /s/ Sean Gallagher

BARTLIT BECK HERMAN PALENCHAR
 & SCOTT LLP
Sean Gallagher (6239367)
54 W. Hubbard, Suite 300
Chicago, IL 60610
(312) 494-4428
sean.gallagher@bartlit-beck.com

PROSKAUER ROSE LLP
Kevin J. Perra (admitted *pro hac vice*)
Alexander Kaplan (admitted *pro hac vice*)
1585 Broadway
New York, New York 10036
(212) 969-3000
kperra@proskauer.com

*Attorneys for all Defendants*

CERTIFICATE OF SERVICE

I, Sean W. Gallagher, do hereby certify that on this 7th day of January 2008, I caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTS I, II, III, V and VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT** to be served via electronic mail on CardioNet through its counsel listed below:

> Thomas Dunston
> MARSHALL, GERSTEIN & BORUN LLP
> 233 South Wacker Drive, 6300 Sears Tower
> Chicago, IL 60606-6357
> Telephone: 312-474-6300
>
> Michael Kelleher
> FOLGER LEVIN & KAHN, LLP
> 275 Battery Street, 23rd Floor
> San Francisco, CA 94111
> Telephone: 415-986-2800

By: /s/ Sean W. Gallagher