# EXHIBIT A

12/20/2007  Dube, Laurent

1     REDACTED

2

3       Q.   In its objections, I will represent to

4   you, I don't know if you've seen them, CardioNet

5   indicated that "CardioNet will designate one or more

6   witnesses to provide testimony on this subject as it

7   relates to confidential, proprietary and/or trade

8   secret information that can be obtained through a

9   visual inspection of the CardioNet MCOT monitor

10  hardware and sensor hardware that were in

11  defendant's possession."

12          Are you prepared to testify on that

13  topic?

14      A.   The sensor hardware, yes.

15      Q.   Are you, are you saying you're not

16  prepared to testify with respect to confidential,

17  proprietary or trade secret information that can be,

18  that can be obtained through a visual inspection of

19  the monitor hardware?

20      THE WITNESS:  Was --

21      MR. KELLEHER:  And let me state that in light

22  of the statements by LifeWatch's corporate designees

23  on the topics, that no inspection took place of the

24  monitor hardware or of any software embedded on the

1   devices. At this point CardioNet will not provide a

2   witness on trade secrets embodied in the monitor or

3   in the software on the devices.

4       MR. GALLAGHER: Are you withdrawing any claim

5   that LifeWatch misappropriated trade secrets that

6   reside in software or in the monitor hardware?

7       MR. KELLEHER: This is not the place to ask

8   that type of question. If you want to address that

9   with the Court, or later with us, we'll do that.

10      MR. GALLAGHER: So you're not agreeing to

11  withdraw those claims, but you're refusing to

12  provide a witness to testify about this matter?

13      MR. KELLEHER: As we stated in our objections

14  and has been discussed with counsel, given

15  LifeWatch's position that it did not inspect the

16  inside of the monitor or do any sort of examination

17  of the software, we are not providing a witness on

18  those topics at this time.

19      MR. GALLAGHER: So our position is clear, the

20  issue with respect to the discovery we're allowed to

21  take of CardioNet is not what LifeWatch's position

22  is, it depends entirely on what your position is.

23  And if you're not going to give us any comfort that

24  you're not pursuing claims based on the monitor

12/20/2007  Dube, Laurent

1    hardware or software, then we're entitled to take

2    discovery on those matters.

3        Based on your assertion, pardon me, based on

4    your position that you are not going to provide a

5    witness on this topic, our position will be you have

6    waived any claim.  And if you try to revive the

7    claim, we will take this transcript, cite it to the

8    Court as evidence that you didn't have a claim,

9    because you wouldn't let us take discovery on it.

10        MR. KELLEHER:  And so that -- I believe you

11    understand our position, but I'll state our

12    position.  We intend to continue to pursue in

13    discovery evidence of what LifeWatch, in fact, did

14    with the devices; but in light of the statements of

15    LifeWatch's corporate designees up to this point

16    that no examination took place of the software or

17    the monitor hardware, we believe that discovery is

18    not appropriate on these topics now, and we are not

19    providing that discovery at this point.  And we can

20    pursue this issue with the Court later.

21        MR. GALLAGHER:  I think we may pursue it later

22    today, in fact, because I think the instruction is

23    inappropriate.

24        MR. KELLEHER:  All right.

1     Q.    Does CardioNet maintain that LifeWatch

2   has misappropriated any trade secrets, confidential

3   or proprietary information from its monitor?

4     MR. KELLEHER:  Objection, same objection.

5     You shouldn't answer that question.

6     MR. GALLAGHER:  You're instructing him not to

7   answer.

8     MR. KELLEHER:  As I told you, in light of

9   LifeWatch's position that its witnesses have

10   testified that nothing was, no examination was

11   conducted of the monitor, discovery on this is not

12   appropriate.  We intend to verify the truthfulness

13   of LifeWatch's statements in later depositions, but

14   at this point it is not appropriate for you to

15   examine regarding trade secrets embodied in the

16   monitor.

17     MR. GALLAGHER:  Are you making that instruction

18   for purposes of filing a motion with the Court for a

19   protective order?

20     MR. KELLEHER:  If necessary, we'll file a

21   motion for protective order.

22     MR. GALLAGHER:  All right, my question is more

23   specific.  Are you instructing the witness not to

24   answer at this point in the deposition so that you

1    can go to the Court and seek a protective order?

2    MR. KELLEHER:  Do you want to go off the

3    record, and we can talk about how this came about?

4    MR. GALLAGHER:  No, I'd like to be on the

5    record, because it goes to the propriety of your

6    instruction, and I'd like the Court to know why

7    you're instructing the witness not to answer.

8    MR. KELLEHER:  Well, as you know, there were

9    agreements between counsel before that objections as

10    to discovery would be stated and exchanged between

11    the parties.  We discussed with LifeWatch's counsel

12    before this deposition the scope of the discovery

13    and the witnesses that we were willing to provide.

14    LifeWatch elected to proceed with the deposition in

15    light of those objections.  LifeWatch was fully

16    aware of this position before the deposition and has

17    had every opportunity to resolve this before the

18    deposition; and as you know, and we can address

19    with, this with the Court whenever you want to do

20    that.

21    But you have the time today to take the

22    deposition.  We do not intend to offer trade secrets

23    as to things that you claim in the monitor, that you

24    have not inspected the monitor.

12/20/2007  Dube, Laurent

1    MR. GALLAGHER:  So is the answer you're not

2    going to file a motion for protective order?

3    MR. KELLEHER:  There was already an agreement

4    between counsel as to how this would proceed.  I do

5    not intend to file a motion for protective order at

6    this time.

7    BY MR. GALLAGHER:

8    Q.   Are you going to follow your counsel's

9    instruction and not answer my question?

10   A.   Yes.

11   Q.   Are you prepared to testify about the

12   trade secrets, confidential or proprietary

13   information that CardioNet claims LifeWatch

14   misappropriated from its sensor?

15   A.   Yes.

16   Q.   Are you prepared to testify about the

17   confidential, trade secret or proprietary

18   information that CardioNet maintains LifeWatch has

19   appropriated from any source other than your sensor?

20   A.   I would say no.

21   Q.   So all you're here to talk about is the

22   sensor?

23   A.   The sensor hardware, yes.

24

REDACTED

1      MR. GALLAGHER:  Why don't we take a break.

2      THE VIDEOGRAPHER:  We're going off the video

3    record at 9:10 a.m.

4      This concludes tape number 1.

5         (WHEREUPON, a recess was had.)

6      THE VIDEOGRAPHER:  We're going back on the

7    video record at 9:25 a.m.

8      This is the beginning of tape number 2.

9      MR. GALLAGHER:  And, Mike, just so it's clear,

10    and you have an opportunity to cure the problem

11    without the necessity of motion practice, let me

12    just let you know that it's under Rule 30 and

13    Seventh Circuit case law, not to mention Northern

14    District of Illinois case law, it's clear that a

15    party can instruct a deponent not to answer only

16    when it's necessary to preserve privilege, to

17    enforce a limitation on evidence directed by the

18    Court, or to present a motion under paragraph 3 of

19    Rule 30(d), in other words, a motion for protective

20    order.

