UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff | Case No. 07C 6625 |
| v. | District Judge Suzanne B. Conlon |
| LIFEWATCH CORP., HANNA KONARZEWSKA, M.D., JOEL LEHMAN and LISA AMENT. | Magistrate Judge Morton Denlow |
| Defendants. | |
| LIFEWATCH CORP., | |
| Counter-plaintiff | |
| v. | |
| CARDIONET, INC., | |
| Counter-defendant. | |

**AFFIDAVIT OF JULIE L. FIEBER IN SUPPORT OF PLAINTIFF CARDIONET'S MOTION TO DISMISS COUNTS II, III, IV, V, AND VI OF LIFEWATCH'S COUNTERCLAIMS**

I, Julie L. Fieber, hereby declare as follows:

1.    I am a partner at Folger Levin & Kahn LLP, attorneys for CardioNet, Inc. ("CardioNet"), plaintiff in the above-captioned action. I have personal knowledge of the following matters and could and would testify competently with respect to them.

2.    Attached as **Exhibit A** is a true and correct copy of a photograph of a banner displayed over a CardioNet booth during a March 2007 trade conference, which read, "The

ONLY FDA Cleared and Medicare Reimbursed Wireless ECG Arrhythmia Detection and Alarm System. PERIOD."

    3.      Attached as **Exhibit B** are a true and correct copies of excerpts from the deposition transcript of Andrew Arroyo.

    4.      Attached as **Exhibit C** are a true and correct copies of excerpts from the deposition transcript of Cindy Pillar.

    I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct.

    Executed this 28th day of January, 2008, in San Francisco, California.

Julie L. Fieber

19084\2010\585545.1

# EXHIBIT A



LW0301

# EXHIBIT B

Page 174

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CARDIONET, INC., | ) | Case No. |
| Plaintiff, | ) | 07 C 6625 |
| vs. | ) | District Judge |
| LIFEWATCH CORP., HANNA KONARZEWKA, | ) | Conlon |
| M.D., DOE 1 and DOES 2. | ) | Mag. Judge |
| Defendants. | ) | Denlow |

CONTAINS CONFIDENTIAL MATERIAL

The videotaped 30(b)(6) deposition of LIFEWATCH CORPORATION, by ANDREW ARROYO, called as a witness herein for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before LISA SCHWAM, CSR No. 84-004650, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, at 6300 Sears Tower, 233 South Wacker Drive, Chicago, Illinois, commencing, on the 18th day of December, A.D. 2007, at 9:10 a.m.

ANDREW ARROYO,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 175

```
 1   PRESENT:

 2       FOLGER LEVIN & KAHN,

 3       (275 Battery Street, 23rd Floor,

 4       San Francisco, California 94111,

 5       415-986-2800), by:

 6       MR. MICHAEL F. KELLEHER,

 7           appeared on behalf of Plaintiff;

 8

 9       PROSKAUER ROSE LLP,

10       (1581 Broadway Street,

11       New York, New York 10036-8299,

12       212-969-3454), by:

13       MR. KEVIN J. PERRA,

14           appeared on behalf of the Defendants.

15

16       VIDEOTAPED BY:  SCOTT JOHNSON,

17                       Esquire Deposition Services.

18       REPORTED BY:   LISA SCHWAM, CRR, RPR,

19                      CSR No. 08-004650.

20

21

22

23

24
```

ANDREW ARROYO,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 176

1      THE VIDEOGRAPHER:  We're going on the video

2  record at 9:10 a.m.  My name is Scott Johnson, a

3  videographer in association with Esquire

4  Deposition Services.  Our address is 311 West

5  Monroe Street, Chicago, Illinois.  The court

6  reporter today is Lisa Schwam also of Esquire

7  Deposition Services.

8          Here continues the videotaped deposition of

9  Andrew Arroyo, taking place at 233 South Wacker Drive,

10  Chicago, Illinois.  Today's date is December 18th, 2007.

11  This deposition is being taken in the matter of CardioNet

12  versus LifeWatch, Case No. 07 CV 6625.