21      And here CardioNet filed a motion at the outset

22    of discovery, unsuccessful motion seeking to limit

23    discovery to discovery of LifeWatch, and the Court

24    denied that motion.  So there is no limitation on

12/20/2007  Dube, Laurent

1    evidence directed by the Court that would apply.

2        In instructing the witness not to answer

3    questions about the monitor, you're not relying on a

4    privilege, and you've indicated that you don't

5    intend to present a motion for protective order; so

6    I'd ask that you reconsider your position.  If you

7    do not, we will be filing a motion to compel and

8    seeking costs.

9        MR. KELLEHER:  There was -- you were reading

10   from a case.  Apparently you have, you know, planned

11   to manufacture this discovery dispute.

12       You're ignoring the communications that we had

13   in setting up these depositions on expedited

14   discovery.  And the procedure that Mr. Kaplan agreed

15   to is that the parties, as you know, served

16   objections last Thursday.  We clearly indicated in

17   that what our position was.  You went ahead with the

18   deposition on those grounds.

19       My understanding was that there was an

20   agreement that we would not have to seek a

21   protective order in order to do this.  If you, in

22   fact, are refusing to proceed on that agreement,

23   then I will stop this deposition, and we will go

24   seek a protective order.

1    There was an agreement to that effect, but if

2    you are now breaching that agreement, then yes, I

3    think a Court resolution is appropriate, and we will

4    to do that now.

5    Do you want to stop the deposition now?

6    MR. GALLAGHER:  I'm not aware of any agreement.

7    What are you talking about?

8    MR. KELLEHER:  There was an agreement with

9    Mr. Kaplan, where I exchanged an e-mail exchange

10    with Mr. Kaplan setting forth the procedure on how

11    we -- objections to the deposition notice would be

12    exchanged, and the parties would have an opportunity

13    to resolve those.  There -- and you, you understood

14    our position going into these depositions.

15    If you thought that motion practice was

16    necessary to resolve these, you should have informed

17    us, and we'll do that.  Our understanding was that

18    given the expedited procedure that the parties had

19    agreed to, that you were not going to require that.

20    But if you want to go into Court today, we will go

21    into Court today to try to resolve this.

22    MR. GALLAGHER:  Is the e-mail you're referring

23    to an e-mail that preceded your objections?

24    MR. KELLEHER:  Yes.  And Mr. Kaplan responded

12/20/2007  Dube, Laurent

1    to it, accepting that procedure.

2        So do you want -- shall we stop this

3    deposition? I'm prepared to go to Court right now,

4    and we can go ahead and seek that, if you want.

5        MR. GALLAGHER:  Why don't --

6        MR. KELLEHER:  But Mr. Dubé is available today.

7        MR. GALLAGHER:  Why don't you provide me with a

8    copy of the e-mail exchange that you think sets

9    forth this agreement, and we will return to this

10   question at lunchtime.

11       I will point out to you that your objections

12   that were served after this supposed agreement

13   state, "CardioNet will designate one or more

14   witnesses to provide testimony on this subject as it

15   relates to confidential, proprietary, and/or trade

16   secret information that can be obtained through a

17   visual inspection of the CardioNet MCOT monitor,

18   hardware, and sensor hardware that were in

19   defendant's possession." Those are the objections

20   that you served on December 13th that were signed by

21   Julie, so you're taking a different position today

22   than you took even in your objections.

23       MR. KELLEHER:  Excuse me, Mr. Gallagher, the

24   sentence that you were quoting from, what -- where

1   was that from?

2        MR. GALLAGHER:  From every one of your

3   objections.

4        MR. KELLEHER:  Why don't you tell me -- to

5   topic 1?

6        MR. GALLAGHER:  Topic 1, topic 2, topic 3.

7        MR. KELLEHER:  Okay, continue to read the next

8   two sentences, if you would, please.

9        That was a quote out of the middle of a

10  paragraph, correct?

11       MR. GALLAGHER:  Right.  The rest is --

12       MR. KELLEHER:  Go on.

13       MR. GALLAGHER:  -- "This limitation is

14  consistent with CardioNet's understanding of the

15  nature and probable extent of LifeWatch's

16  examination of the CardioNet MCOT kits.  Discovery

17  is ongoing and to the extent further discovery

18  reveals additional confidential proprietary, and/or

19  trade secret information misappropriated by

20  defendants, CardioNet may designate one or more

21  witnesses to testify on this subject as it relates

22  to that information."

23       Is there something in that following two

24  paragraphs that you think limits your statement that

1    you're ignoring to produce a witness concerning the

2    visual inspection of the monitor hardware?

3        MR. KELLEHER:  Well, I don't think we need to

4    read this all on the record.

5        Response to subject number 1, I assume that if

6    we have a motion, it will also include the sentences

7    that you skipped at the beginning of the paragraph

8    as well that incorporate the general objections and

9    also state that we object to discovery of any of

10   CardioNet's trade secret information which is not

11   currently at issue in this litigation.

12       And if you go back to read the general

13   objections, you'll see that we again objected to

14   trade secret information that is not at issue in

15   this litigation.  And we've objected in the document

16   requests, we've made a very thorough record on this

17   point, as you know, Mr. Gallagher.

18       And your witnesses have testified, as you know,

19   that there was no examination of the monitor

20   hardware, there was no examination of the software.

21   If you want to state on the record, I would clearly

22   appreciate it, what is your basis for wanting to

23   know trade secret information about the monitor

24   hardware or the software?  What is your basis?

12/20/2007  Dube, Laurent

1    MR. GALLAGHER:  My basis is that you have a

2    complaint that alleges misappropriation of trade

3    secrets, you have alleged misappropriation of trade

4    secrets, you have alleged misappropriation of trade

5    secrets that would extend to information in the

6    monitor; and even as late as today you have

7    indicated that you intend to take further discovery

8    on the question of whether LifeWatch obtained trade

9    secrets from your monitor.  You haven't taken that

10   off the table.  We're entitled to discovery of it,

11   especially if you're taking discovery of it.

12        This discussion is -- should be unnecessary.

13   Under the rules, if you are going to instruct this

14   witness not to answer, you have three grounds for

15   doing so.  One is privilege, two is an order of the

16   Court limiting discovery; and three is if you intend

17   to file a motion for a protective order.  It's your

18   decision, you make it.

19        I'm just warning you that if you persist in

20   instructing the witness not to answer questions

21   about the monitor, we will file a motion to compel,

22   we will cite the rules, we will cite the case law

23   and we will seek costs.

24        MR. KELLEHER:  All right.  I'd like to take a

1    break in this deposition.  It's apparent you're not

2    going to honor the agreement that your counsel made.

3    Let's take a break, if you have that case and then

4    I'd like to, we'll come back and we'll let you know

5    what we want to do.