13          Counsel please state their names for the

14  record.

15      MR. KELLEHER:  Michael Kelleher for

16  Plaintiff, CardioNet Inc.

17      MR. PERRA:  Kevin Perra of Proskauer Rose,

18  on behalf of the Defendants.

19                  FURTHER EXAMINATION

20  BY MR. KELLEHER:

21      Q.   Good morning, Mr. Arroyo.

22      A.   Good morning.

23      Q.   Mr. Arroyo, you understand that you're still

24  under oath; is that correct?

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 177

1       A.   Yes, I do.

2       Q.   All right.  Did you have any conversations with

3    anybody about your deposition last night after the

4    deposition?

5       A.   No, I did not.

6       Q.   Did you have any conversations with anyone

7    about the topics that we covered in your deposition

8    yesterday?

9       A.   No, I did not.

10      Q.   Did you review any sorts of documents regarding

11   the topics of your deposition yesterday?

12      A.   No, I did not.

13      MR. KELLEHER:  I'm going to hand the witness what

14   has been -- I'll hand it to you -- premarked as

15   Deposition Exhibit 5.

16          (Exhibit 5 marked as requested.)

17      MR. KELLEHER:  And for the record, Deposition

18   Exhibit 5 is a document entitled "Physician Notification

19   Procedures for Arrhythmia Event Monitoring," with a Bates

20   number of LW0013.

21   BY MR. KELLEHER:

22      Q.   And Mr. Arroyo, I'll ask you if you recognize

23   Deposition Exhibit 5.

24      A.   It appears to be a LifeWatch form.

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 183

1        Q.    Okay.  So it doesn't say that it is the only

2    FDA cleared and Medicare approved monitor, correct?

3        MR. PERRA:  Objection to form.

4    BY THE WITNESS:

5        A.    No.  It says that it is, "The only FDA Cleared

6    and Medicare Reimbursed Wireless ECG Arrhythmia Detection

7    and Alarm System.  PERIOD."

8        Q.    And using that language, is that misleading,

9    the language actually of the banner?

10       MR. PERRA:  Objection.

11   BY THE WITNESS:

12       A.    To me, no.

13   BY MR. KELLEHER:

14       Q.    Okay.  And why is that not misleading to you?

15       A.    Because to me that clearly indicates that you

16   are looking for a specific code in the FDA for arrhythmia

17   detection and alarm systems.

18       Q.    Okay.  And is there a specific FDA code for

19   wireless ECG arrhythmia detection alarm systems?

20       A.    Yes.

21       Q.    Okay.  And what is that code?

22       A.    I believe it is the DSI.

23       Q.    Okay.  And what do you know of the DSI code?

24       MR. PERRA:  Objection to form.

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 184

1   BY THE WITNESS:

2       A.    That it's for wireless ECG arrhythmia.

3       Q.    Okay.  And is the CardioNet MCOT FDA cleared as

4   a wireless ECG arrhythmia detection and alarm system?

5       A.    I believe it is.

6       Q.    And that's the DSI FDA code that you referred

7   to?

8       A.    That's correct.

9       Q.    Let me do that again so we don't talk over each

10  other.  I apologize.  I paused and you jumped in.

11           And that is the DSI FDA code that you referred

12  to?

13      A.    Yes, it is.

14      Q.    Is the LifeWatch LifeStar ACT FDA cleared as a

15  wireless ECG arrhythmia detection and alarm system?

16      A.    Presently, no.

17      Q.    Has it ever been cleared as -- FDA cleared as a

18  wireless arrhythmia detection and alarm system?

19      A.    Yes, it has.

20      Q.    When was that?

21      A.    I do not remember the exact dates.  That would

22  probably be something for Cindy Pillar as our compliance

23  officer.

24      Q.    Can you tell me approximately when it was

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 185

1    cleared?

2         A.   I don't remember the times, and I don't want to

3    misstate that.

4         Q.   Was it sometime during 2007?

5         A.   Yes.

6         Q.   Do you know the date of when this photograph

7    that's Deposition Exhibit 6 was taken?