6        MR. GALLAGHER:  I have a case, it has my notes

7    on it.  The case is Gianopoulos versus Harvey

8    Waldner (phonetic), 1994 U.S. District Lexis 1758.

9    It's a February 14, 1994 decision by Judge Conlan.

10       I have a case Circle Group Internet versus

11   Atlas, 2004 U.S. District Lexis 2609.  That's a

12   February 2004 decision by Judge Levco.

13       And I have a case Redwood versus Dobson, 7th

14   circuit 476 F.3rd 462.  That's a January 2007

15   decision by Judge Easterbrook, all citing Rule 30 of

16   the Federal Rules of Civil Procedure.

17       MR. KELLEHER:  Okay, and as you know, we had an

18   agreement that this beef would -- disagreement would

19   be resolved professionally, without a motion for

20   protective order necessary before the depositions.

21   Apparently you don't intend to honor that agreement.

22       I'm going to go talk to my co-counsel, and we

23   will file a motion for protective order, if

24   necessary.

12/20/2007  Dube, Laurent

1    MR. GALLAGHER:  And provide me with a copy of

2    what you claim to be the agreement.

3        And again, our position is that you served

4    objections putting us on notice that you would

5    produce a witness to talk about the monitor

6    hardware, and the first time we heard that you are

7    not going to produce a witness on that was when you

8    instructed the witness not to answer those questions

9    today.

10    MR. KELLEHER:  And the first time that we heard

11   that, in fact, you were claiming not to have

12   examined the monitor hardware was after those

13   objections were filed.

14       We are going to, to adjourn this deposition and

15   imagine we'll be talking.

16    MR. GALLAGHER:  Well, let me just make it clear

17   if you adjourn without filing a motion, we will

18   seek -- we're going to seek costs one way or the

19   other, if you don't file a motion, because we're

20   going to move to compel.

21       Are you adjourning for the day and leaving, is

22   that your position?

23    MR. KELLEHER:  No, I'm going to go consider our

24   position, and I'll get back to you.

1      MR. GALLAGHER:  All right.

2      THE VIDEOGRAPHER:  Going off the video record

3  at 9:35 a.m.

4        (WHEREUPON, a recess was had.)

5      THE VIDEOGRAPHER:  We're going back on the

6  video record at 10:21 a.m.

7      MR. KELLEHER:  While we were on break I just

8  had a conversation with counsel for LifeWatch.

9      CardioNet will file a motion for protective

10  order to limit the scope of this deposition to what

11  we view is proper, which is an examination of trade

12  secrets that could have been obtained by LifeWatch,

13  given the scope of the examination of the device

14  that LifeWatch's 30(b)(6) witnesses have testified

15  to earlier this week.

16      And, in particular, as to trade secrets

17  embodied in the monitor hardware and trade secrets

18  embodied in CardioNet's software, the testimony of

19  LifeWatch's 30(b)(6) witness earlier this week on

20  those topics was that LifeWatch did not examine

21  either the monitor hardware or any software on

22  either the CardioNet sensor or the CardioNet

23  monitor.  In light of that testimony and the current

24  state of the evidence on that topic, we will file a

1   motion for protective order, as it appears that

2   LifeWatch continues to want to seek trade secrets

3   that are not currently at issue in the case.

4       And I understand our agreement is that we will

5   continue with the remainder of this deposition on

6   the other topics that Mr. Dubé is prepared to

7   testify as to today, and we will get clarification

8   from the Court as to what, if any, additional

9   testimony is necessary.

10      MR. GALLAGHER:  We, of course, don't agree with

11  your position, but we do agree that it makes sense

12  to proceed today with other topics on which you're

13  not filing a motion or instructing the witness not

14  to answer, so we can, you know, take advantage of

15  the time and build the record for the case.

16  BY MR. GALLAGHER:

17      Q.   Mr. Dubé, let me ask you to pull out the

18  topics, the 30(b)(6) notice, and direct your

19  attention to topic 9.

20          Do you have that in front of you?

21      A.   Yes, I do.

22      Q.   Topic 9 is "All investigations or

23  examinations CardioNet has conducted concerning any

24  products or devices designed, manufactured, offered,

# EXHIBIT B

# BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
www.bartlit-beck.com

CHICAGO OFFICE

COURTHOUSE PLACE
54 WEST HUBBARD STREET
CHICAGO, IL 60610
TELEPHONE: (312) 494-4400
FACSIMILE: (312) 494-4440

DENVER OFFICE

1899 WYNKOOP STREET
8TH FLOOR
DENVER, CO 80202
TELEPHONE: (303) 592-3100
FACSIMILE: (303) 592-3140

WRITER'S DIRECT DIAL:
(312) 494-4428
sean.gallagher@bartlit-beck.com

December 21, 2007

**Via Facsimile**

Michael F. Kelleher
Folger Levin & Kahn LLP
Embarcadero Center West
275 Battery Street – 23rd Floor
San Francisco, CA  94111

Dear Mike:

I write to follow up on several matters where CardioNet has not provided adequate discovery in response to our requests.  Given the pending motion for preliminary injunction and the agreement by the parties to engage in expedited discovery, we expect CardioNet to address these deficiencies without delay.

Please let me know your position on these issues as soon as you can, as we will want to seek the Court's guidance in resolving any disputes.

We noted the following categories of documents that should have been produced, but were not produced, in response to our requests:

1.     Call scripts

Ed Stone and others testified about the "scripts" that CardioNet claims to use for its phone calls with customers.  These scripts supposedly cover the procedure for (a) walking a customer through the setup process (including how to respond to the on-screen prompts and explanations of the alleged "click-through" agreement), (b) warning people who answer the phone that their call will be recorded, and (c) what to say when seeking return of late devices.

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

Michael F. Kelleher
December 21, 2007
Page 2

2.    Recordings

CardioNet has produced only selected recordings of calls that related to Mr. Lehman, Ms. Ament or the matters at issue in this case.  Mr. Stone described CardioNet's system for recording incoming and outgoing calls.  He explained that CardioNet records up to twelve separate lines simultaneously.  Given the number of calls that appears on the contact notes for Mr. Lehman and Ms. Ament, it is inconceivable that CardioNet has *no* recordings of calls with Mr. Lehman, no additional recordings with Ms. Ament, and no recording of critical conversations like those in which a CardioNet employee is supposed to have walked Mr. Lehman and Ms. Ament through the setup screens on the device.

3.    Contact notes

Ed Stone described the notes that are maintained for contacts with CardioNet customers.  CardioNet produced a log for Mr. Lehman that stops on November 14.  The log for Ms. Ament stops at around the same time, if not earlier, even though CardioNet plainly continued to have contact with her.  CardioNet should produce the complete set of notes for conversations with Mr. Lehman and Ms. Ament.

4.    Training materials

Ed Stone testified about training materials, and training demonstrations, where CardioNet employees are trained on various procedures.  In particular, he claimed to have seen materials or a demonstration of how a customer is taken through the setup process and what happens when the customer responds to the prompts that are presented during the setup process.  None of this material was produced.