8         A.   I believe it was in March.

9         Q.   And why do you believe it's in March?

10        A.   It was at one of the particular conferences

11   that was in that time period.

12        Q.   And what conferences were those?

13        A.   I believe this was from the HRS conference or

14   Heart Rhythm Society conference in New Orleans.

15        Q.   Were there other conferences around that time

16   frame where banners like this were shown?

17        A.   Not this particular banner, but other banners

18   similar, yes.

19        Q.   And who took the photograph that's Deposition

20   Exhibit 6?

21        A.   I took it.

22        Q.   And why did you take it?

23        MR. PERRA:  Objection to form.  Asked and

24   answered.

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 186

1  BY THE WITNESS:

2      A.   It was requested that I take a picture of the

3  banner over the CardioNet booth.

4  BY MR. KELLEHER:

5      Q.   And who asked you to do that?

6      A.   Fred Mindermann.

7      Q.   Did you have a discuss with Mr. Mindermann

8  regarding this banner?

9      A.   Just briefly in that it existed, and he wanted

10  a picture of it to have further discussions back in

11  LifeWatch.

12     Q.   Did you have any other discussions at any time

13  regarding this banner?

14     A.   Not until this lawsuit.

15     Q.   Do you know whether anybody ever discussed this

16  banner with CardioNet?

17     A.   I do not know that.

18     Q.   Okay.  You told me that you thought that this

19  banner was misleading; is that correct?

20     A.   Yes.

21     Q.   Okay.  And why do you think it's misleading?

22     MR. PERRA:  Objection to form.

23  BY THE WITNESS:

24     A.   Because we received comments from physicians

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 187

1   that visited our booth asking if our device had been FDA

2   approved.

3   BY MR. KELLEHER:

4        Q.   Okay.  And why -- Do you think those were

5   related to the CardioNet banner for some reason?

6        A.   It was stated as such.

7        Q.   And who were these physicians?

8        A.   Just conference attendees.

9        Q.   Do you know any names of these people?

10       A.   I do not.

11       Q.   Does anybody at LifeWatch know any names of

12  these people?

13       A.   I do not.

14       Q.   Was any effort made to collect names of these

15  people?

16       A.   For purposes of marketing, absolutely.

17       Q.   Okay.

18       A.   For purposes specifically related to this

19  banner, I do not know.

20       Q.   Now, I believe that you stated that you

21  understood that this banner was, in fact, not misleading

22  personally?

23       MR. PERRA:  Objection.

24  BY THE WITNESS:

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 188

1      A.   I understood the verbiage of this banner,

2   yes.

3   BY MR. KELLEHER:

4      Q.   And the verbiage of this banner, as you read

5   it, was correct?

6      A.   Technically, this is correct.

7      Q.   So this picture was taken about March 2007 at

8   the Heart Rhythm Society meeting?

9      MR. PERRA:  He just testified to all of

10  this.  Why do we have to ask him that again?

11  This is what happened yesterday.

12  BY MR. KELLEHER:

13     Q.   You can go ahead and answer.

14     A.   Yes, I believe so.

15     Q.   And at that time, was the LifeStar ACT FDA

16  cleared as a wireless ECG arrhythmia detection and alarm

17  system?

18     A.   No.  It was approved as an ECG event

19  recorder.

20     Q.   At that time, was -- in March 2007 -- was the

21  LifeStar ACT approved for Medicare reimbursement as a

22  wireless ECG arrhythmia detection and alarm system?

23     A.   Again, that would be something to discuss with

24  our compliance officer.

ANDREW ARROYO,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 189

1       Q.    So you don't know one way or the other?

2       A.    Technically, I do not know whether it was

3   approved for reimbursement or not at that particular

4   time.

5       Q.    Was there some point in time at which it was

6   not approved for Medicare reimbursement as a wireless ECG

7   arrhythmia detection and alarm system?

8       A.    There was a point in time where the application

9   had been submitted and had not been approved.