5.    Statistics

Russ Porges mentioned documentation that CardioNet maintains regarding the number of "late" returned devices.  These include:  (a) management reports on CardioNet's performance in obtaining the return of its devices, reporting the percentages returned within 7 days, 14 days, and 21 days; (b) statistics on the number of devices that are returned "immediately" (within 3 days); and (c) copies of the "due back report" from October and November (which Mr. Porges maintains in email or on his hard drive).

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

Michael F. Kelleher
December 21, 2007
Page 3

6.    CardioNet's inspection of the LifeWatch device

There is a surprising gap in CardioNet's production of documents concerning its efforts to obtain and inspect a LifeWatch device. CardioNet initially refused to provide any discovery on this issue, then CardioNet appeared to relent in that position, but when it came to actually producing documents CardioNet provided almost nothing concerning its inspection of the LifeWatch device or the use it has made of the information it obtained through that inspection.

a.    Photographs

CardioNet produced a PDF copy of some photographs of a LifeWatch device (CN 202-256). Many of these documents were produced in black and white even though the original photos were in color. Color versions were emailed to us during the Dube deposition and were marked as an exhibit. Those emailed copies are in the original JPEG format and bear what appear to be original file names. The numbering on the photos that were emailed reveals a number of gaps, further suggesting that the PDF version that was produced to us may not be a complete set of photographs and that the order of the photographs was changed before the photographs were produced.

With respect to the photographs, we need (a) all photos of the LifeWatch device, in the native format in which they are maintained on the card used to store photographs in the camera used to take the photographs, (b) all files containing photographs of the LifeWatch device, in their native format as they are maintained on Mr. Dube's hard drive; (c) all files containing photographs of the LifeWatch device, in their native format as they are maintained in any other location at CardioNet (including in the marketing department, where Mr. Dube said copies of some or all of the photographs were sent); (d) all copies of the photographs that were disseminated within CardioNet, including any documents (email) referencing or relating to the dissemination of the photographs; (e) all documents that contain any portion of any of the photographs, whether created by CardioNet or not. This would include, specifically, the PowerPoint presentation that was shown and/or provided to CardioNet's sales team (which Mr. Dube testified about).

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

Michael F. Kelleher
December 21, 2007
Page 4

      b.    Other records of the inspection

Mr. Dube testified about materials besides photographs that were obtained through the inspection of the LifeWatch device. He said that CardioNet photocopied and/or scanned copies of the written materials that were included in the kit. Those documents have not been produced. They should have been. As with the photographs, we need every copy of these materials, every piece of email or other correspondence that references them, and every document that references or incorporates any portion of these materials.

      c.    Derivative works

CardioNet did not produce *any* documents that reflect its *use* of information gathered through inspection of the LifeWatch device. These documents should be produced. They include but are not limited to: (a) any documents describing the LifeWatch device or any portion of it that are maintained anywhere at CardioNet, whether in the Research & Development department, marketing, the office of the CEO, or elsewhere; (b) all documents, including but not limited to internal or external correspondence, marketing materials, research notes and the like, that were created based in any way on information learned from the examination of the LifeWatch device; (c) the "points" that Mr. Dube communicated to the marketing group, including any emails or correspondence or notes that reference them; and (d) all the documents created or stored within the marketing department based on the information that was conveyed to them by Mr. Dube, including but not limited to all correspondence (emails), notes, talking points, presentations, marketing materials, product comparisons, fact sheets, customer communications, and the like that were created based on the information obtained during the inspection.

      d.    Other documents

CardioNet has not produced any documents relating to the physician who prescribed the LifeWatch device that CardioNet inspected, nor has CardioNet produced any documents relating to the relationship between that doctor and Mr. Sweeney or others at CardioNet. We expect production of those materials as well.

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

Michael F. Kelleher
December 21, 2007
Page 5

These lists are meant to be illustrative, not exhaustive. We need to know everyone at CardioNet who has seen any of the photographs, information or materials that was gathered through the inspection and testing of the LifeWatch device. We need every document created as a result of the inspection. CardioNet produced selected photographs and nothing more. That production is inadequate.

    7.     Additional depositions regarding CardioNet's inspection

CardioNet's 30(b)(6) witness was not adequately prepared to testify about how CardioNet obtained a LifeWatch device, the inspection that CardioNet performed, or the use that CardioNet has made of information obtained through its inspection. Particularly in light of CardioNet's scant production of documents, LifeWatch was not in a position to identify individual deponents to address these topics.

We are now. Based on discovery taken thus far, we know that we will need to depose the following individuals before the hearing on CardioNet's motion for a preliminary injunction. Please provide dates when these witnesses will be available and could be deposed:

    a.     Jim Sweeney:

Mr. Dube testified based on a conversion he claims to have had with Mr. Sweeney about the circumstances leading to CardioNet's obtaining the LifeWatch device. Mr. Dube did not know critical information about this process because he was not there. Mr. Sweeney was the primary participant in these events for CardioNet. We need to depose Mr. Sweeney concerning his conversations with the doctor, his conversations with the family members of the doctor who had him over to dinner, his knowledge that a man trying to "curry favor" with CardioNet planned to obtain a LifeWatch device for CardioNet to examine, and his participation in the scheme to obtain a LifeWatch device for inspection and testing.

Before that deposition, we need any and all documents that CardioNet, the doctor and Mr. Sweeney can provide concerning these events. Without limitation, these documents should include the shipping records for the device (where it came from, where it went), Mr. Sweeney's email, and Mr. Sweeney's calendar or appointment book (showing his meetings with the doctor).

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

Michael F. Kelleher
December 21, 2007
Page 6

        b.     Lon Severe

    Mr. Dube was not present during the entire time that CardioNet inspected the LifeWatch device. He could not describe the inspection and testing that was done by Mr. Severe. He could not explain why CardioNet removed the black material covering the solder points for the ECG leads in the LifeWatch sensor. We need to depose Mr. Severe concerning his inspection and testing of the LifeWatch device.

        c.     J.R. Finkelmeier

    Mr. Dube could not say what Mr. Finkelmeier did with the information that was provided to him, as a result of the inspection, concerning the design and functionality of the LifeWatch device. We need to depose Mr. Finkelmeier on that issue.

        d.     Physician and patient

    Mr. Dube could not identify the physician who obtained the LifeWatch device or the patient for whom it was ostensibly prescribed. We need to depose these individuals to determine their role in the scheme to obtain and inspect a LifeWatch device. We will try to learn the name of the doctor and patient from our own records and will serve a subpoena on them as soon as we can, but if you can secure their participation in discovery without the necessity of a subpoena please let us know.

    CardioNet sought deliberately to avoid discovery on these matters, first by seeking an order that allowed only one-way discovery of LifeWatch, then by objecting to our legitimate discovery requests, and then by failing to provide meaningful responses. In view of *your* request for expedited discovery in advance of the hearing on *your* motion, we expect you to cure these deficiencies immediately.