10      Q.    You said that physicians came to the LifeWatch

11  booth and were confused about whether their LifeStar

12  had -- excuse me.  LifeWatch had FDA clearance for its

13  devices; is that correct?

14      A.    I stated that the doctors had come to our booth

15  requesting to know whether or not our device was approved

16  by the FDA.

17      Q.    Okay.  And did you have any conversations like

18  that personally?

19      A.    With the physicians, yes.

20      Q.    Okay.  And did you inform them that your device

21  was, in fact, approved by the FDA?

22      A.    Yes, I did.

23      Q.    Okay.  And did you tell them how it was

24  approved?

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 190

1      A.   Yes, I did.

2      Q.   Were there any questions about whether it was

3   improved -- approved -- as a wireless ECG arrhythmia

4   detection and alarm system?

5      A.   Can you clarify that.

6      Q.   Well, there is an FDA clearance -- There is an

7   FDA guideline for approval as a wireless ECG arrhythmia

8   detection and alarm system.

9      A.   Yes.

10     Q.   And you said that some people had been confused

11  as to what, if any, clearance LifeWatch had for its

12  devices; is that correct?

13     A.   They were unclear as to whether or not our

14  device was FDA approved.

15     Q.   Okay.  But you clarified that for those

16  people?

17     A.   Yes.

18     Q.   Are you aware of anybody that remained confused

19  about whether LifeWatch was approved as -- had some form

20  of FDA approval?

21     A.   Only -- The people that I spoke with

22  personally, I can assure that they were not confused

23  leaving our booth.  Anyone that did not come to our booth

24  or spoke with someone else, I cannot attest to.

ANDREW ARROYO, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 327

1    STATE OF ILLINOIS )

2                      )  SS:

3    COUNTY OF COOK    )

4            I, Lisa S. Schwam, a Notary Public within and

5    for the County of Cook, State of Illinois, and a

6    Certified Shorthand Reporter, Registered Professional

7    Reporter, and Certified Realtime Reporter, do hereby

8    certify:

9            That previous to the commencement of the examination

10   of the witness, the witness was duly sworn to testify the

11   whole truth concerning the matters herein;

12           That the foregoing deposition transcript was

13   reported stenographically by me, was thereafter reduced

14   to typewriting under my personal direction and

15   constitutes a true record of the testimony given and the

16   proceedings had;

17           That the said deposition was taken before me at the

18   time and place specified;

19           That I am not a relative or employee or attorney or

20   counsel, nor a relative or employee of such attorney or

21   counsel for any of the parties hereto, nor interested

22   directly or indirectly in the outcome of this action.

23           IN WITNESS THEREOF, I do hereunto set my hand and

24   affix my seal of office at Chicago, Illinois, this 20th

ANDREW ARROYO,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 328

1   day of December, 2007.

2

3

4                   Notary Public, Cook

5                   County, Illinois.

6                   My commission expires July 9, 2011

7

8   CSR No. 84-004650

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT C

CINDY PILLAR, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CARDIONET, INC., | ) | CASE NO. |
| Plaintiff, | ) | 07 CV 6623 |
| vs. | ) | DISTRICT JUDGE |
| LIFEWATCH CORP., HANNA KONARZEWKA, | ) | CONLON |
| M.D., DOE 1 and DOES 2, | ) | MAG. JUDGE |
| Defendants. | ) | DENLOW |

CONTAINS CONFIDENTIAL MATERIAL

The videotaped 30(b)(6) deposition of LIFEWATCH
CORPORATION, by CINDY PILLAR, called as a witness herein
for examination, taken pursuant to the Federal Rules of
Civil Procedure of the United States District Courts
pertaining to the taking of depositions, taken before
LISA SCHWAM, CSR No. 84-004650, a Notary Public within
and for the County of Cook, State of Illinois, and a
Certified Shorthand Reporter of said state, at 6300 Sears
Tower, 233 South Wacker Drive, Chicago, Illinois,
commencing, on the 18th day of December, A.D. 2007, at
2:19 p.m.