                     Very truly yours,



                     Sean W. Gallagher

SWG/sed

# EXHIBIT C

ATTORNEYS AT LAW

FOLGER LEVIN & KAHN LLP

Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, California 94111
Telephone 415.986.2800
Facsimile 415.986.2827

Los Angeles Office:
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone 310.556.3700
Facsimile 310.556.3770

www.flk.com

December 28, 2007

**VIA E-MAIL**

Sean W. Gallagher
Bartlit Beck Herman Palenchar & Scott
Courthouse Place
54 West Hubbard Street
Chicago, IL 60610

Re:    CardioNet v. LifeWatch

Dear Sean:

I write regarding various discovery issues, including responses to those issues raised in your letter of December 21, 2007. I propose that we meet and confer regarding the issues in this letter on January 2, 2008 at 2:00 PM PST. Please let me know if you will agree to this proposed schedule.

## DISCOVERY ISSUES CONCERNING LIFEWATCH PRODUCTION

Instruction to LifeWatch Custodians to Delete Relevant Documents: We are very concerned that LW630 reflects an instruction by LifeWatch manager Brent Atwood to LifeWatch employees to delete relevant documents after CardioNet had threatened litigation. Please identify immediately who received these instructions to delete documents, who deleted documents as a result of these instructions, and what documents were deleted. CardioNet reserves all rights to pursue further remedies and discovery with respect to LifeWatch's spoliation of evidence.

Failure to Produce Electronically Stored Information: As you know, CardioNet requested production of the electronic versions of the documents to be produced by LifeWatch. Despite that request, LifeWatch produced only paper copies of its documents, including those that were apparently electronic files. Review of the documents produced by LifeWatch reveals that electronic versions are necessary to understand the documents, and CardioNet renews its demand for electronically stored information in native format. For example, LifeWatch's chosen paper format for production conceals the custodians of the documents. As another example, LW0054 omits important information included in the electronic format, including the recorded voicemail referenced at page LW0054, and the additional information cut off in cell E37 at

FOLGER LEVIN & KAHN LLP

Sean W. Gallagher
December 28, 2007
Page 2

LW0057.  In electronic format, the spreadsheets produced by LifeWatch also presumably include information necessary to understand the documents such as the dates the documents were created, and the authors.  LW617 provides another example by referencing IMG0224, which Mr. Arroyo testified was an electronic file name associated with one of the pictures produced at LW620-625.  Because the pictures were produced in hard copy only, CardioNet cannot tell which file/picture is being referenced.

Failure to adequately search for and produce documents regarding alleged legality of investigation:  It is apparent that LifeWatch has not produced all documents regarding its defense that the acquisition and examination of CardioNet's MCOT kits was lawful due to claims that LifeWatch was investigating against CardioNet.  For example, LifeWatch has not produced any emails or other documents related to LW301, the banner advertisement.  Similarly, Mr. Arroyo testified regarding early 2007 conversations regarding potential patent infringement claims, but testified in his deposition that he did not specifically look for such documents in producing documents.  Given Mr. Arroyo's critical role in LifeWatch's alleged investigations, it is not acceptable that his production was so incomplete.  At a minimum, his electronically stored information should have been searched for references to CardioNet and MCOT – this was apparently not done.

Failure to Produce Documents Regarding Investigations:  It is apparent from LifeWatch's production and Mr. Arroyo's deposition that LifeWatch has failed to produce many documents concerning its analysis, examination or testing of the CardioNet MCOT kits.  For example, Mr. Arroyo flew to Israel to deliver the CardioNet MCOT kit to Messrs. Yakirevich and Nir Geva.  LifeWatch's production has no documents that indicate that this trip occurred, or what happened to the device while it was in Israel, or that reflect the return of the device from Israel when CardioNet threatened legal action.  We have also not seen documents from Mr. Yacov Geva, Mr. Nir Geva, Mr. Leverentz, and Mr. Yakirevich who were all involved in the inspection.

Failure to Produce Records Regarding Monitoring and Cardiac Simulator Event:  We are concerned that the records concerning the device prescribed to Mr. Lehman appear to be incomplete.  For example, the patient log that he maintained does not include any reference to the October 26th incident in which a simulated cardiac event caused a response by Chicago emergency personnel.  Moreover, it appears that LifeWatch has failed to produce all the daily patient reports resulting from the prescriptions for CardioNet MCOT kits obtained by Mr. Lehman and Ms. Ament.

Additional Depositions:  In your letter of December 21, you have demanded additional depositions that you contend should occur before a hearing on preliminary injunction.  CardioNet does not believe that either party should be allowed additional depositions before the preliminary injunction hearing.  However, to the extent that additional depositions are allowed, CardioNet demands depositions of the following individuals:  Mr. Yacov Geva, Mr. Nir Geva,

FOLGER LEVIN & KAHN LLP

Sean W. Gallagher
December 28, 2007
Page 3

Mr. Leverentz, Mr. Yakirevich, Mr. Atwood, and Mr. Richardson. The corporate designees provided by LifeWatch did not have important information as to the roles of these individuals in the taking and examination of CardioNet's MCOT kits.

## YOUR LETTER OF DECEMBER 21

With respect to your letter's request for scripts, we do not believe this was called for in LifeWatch's document request. Without waiver of this objection, CardioNet will search for and produce relevant scripts.

With respect to your request for recordings, CardioNet will search for additional recordings regarding the Lehman and Ament devices and produce such recordings to the extent they exist.

With respect to the contact notes, I understand that the complete notes have been produced. We will confirm this with CardioNet.

With respect to your letter's request for training materials, we do not believe this was called for in LifeWatch's document request. Without waiver of this objection, CardioNet will search for and produce relevant training materials.

With respect to the statistics documents described in Mr. Porges' deposition, CardioNet will search for and produce documents sufficient to support the testimony given in the deposition.

With respect to your letter's demand for photographs, CardioNet produced the photographs before the deposition, and also provided native copies by email during the deposition. To the extent that you are demanding duplicate, native copies of the photographs taken of the LifeWatch device from every place that such photographs have been stored, you have failed to make a comparable production on behalf of LifeWatch with respect to LifeWatch's inspection of the CardioNet device. For example, it appears that you have failed to provide any documents from Mr. Yacov Geva's, Mr. Yakirevich's or Mr. Nir Geva's computers although they clearly have responsive electronically stored information. Moreover, your demand is inconsistent with the testimony of LifeWatch's corporate designee, Mr. Arroyo, who testified that inspection of the interior or exterior of the LifeWatch ACT would not reveal any trade secrets – thus, the photographs that have already been produced cannot incorporate any trade secrets and cannot support your claim of unclean hands. Further, your demand is overbroad and unlikely to lead to the discovery of admissible evidence to the extent that it seeks documents such as sales presentations which incorporate only photographs of the exterior of the device. With respect to the photographs, I suggest that we meet and confer in an attempt to understand what electronically stored information exists and seek to reach agreement on what should be produced.