CINDY PILLAR,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
 1    PRESENT:

 2         FOLGER LEVIN & KAHN,

 3         (275 Battery Street, 23rd Floor,

 4         San Francisco, California 94111,

 5         415-986-2800), by:

 6         MR. MICHAEL F. KELLEHER,

 7              appeared on behalf of Plaintiff;

 8

 9         PROSKAUER ROSE LLP,

10         (1581 Broadway Street,

11         New York, New York 10036-8299,

12         212-969-3671), by:

13         MR. ALEXANDER KAPLAN,

14              appeared on behalf of the Defendants.

15

16

17         VIDEOTAPED BY:  SCOTT JOHNSON,

18                         Esquire Deposition Services.

19         REPORTED BY:   LISA SCHWAM, CRR, RPR.

20                        CSR License No. 84-004650

21

22

23

24
```

CINDY PILLAR,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

1      THE VIDEOGRAPHER:  Going on the video record at 2:19

2    p.m.  My name is Scott Johnson.  I'm a legal videographer

3    in association with Esquire Deposition Services.  Our

4    address is 311 West Monroe Street, Chicago, Illinois.

5    Our court reporter today is Lisa Schwam, also with

6    Esquire Deposition Services.

7              Here begins the videotaped deposition of Cindy

8    Pillar taking place at 233 South Wacker Drive, Chicago,

9    Illinois.

10             Today's date is December 18th, 2007.  This

11   deposition is being taken in the matter of CardioNet

12   versus LifeWatch, Case No. 07 CV 6623.

13             Counsel state their names for the record.

14     MR. KELLEHER:  Mike Kelleher of Folger,

15   Levin & Kahn for Plaintiff, CardioNet, Inc.

16     MR. KAPLAN:  Alexander Kaplan of Proskauer

17   Rose LLP for Defendants -- all Defendants.

18     THE VIDEOGRAPHER:  Will the court reporter

19   please swear in the witness.

20             (WHEREUPON, the witness was sworn.)

21                      CINDY PILLAR,

22   called as a witness herein, having been first duly sworn,

23   was examined and testified as follows:

24                      EXAMINATION

Page 123

1    FDA clearance for the LifeStar ACT for that category?

2         A.   It is FDA cleared.  I'm not sure what you're

3    asking.

4         Q.   Are you aware that there's a product

5    classification sometimes referred to as the DSI

6    classification, for wireless ECG arrhythmia detention and

7    alarm systems?

8         A.   Yes.

9         Q.   Okay.  So my question is -- And that's your

10   understanding that the DSI is the proper word, a

11   classification?

12        A.   Yes.

13        Q.   Is the DSI -- And the DSI classification is for

14   wireless ECG arrhythmia detention and alarm systems,

15   correct?

16        A.   Yes.

17        Q.   Is the LifeStar ACT currently cleared under the

18   DSI classification?

19        A.   I don't know.

20        Q.   And what is your understanding of the current

21   status?  Is it submitted to FDA for clearance under that

22   classification?

23        A.   Yes.

24        Q.   And why -- I take it you have not heard from

CINDY PILLAR, DECEMBER 18, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 124

1    FDA approving it for the DSI classification; is that

2    correct?

3        A.   Correct.

4        Q.   So when you say you don't know, is that because

5    FDA may have decided something today, and you just

6    haven't heard about it?

7        A.   Yes.

8        Q.   But your understanding of the current status of

9    when you left your office is that your application for

10   clearance -- FDA clearance -- and the DSI classification

11   is currently pending; is that correct?

12       A.   Yes.

13       Q.   At some point -- Well, let me ask it this way:

14   The LifeStar ACT at some point was cleared as a DSI

15   classification; is that correct?

16       A.   Yes.

17       Q.   And that clearance is no longer in effect,

18   correct?

19       A.   Correct.

20       Q.   And why is that?

21       A.   I don't know for sure.  I have heard it's FDA

22   procedural.

23       Q.   Okay.  What have you heard about it?

24       A.   I heard the FDA changed the classification

Page 125

1    without following its standard protocol.

2         Q.   And who did you hear this from?

3         A.   I don't remember.