FOLGER LEVIN & KAHN LLP

Sean W. Gallagher
December 28, 2007
Page 4

With respect to your request for the scans of the brochures from the LifeWatch device, CardioNet will search for and produce those materials.

With respect to your request for "derivative works", that request is overbroad and unlikely to lead to the discovery of admissible evidence because it is completely unrelated to the supposed unclean hands defense that you are claiming. LifeWatch's corporate designee did not identify any trade secrets that CardioNet could have learned from opening up the device. Moreover, Mr. Dube testified that his observations to the sales force about the LifeWatch device came from statements in the LifeWatch brochure (the number of ECG leads and the fact that it was not defibrillation proof) and the fact that no shielding was observed in the device. Given the testimony of Mr. Arroyo as to the absence of LifeWatch trade secrets in inspection of the LifeWatch device, it is clear that any "derivative works" based on these observations by Mr. Dube cannot establish an unclean hands defense.

With respect to your request for documents about how the device was obtained by CardioNet, it is my understanding that CardioNet has searched for such documents and produced them to the extent they exist.

With respect to your claim that Mr. Dube was not adequately prepared to testify regarding the inspection of the LifeWatch device, that is incorrect. Mr. Dube fully testified regarding the inspection, and CardioNet believes that no further depositions are necessary on this topic, particularly in light of the admissions of LifeWatch's designee that no trade secrets can be revealed through an inspection of the LifeWatch sensor.

## MEET AND CONFER RE MOTION FOR PROTECTIVE ORDER

During the Dube deposition, you sought discovery regarding trade secrets embodied in the CardioNet monitor and CardioNet MCOT software despite the testimony of LifeWatch's witnesses that no inspections of the monitor or software were conducted. Similarly, you also sought trade secret information regarding the C3 device even though LifeWatch inspected only C2 devices. When CardioNet objected, you demanded that CardioNet file a motion for protective order. We intend to file this motion on January 2, 2008. In order to meet and confer, please let me know if you have reconsidered your requests for this discovery.

Very truly yours,

*Michael F. Kelleher*

Michael F. Kelleher

**EXHIBIT D**

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
www.bartlit-beck.com

CHICAGO OFFICE
COURTHOUSE PLACE
54 WEST HUBBARD STREET
CHICAGO, IL 60610
TELEPHONE: (312) 494-4400
FACSIMILE:   (312) 494-4440

DENVER OFFICE
1899 WYNKOOP STREET
8TH FLOOR
DENVER, CO 80202
TELEPHONE:   (303) 592-3100
FACSIMILE:   (303) 592-3140

WRITER'S DIRECT DIAL:
(312) 494-4428
sean.gallagher@bartlit-beck.com

January 1, 2008

**By Email**

Michael F. Kelleher
Folger Levin & Kahn, L.L.P.
Embarcadero Center West
275 Battery Street – 23rd Floor
San Francisco, CA 94111

      Re:    CardioNet v. LifeWatch

Dear Mike:

      I write in response to your letter of December 28.

      Kevin Parra and the lawyers from Proskauer will respond to your questions about discovery from LifeWatch. This letter addresses your proposed motion for a protective order and CardioNet's obligations to provide discovery.

      Let me first make a suggestion on timing. We are scheduled to appear before Judge Conlon on January 10. I do not think we can realistically expect to have all these issues fully resolved in time to complete discovery to everyone's satisfaction before that hearing. With that in mind, I suggest that both parties file their respective motions on discovery issues (your motion for protective order, our motion to compel) with the expectation that the motions will be heard on January 10. We also need to meet and confer on these discovery issues and on the submissions that the Court asked the parties to file on January 8 (concerning the form of the hearing on your pending motion). I am not available tomorrow, but could be available Thursday afternoon or pretty much any time on Friday to discuss the discovery matters raised in this letter. I suggest we schedule a separate call on Friday or Monday to discuss the submissions regarding the form of the hearing.

      With respect to your proposed motion for protective order, LifeWatch is entitled to take discovery that is at least commensurate in scope with the claims that CardioNet is asserting in this case. You have made it perfectly clear that CardioNet is asserting claims based on the C2 monitor and software and that CardioNet itself intends to take further discovery in aid of those claims. As long as CardioNet is proceeding with these claims, LifeWatch is entitled to respond. Absent a clear representation that CardioNet is not asserting claims based on the monitor or software, LifeWatch will proceed with its discovery requests.

      There is an additional issue with CardioNet's C3 device. As you know, LifeWatch is filing counterclaims that implicate the C3 design. We will take discovery in aid of those claims, including discovery aimed at determining the extent to which Mr. Dube and others at CardioNet

Page 2

used information learned through their examination of the LifeWatch device in designing CardioNet's next generation product.

You have not addressed all the issues raised in my letter of December 21. The following issues remain:

1. Recordings

While you are searching for recordings of conversations that relate to the Lehman and Ament devices, please ensure that CardioNet preserves all recordings that might be relevant to any issue in this case. This would include any calls that relate to the counterclaims being asserted by LifeWatch (e.g., any calls relating to CardioNet's inspection of the LifeWatch device and any calls in which LifeWatch spoke to third parties about the design or capabilities of the LifeWatch device).

2. CardioNet's inspection of the LifeWatch device

You do not address the general lack of documentation provided by CardioNet concerning its inspection and testing of the LifeWatch device. We received a single PDF containing photographs and no other documentation at all. Mr. Dube described emails and other documents that should be produced.

CardioNet cannot refuse to provide discovery concerning its inspection and testing of the LifeWatch device, or the use it made of information gleaned from that inspection, on the supposed grounds that CardioNet's actions are not "relevant" to the "unclean hands" defense.

First, CardioNet's conduct is in fact relevant to this defense, regardless of the extent to which CardioNet succeeded in stealing LifeWatch's trade secrets. It shows the steps that CardioNet itself was willing to take in order to gain access to and use non-public information about a competitor's device. CardioNet could not know, going in, that its detailed inspection and testing of the LifeWatch device would not reveal LifeWatch trade secrets. Indeed, Mr. Dube candidly admitted that CardioNet understood before opening the LifeWatch device that he was tampering with a competitors' property, that he learned information he had not known before, and that he and CardioNet used that information in various ways. The full scope of CardioNet's behavior will be relevant, as a matter of equity, in determining whether CardioNet is entitled to a one-way injunction.

Second, CardioNet's conduct is relevant to other aspects of LifeWatch's defense. For example, CardioNet cannot rightly claim that what LifeWatch did was "wrong" when CardioNet took similar and even more invasive measures to learn about the LifeWatch device.

Finally, LifeWatch is entitled to take discovery concerning CardioNet's conduct to support its counterclaims.

Page 3

3. Native copies of photographs

CardioNet's mid-deposition production of native files for CN 235-256 raises questions about the manner in which the photographs were assembled for production. You do not address this at all in your letter.