4         Q.   Do you have an idea of who it might have been

5    that told you that?

6         A.   Michael Mizrachi.

7         Q.   And who is Michael Mizrachi?

8         A.   He is the vice president of regulatory affairs

9    at Card Guard.

10        Q.   And how do you spell Mizrachi?

11        A.   M-i-z-r-a-c-h-i.

12        Q.   And what do you recall discussing with

13   Mr. Mizrachi regarding FDA's withdrawal of the

14   classification of DSI for the LifeStar ACT?

15        A.   I don't recall anything specific except that he

16   said they didn't follow their procedure.

17        Q.   Do you have any idea of what types of

18   procedures they did not follow?

19        A.   They needed to submit a 510k to update the

20   classification.

21        Q.   Can you explain that to me.  I'm not familiar

22   with that process.

23        A.   To update the classification of a medical

24   device, you have to submit what's called a 510k where

Page 126

1   there's specific information that is presented to justify

2   the classification.

3        Q.   And they did not follow that procedure with

4   respect to changing the clearance for the LifeStar ACT;

5   is that correct?

6        A.   That's right.

7        Q.   Do you know why FDA withdrew the clearance even

8   if they didn't follow the right procedure in doing so?

9        A.   No.  I don't know why.

10       Q.   Does anybody at Card Guard or LifeWatch, have

11  they had any indication from FDA as to why clearance for

12  the DSI classification was withdrawn?

13       A.   No.

14       Q.   No one from FDA has told them that?

15       A.   Not that I'm aware of.

16       Q.   And your job is -- includes submissions for

17  approval by FDA of LifeWatch devices; is that correct?

18       A.   No.

19       Q.   And who is in charge of that at LifeWatch?

20       A.   No one is in charge of that at LifeWatch.

21  LifeWatch doesn't submit 510ks.

22       Q.   And Card Guard handles that for LifeWatch?

23       A.   Yes.  They are the owner of the device.

24       Q.   So to the extent LifeWatch is involved in FDA

CINDY PILLAR,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 130

1    STATE OF ILLINOIS )

2                     )  SS:

3    COUNTY OF COOK    )

4             I, Lisa S. Schwam, a Notary Public within and

5    for the County of Cook, State of Illinois, and a

6    Certified Shorthand Reporter, Registered Professional

7    Reporter, and Certified Realtime Reporter, do hereby

8    certify:

9         That previous to the commencement of the examination

10   of the witness, the witness was duly sworn to testify the

11   whole truth concerning the matters herein;

12        That the foregoing deposition transcript was

13   reported stenographically by me, was thereafter reduced

14   to typewriting under my personal direction and

15   constitutes a true record of the testimony given and the

16   proceedings had;

17        That the said deposition was taken before me at the

18   time and place specified;

19        That I am not a relative or employee or attorney or

20   counsel, nor a relative or employee of such attorney or

21   counsel for any of the parties hereto, nor interested

22   directly or indirectly in the outcome of this action.

23        IN WITNESS THEREOF, I do hereunto set my hand and

24   affix my seal of office at Chicago, Illinois, this 20th

CINDY PILLAR,  DECEMBER  18,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 131

1   day of December, 2007.

2

3

4                   Notary Public, Cook

5                   County, Illinois.

6                   My commission expires July 9, 2011

7

8   CSR No. 84-004650

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Affidavit of Julie L. Fieber in Support of Plaintiff Cardionet's Motion to Dismiss Counts II, III, IV, V, And VI Of Lifewatch's Counterclaims was served via the court's CM/ECF system to the email address on file with the Court on January 28, 2008 to:

Sean Gallagher
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

Kevin J. Perra (admitted pro hac vice)
Alexander Kaplan (admitted pro hac vice)
PROSKAUER ROSE LLP
1585 Broadway Street
New York, NY 10036-8299

Attorneys for Defendants

 /s/ Michael F. Kelleher
Michael F. Kelleher

Attorney for Plaintiff CardioNet, Inc.