During the Dube deposition, we were provided JPEG images of what was represented to be CN 235-256. The numbering in the file names for these photos runs as follows: IMG_001 through IMG_0016, then IMG_0025, then IMG_0039, then IMG_0045 through IMG_0048. Based on the standard format used by digital cameras (which Mr. Dube said he followed), there should be no such gaps. What happened to the images between 16 and 25? What happened to the images from 26 to 38? What happened to the images from 40 to 44? Were any photos taken after number 48? Were these images (or others in the production at CN 202-56) rearranged before they were burned into the PDF file that was produced to LifeWatch? Why?

The order of the photographs is also highly suspect. Image 16 is a picture of the circuit board *inside* the sensor. That is followed (after a gap) by image 25, which is a picture of the *outside* of the device. After a further gap, we return to another picture of the circuit board. That picture – image 39 – stands entirely alone. There are gaps in the numbering on either side. The first photographs on either side (image 25 and image 45) are of the outside of the device. And most notably, image 25 is the only photograph, in the entire set that CardioNet produced, that clearly shows the removal of the shielding on the solder points in the LifeWatch device. Why does that image stand alone in this way? Do the missing images 26-38 and 40-44 provide further information about why and how CardioNet tampered with the shielding material?

Separately, you produced JPEG image files only for CN 235-256. The PDF version of the photographs in CardioNet's production starts at CN 202. Please produce the JPEG files for the remaining images.

The photographs that CardioNet did produce bespeak very detailed examination and testing of the LifeWatch device. They reveal what we believe to be tampering with shielding inside the device. LifeWatch is entitled to a complete set of photographs from CardioNet's inspection, a complete description of the photographs that were taken, and a complete explanation of the apparent gaps in CardioNet's production of photographs.

Please let me if you will provide that or not.

4. Other issues with photographs and CardioNet's use of information

You have not addressed our request for additional photographs maintained at CardioNet. Mr. Dube could not attest to the completeness of the photographs that were produced at CN 202-56. Mr. Dube also testified that photographs of the LifeWatch device were distributed around CardioNet; none of the distributed photographs were produced. We are entitled to a *complete* accounting of CardioNet's photographs – what photographs exist, where they are stored, where they have been stored, where they were sent, whether they were printed out, who has seen them and what has been done with them.

Page 4

You also have not addressed our request for other records of CardioNet's inspection or CardioNet's use of the information that it learned from the inspection of the LifeWatch device.

The extent of CardioNet's inspection and testing is relevant to CardioNet's claims, to LifeWatch's defenses (including its defense of unclean hands) and to LifeWatch's counterclaims. If you are not prepared to produce the photographs and other records of CardioNet's inspection and CardioNet's use of information learned from the inspection, then we will move to compel production of these materials.

5. Derivative works

You have mischaracterized the testimony of Mr. Arroyo. He was not LifeWatch's corporate designee concerning trade secrets in the LifeWatch device, nor did he testify that the LifeWatch device does not contain trade secrets that could be discovered through the type of inspection conducted by CardioNet.

You have also mischaracterized Mr. Dube's testimony. He admitted that he and others at CardioNet relied, at least in part, on information determined through their internal inspection and testing of the LifeWatch device.

Again, in asking for documents and materials derived from the inspection we are seeking discovery that is relevant to CardioNet's claims, to LifeWatch's defenses (including its defense of unclean hands) and to LifeWatch's counterclaims.

6. How CardioNet obtained the LifeWatch device

You say that "CardioNet has searched for and produced documents" relating to how CardioNet obtained the LifeWatch device, but then add the qualifier "to the extent they exist."

There are no documents on this issue in CardioNet's production. Are you saying that CardioNet has absolutely no written records relating to how it obtained the LifeWatch device? Nothing anywhere with the doctor's name on it? No emails? No notes? Nothing?

Please confirm that you have produced no documents on this issue and that CardioNet is in fact representing that it maintained no records and now has no documents on this issue.

7. Additional deposition of Mr. Dube

Mr. Dube was not adequately prepared. As an illustration:

He did not know the name of the doctor who sent CardioNet the LifeWatch device. He could not identify the supposed patient to whom the LifeWatch device was prescribed. He could not say whether the supposed patient had a legitimate need for the device or ever used the device. He could not say what Mr. Severe did in his inspection and testing of the device (though he admitted that Mr. Severe was alone with the device). He could not say whether, or why, the shielding material was removed from solder points in the LifeWatch device. He could not say what Mr. Sweeney did during the inspection and testing of the LifeWatch device. He could not

Page 5

identify the records that were made of the inspection. He could not say where the original photographs were maintained. He could not say how they were numbered. He could not say whether any were deleted. He could not say whether the photographs were ever printed or to whom they were shown. And he could not say what Mr. Finkelmeyer did with the information that was sent to him.

In addition, CardioNet failed to produce significant documents before Mr. Dube's deposition. This includes photographs of the LifeWatch device, emails about the inspection, records of the inspection, materials sent to Mr. Finkelmeyer, marketing materials prepared by CardioNet based on the inspection, and more.

Let me know if you are unwilling to make a full production of documents and then produce an adequately prepared 30(b)(6) witness to testify about the topics on which Mr. Dube was designated.

8. Individual depositions

We asked for dates for deposition of Jim Sweeney, Lon Severe, J.R. Finkelmeier and the doctor and patient who participated in the scheme to obtain a LifeWatch device for CardioNet. As you are unwilling to propose dates (or in the case of the doctor and patient to even gives us their *names*), we will proceed by way of deposition notice and subpoena.

Very truly yours,

Sean W. Gallagher

# EXHIBIT E

**Gallagher, Sean**

| | |
|---|---|
| **From:** | Gallagher, Sean [sean.gallagher@bartlit-beck.com] |
| **Sent:** | Monday, January 07, 2008 11:37 AM |
| **To:** | 'Julie Fieber'; 'Michael Kelleher'; 'Kevin J. Perra' |
| **Cc:** | 'Amy Kashiwabara'; 'Richard Keenan'; 'Alexander Kaplan'; LifeWatch Correspondence (4837-9725-3378@mail.vault.netdocuments.com); 'toni.alford@bartlit-beck.com' |

**Subject:** RE: CardioNet / LifeWatch

Julie:

There are a number of things that need to be addressed here.

First, with respect to CardioNet's motion:

   If you intend to file an "amended" *motion* as opposed to an amended *brief* in support of the already pending motion, then we need to know what changes you intend to make to the motion so we can discuss how that affects the schedule for responding.  Please tell us what you intend to do.

   Also, CardioNet should commit to a specific due date for its amended brief. (More on that below)

   Finally, I believe that the page limit for briefs in support of a motion like this is 15 pages, per LR 7.1.  Do you intend to abide by that page limit or do you intend to seek approval to exceed it?

Second, with respect to LifeWatch's response:

   We cannot commit to providing a response within 14 days without knowing more about the filing you intend to make.  If you are just filing an amended brief in support of your existing motion, we can agree to respond in 14 days and would pick a date certain for that filing based on the date by which you agree to make your amended filing.  If you are filing an amended motion, we might require additional time, depending on the scope of the arguments that you raise.

Third, with respect to the timing of briefing and the hearing date:

   LifeWatch cannot agree to a response date for our brief or a hearing date on January 30 because we cannot be sure when the discovery we require will be completed .  We are waiting for documents from CardioNet, as well as additional depositions.  We will need time with the documents before the depositions, and time after the depositions to include that discovery material in our brief and to prepare for trial testimony based on what the witnesses say.

Instead of proposing a date for the hearing, we should provide the Court with an update on the discovery that has been taken and the discovery that is planned, ask the Court to set a deadline of January 30 for completing the addititional discovery (documents and witnesses), and propose a briefing schedule following that deadline.

If we agree to January 30 as the deadline for providing the additional discovery that we have requested, could CardioNet commit to filing its amended brief on February 4?

Finally, a procedural matter:

I think the caption should reflect the fact that LifeWatch is a counterclaim plaintiff and CardioNet is a counterclaim defendant. I do not think the notation "and related counterclaim" is correct.

---

**From:** Julie Fieber [mailto:jfieber@flk.com]
**Sent:** Friday, January 04, 2008 7:20 PM
**To:** Michael Kelleher; Kevin J. Perra
**Cc:** sean.gallagher@bartlit-beck.com; Amy Kashiwabara; Richard Keenan; Alexander Kaplan
**Subject:** Re: CardioNet / LifeWatch

Kevin -

Per our discussion today, attached is a proposed joint submission regarding conduct of the preliminary injunction hearing. Please let us know if this acceptable to you.

Julie L. Fieber
jfieber@flk.com
Folger Levin & Kahn LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Main No.: (415) 986-2800
Direct:     (415) 365-7823
Fax:        (415) 986-2827

This confidential message is intended for the designated recipient(s) only, and may contain privileged attorney-client and/or work product communications. If you are not an intended recipient, please delete the message and notify the sender at the telephone number or e-mail address above.

**Gallagher, Sean**

| | |
|---|---|
| **From:** | Julie Fieber [jfieber@flk.com] |
| **Sent:** | Monday, January 07, 2008 6:52 PM |
| **To:** | sean.gallagher@bartlit-beck.com; Alex Kaplan; 'Kevin J. Perra' |
| **Cc:** | Amy Kashiwabara; Michael Kelleher; Richard Keenan |
| **Subject:** | RE: CardioNet / LifeWatch - submission re PI hearing |

Sean,

As you know, CardioNet believes that the preliminary injunction hearing need not be delayed in connection with discovery directed to LifeWatch's counterclaims, and we will not agree to your proposal to delay resolution of out motion for preliminary injunction.

Accordingly, we propose that the parties submit separate proposals to the court regarding scheduling and conduct of the preliminary injunction hearing tomorrow. We propose that the parties agree in advance to a page limit for the submittals - we propose that the submittals be no more than three pages in length. Please let me know if you agree.

We intend to ask the Court to set a briefing schedule on the amended preliminary injunction motion and brief we intend to file. We will request that the court require defendants to submit any opposition briefing 14 days later, and that plaintiff be allowed to submit a reply brief 3 days after that. We will then request that the court schedule a preliminary injunction hearing as soon as possible after completion of that briefing.

We are willing to discuss and submit a joint request for extension of page limits for both sides for the filings, and propose that the parties suggest a 25-page limit for briefs.

With respect to the further depositions that both sides have requested, we do not believe that further discovery is not necessary for our motion to be briefed and ruled on by the Court. However, any discovery going forward should be mutual. Both sides have identified additional depositions of interest, and I suggest we work together to see if we can reach agreement on scheduling.

Best regards,

Julie L. Fieber
jfieber@flk.com
Folger Levin & Kahn LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Main No.: (415) 986-2800
Direct:     (415) 365-7823
Fax:        (415) 986-2827

1/8/2008

This confidential message is intended for the designated recipient(s) only, and may contain privileged attorney-client and/or work product communications. If you are not an intended recipient, please delete the message and notify the sender at the telephone number or e-mail address above.

>>> "Gallagher, Sean" <sean.gallagher@bartlit-beck.com> 1/7/2008 9:36 AM >>>
Julie:

There are a number of things that need to be addressed here.

First, with respect to CardioNet's motion:

If you intend to file an "amended" *motion* as opposed to an amended *brief* in support of the already pending motion, then we need to know what changes you intend to make to the motion so we can discuss how that affects the schedule for responding. Please tell us what you intend to do.

Also, CardioNet should commit to a specific due date for its amended brief. (More on that below)

Finally, I believe that the page limit for briefs in support of a motion like this is 15 pages, per LR 7.1. Do you intend to abide by that page limit or do you intend to seek approval to exceed it?

Second, with respect to LifeWatch's response:

We cannot commit to providing a response within 14 days without knowing more about the filing you intend to make. If you are just filing an amended brief in support of your existing motion, we can agree to respond in 14 days and would pick a date certain for that filing based on the date by which you agree to make your amended filing. If you are filing an amended motion, we might require additional time, depending on the scope of the arguments that you raise.

Third, with respect to the timing of briefing and the hearing date:

LifeWatch cannot agree to a response date for our brief or a hearing date on January 30 because we cannot be sure when the discovery we require will be completed . We are waiting for documents from CardioNet, as well as additional depositions. We will need time with the documents before the depositions, and time after the depositions to include that discovery material in our brief and to prepare for trial testimony based on what the witnesses say.

Instead of proposing a date for the hearing, we should provide the Court with an

update on the discovery that has been taken and the discovery that is planned, ask the Court to set a deadline of January 30 for completing the addititional discovery (documents and witnesses), and propose a briefing schedule following that deadline.

   If we agree to January 30 as the deadline for providing the additional discovery that we have requested, could CardioNet commit to filing its amended brief on February 4?

Finally, a procedural matter:

   I think the caption should reflect the fact that LifeWatch is a counterclaim plaintiff and CardioNet is a counterclaim defendant.  I do not think the notation "and related counterclaim" is correct.

---

**From:** Julie Fieber [mailto:jfieber@flk.com]
**Sent:** Friday, January 04, 2008 7:20 PM
**To:** Michael Kelleher; Kevin J. Perra
**Cc:** sean.gallagher@bartlit-beck.com; Amy Kashiwabara; Richard Keenan; Alexander Kaplan
**Subject:** Re: CardioNet / LifeWatch

Kevin -

Per our discussion today, attached is a proposed joint submission regarding conduct of the preliminary injunction hearing.  Please let us know if this acceptable to you.

Julie L. Fieber
jfieber@flk.com
Folger Levin & Kahn LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Main No.: (415) 986-2800
Direct:    (415) 365-7823
Fax:       (415) 986-2827

This confidential message is intended for the designated recipient(s) only, and may contain privileged attorney-client and/or work product communications.  If you are not an intended recipient, please delete the message and notify the sender at the telephone number or e-mail address above.