UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff, | Case No. 07C 6625 |
| v. | District Judge Conlon |
| LIFEWATCH CORP., HANNA KONARZEWSKA, M.D., JOEL LEHMAN and LISA AMENT, | Magistrate Judge Denlow |
| Defendants. | |
| LIFEWATCH CORP., | |
| Counter-plaintiff, | |
| v. | |
| CARDIONET, INC., | |
| Counter-defendant. | |

_____

**CARDIONET'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, II, III, V, AND VII OF CARDIONET'S SECOND AMENDED COMPLAINT**
_____

I.      INTRODUCTION

Defendants LifeWatch Corporation ("LifeWatch"), Hanna Konarzewska, Joel Lehman and Lisa Ament have moved to dismiss CardioNet's claims for violation of the Computer Fraud and Abuse Act ("CFAA"), conversion, fraud, interference with contract, and common law unfair competition.[1]  Defendants raise two arguments to support their motion.  First, as to all common law claims, Defendants assert a blanket preemption under the Illinois Trade Secret Act ("ITSA").  Second, with respect to CardioNet's CFAA claim, Defendants argue that CardioNet failed to plead the required damages.  Defendants' arguments fail for at least the following three reasons:

First, a motion to dismiss based upon a blanket preemption of common law claims under the ITSA is premature, because the parties have not had an opportunity to develop the factual record.

Second, CardioNet has pled unlawful acts distinct from trade secret misappropriation to support its common law claims.  For example, CardioNet pled that Defendants fraudulently obtained CardioNet's Mobile Cardiac Outpatient Telemetry ("MCOT") devices, made misrepresentations to CardioNet to avoid returning the devices, and used the devices to send false signals, including a simulated cardiac emergency, to the CardioNet monitoring center, all contrary to their contractual obligations.  Defendants' unlawful acts of fraud, conversion, and breach of contract are part of a scheme to unfairly compete against CardioNet, and are actionable even without Defendants' misappropriation of CardioNet's trade secrets.

Third, Defendants misread the CFAA's damages requirement.

Therefore, as detailed below, CardioNet respectfully asks that the Court deny

---

[1] Defendants do not challenge CardioNet's claims for misappropriation of trade secrets and breach of contract.

Defendants' motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of LifeWatch's unauthorized examination and attempted theft of two CardioNet MCOT devices. In September 2007, Defendants used fraudulent prescriptions written by defendant Konarzewka for defendants Lehman and Ament to unlawfully obtain two CardioNet MCOT devices. Defendants subsequently activated both devices. As a condition of activation, Defendants agreed to the following contractual restrictions on their use of the devices:

> Patient shall not, in whole or in part, sublicense, provide access to, tamper with, modify, distribute, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, transfer, disassemble, or reverse engineer or create a derivative work of the System or Service.

Second Amended Complaint ¶¶ 13-17.[2]

Through the expedited discovery allowed by this Court, CardioNet has since learned that one of the devices, prescribed for defendant Ament, was activated, taken to LifeWatch headquarters where it was disassembled, photographed and examined under a microscope, and then hand-carried to the headquarters of LifeWatch's parent company, Card Guard Scientific Survival, in Israel.

---

[2] Although CardioNet did not have facts establishing this at the time it filed its complaint, through discovery CardioNet learned that Lehman and Ament were acting on behalf of their employer when they activated the devices and accepted these contractual obligations. Thus LifeWatch is also bound by these contracts. *See Alms v. Baum*, 796 N.E.2d App. 3d 1123, 1127 (Ill. App. 2003); *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005); *Evanston Bank v. Conticommodity Services, Inc.*, 623 F. Supp. 1014, 1031 (D.C. Ill. 1985); *Thomas v. I.N.S.*, 35 F.3d 1332, 1339 (9th Cir. 1994). CardioNet may seek leave of the Court to add LifeWatch as a defendant on its breach of contract claim. Alternatively, LifeWatch is liable under CardioNet's claim for interference with contract, because Ament, Lehman, and Konarzewka have all admitted that in entering into the contracts with CardioNet and then disregarding those obligations, they were acting with the full knowledge and approval of their employer, LifeWatch.

Once Defendants obtained the CardioNet kit prescribed Lehman, they activated it and used it to conduct tests of CardioNet's monitoring services. As stated in CardioNet's pleadings, that testing included sending a false report of a cardiac emergency to the CardioNet monitoring center that caused the dispatch of Chicago emergency personnel to Lehman's residence.[3] SAC ¶¶ 24-25.

Testimony from LifeWatch employees also confirmed that LifeWatch never intended to return either device, even though in activating the devices, Ament and Lehman (acting for LifeWatch) contractually agreed to return them once monitoring ceased. SAC ¶¶ 26-33; Affidavit of Julie L. Fieber in Support of CardioNet's Opposition to Defendants' Motion to Dismiss Counts I, II, III, V, and VII of CardioNet's Second Amended Complaint ("Fieber Aff.") Exs. A, B [Ament Depo., 82:1 – 83:10; Lehman Depo, 45:22-46:17, 49:19 – 55:11, 100:23-102:3]. Indeed, only after CardioNet's counsel became involved did LifeWatch finally return both devices, and even then, one was not returned until the same day that CardioNet filed its complaint. In the over two months that LifeWatch had possession of the devices, Defendants actively concealed their unauthorized use of the devices, and made misrepresentations to CardioNet so that it would not to seek their return. (Fieber Aff. Ex. A [Ament Depo, 15:1-14; 16:7 – 19:2].)

On November 26, 2007, CardioNet filed suit against Defendants, and shortly thereafter moved for a preliminary injunction and expedited discovery. CardioNet filed an amended complaint on November 29, 2007, reflecting LifeWatch's return of the device prescribed Ament

---

[3] Through the limited expedited discovery allowed to date, CardioNet has learned additional facts showing that Defendants misused this CardioNet device on several other occasions to transmit, for example, false reports of cardiac symptoms to the CardioNet monitoring center, diverting CardioNet's employees from their duties and interfering with CardioNet's care for legitimate patients.

and various minor changes. On January 2, 2008, CardioNet filed a Second Amended Complaint ("SAC"), reflecting the Court's Order dated December 6, 2007 allowing substitution of the real names of defendants Lehman and Ament, who were originally named as Doe 1 and Doe 2. Defendants filed their Motion to Dismiss on January 7, 2008.

During December 2007, the Court allowed the parties to take limited expedited discovery, by Order dated November 30, 2007. To date, the parties have engaged in no other discovery. They are currently meeting and conferring pursuant to their obligations under FRCP 26(f), and CardioNet anticipates that it will work with LifeWatch to prepare a discovery plan to be submitted to the Court.

### III.    ARGUMENT

When considering an FRCP 12(b)(6) motion to dismiss, a court evaluates the legal sufficiency of a plaintiff's complaint, not the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). It must accept all well-pleaded allegations as true, and may not dismiss a case for failure to state a claim unless the plaintiff cannot prove any facts sufficient to support his claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All inferences are to be drawn in a light most favorable to the plaintiff. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). To survive a motion to dismiss, a plaintiff need only provide a "short and plain statement" under Rule 8(a)(2); the particulars of the claim are not required. *Midwest Gas Servs. v. Ind. Gas. Co.*, 317 F.3d 703, 710 (7th Cir. 2002).

### A.    CardioNet's Common Law Claims Are Not Preempted by the ITSA.

In arguing that CardioNet's common law claims are preempted under the ITSA,[4]

---

[4] In pertinent part, the ITSA, (765 ILCS 1065/8), provides:
(Continued…)

LifeWatch fails to distinguish contrary authority holding it premature to dismiss claims as preempted on a motion to dismiss. LifeWatch also fails to acknowledge that CardioNet has pled facts distinct from trade secret misappropriation to support its common law claims for fraud, interference with contract, conversion, and common law unfair competition.

**1.     Claims Should Not Be Dismissed As Preempted on a Motion to Dismiss Before the Parties Have Had an Opportunity to Develop the Factual Record.**

Defendants cite *Thomas & Betts Corp. v. Panduit*, 108 F. Supp. 2d 968 (N.D. Ill. 2000) as authority for their argument that CardioNet's common law claims should be dismissed at the pleading stage as preempted by the ITSA. However, the *Thomas & Betts* court found common law claims preempted under the ITSA on a motion for partial summary judgment after years of discovery. The *Thomas & Betts* court distinguished prior authority finding a common law claim not preempted by the ITSA, because in those earlier cases the argument was raised on a motion to dismiss – the same situation presented here by LifeWatch's motion. Specifically, the court in *Thomas & Betts* reasoned that:

> the arguments in *Airtek* and *EarthDweller* were presented at the 'preliminary state' of a motion to dismiss [citation] and not, as here, on a motion for summary judgment presented seven years into the litigation. T & B has had the opportunity to develop its factual allegations but has failed to set its breach of fiduciary duty claim apart from its misappropriation of trade secret allegations.

*Thomas & Betts*, 108 F. Supp. at 972 n.1 (citing *Combined Metals of Chicago Ltd. v. Airtek, Inc.*, 985 F. Supp. 827, 830 (N.D. Ill) (denying motion to dismiss claims based on preemption as

---

(a) except as provided in subsection (b) this act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.

(b) This Act does not affect:

(1) contractual remedies . . . .

(2) other civil remedies that are not based upon misappropriation of a trade secret; . . . .

premature) and *EarthDweller, Ltd. v. Rothnagel*, 1993 WL 487546, *7 (N.D. Ill. 1993) (because the ITSA does not preempt claims that allege more than misuse or misappropriation of trade secrets, at the preliminary stage of a motion to dismiss, breach of fiduciary duty and fraud claims were sufficiently pled to withstand preemption challenge)).  Thus, *Thomas & Betts* supports denying Defendants' motion to dismiss CardioNet's common law claims as preempted.

More recent authority is consistent, and supports denying dismissal of CardioNet's common law claims.  For example, in *FAIP North America, Inc. v. Sistema S.R.L.*, 2005 WL 3436398, *6 (N.D. Ill. 2005), the court distinguished *Thomas & Betts*, reasoning that the preemption argument in *Thomas & Betts* was predicated on the notion that the claims could not be made without reliance on the misappropriation of plaintiff's trade secrets.  Moreover, *Thomas & Betts* was decided on summary judgment, but *FAIP* involved a motion to dismiss, where fact discovery was still open; at this point, plaintiff did not have to directly identify the nature of the alleged misappropriated confidential information.  *Id.*  Thus, the court refused to dismiss claims for unfair competition, tortious interference, and breach of fiduciary duty.  *Id.*

Similarly, in *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 489 F. Supp. 2d 865 (N.D. Ind. 2007), the district court denied in part a motion for judgment on the pleadings that was based on a similar preemption argument under the Indiana Trade Secret Act (which has preemption language similar to the Illinois act).  The court reasoned that there the plaintiff pled more than misappropriation of trade secrets because, like CardioNet, it pled that defendants were "exercising unauthorized control over [plaintiff's] property, including but not limited to its copyright, trade secret, proprietary and confidential information." 489 F. Supp. 2d at 872-5.  *See also Hecny Trans., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005) (assertion of trade secret in a claim for misappropriation of a customer list does not preempt claims for theft, fraud, and

breach of duty of loyalty, which would be sound even if the list was not a trade secret).

Defendants attempt to distinguish both *FAIP* and *Patriot Homes* by arguing that both involved contract claims. They ignore that here there is also a contract claim, based on the Assignment of Benefits and Services Agreement that the Defendants agreed to as a condition of activating the two CardioNet devices. That agreement expressly provides that: "**Patient shall not, in whole or in part, sublicense, provide access to, tamper with, modify, distribute**, use in a service bureau or time-sharing capacity, export in violation of applicable laws and regulations, rent, loan, **transfer**, **disassemble, or reverse engineer or create a derivative work of the System or Service**." (SAC ¶ 16.) As recognized in *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 586-87 (7th Cir. 2002), an interference with contract claim is not preempted under trade secret law, because the claim is not based on misappropriation – it is based on interference with a contract. *Id.* Though *IDX* was decided under Wisconsin trade secret law, the same reasoning holds under the ITSA. Similarly, as discussed further below, here CardioNet has plead common law claims, including interference with contract, that are based on acts other than Defendants' misappropriation of trade secrets and therefore are not preempted by the ITSA.

Moreover, while Defendants are correct that both *FAIP* and *Patriot Homes* had different outcomes than *J.D. Chapman Group, Ltd. v. Chapman*, 1996 WL 89075 (N.D. Ill.), Defendants overstate those differences. In *J.D. Chapman*, the court dismissed the plaintiff's claim for breach of confidential relationship because it was based on "commercially valuable information" or "trade secrets." *Id.* at *2. However, the court dismissed plaintiff's claim for breach of fiduciary duty <u>only</u> to the extent that it was based on misappropriation of trade secrets, denying dismissal to the extent the claim rested on other conduct. *Id.* at *3. Notably, the defendant apparently had

not sought dismissal of the plaintiff's unfair competition claim under a preemption argument.

Defendants also cite *C.H. Robinson Worldwide, Inc. v. Command Transportation*, 2005 WL 3077998 (N.D. Ill. 2005), but there plaintiff unequivocally stated that the proprietary business, software, and customer information underlying its unfair competition claim constituted trade secrets. *Id.* at *7. Moreover, on the plaintiff's conversion claim, the court did not find preemption, but rather dismissed that claim with leave to amend so that plaintiff could make clear in its pleadings whether the "information" and "software" underlying that claim contained more than trade secrets. *Id.* Unlike the plaintiff in *C.H. Robinson*, here CardioNet has pled that Defendants' unlawful acts involved both confidential information <u>and</u> trade secrets, as well as other wrongful conduct, as discussed below.

Finally, Defendants cite *Systems America, Inc. v. Providential Bancorp, Ltd.*, 2006 WL 463314 (N.D. Ill. 2006). There, a conversion claim was found preempted where it was based solely on the alleged theft of an intangible (software) – not a tangible object like CardioNet's MCOT devices. *Id.* at *5-*7.

In short, Defendants' authorities do not support their arguments, but instead support CardioNet's position that it is premature to rule now on whether CardioNet's common law claims are preempted by the ITSA. In its discovery plan, CardioNet will identify depositions and other relevant discovery for pursuit of these common law claims, to establish Defendants' actions in converting CardioNet's devices and any improper use of non-trade secret information they obtained, and to establish facts to allow CardioNet to recover its actual and exemplary damages for these non-trade secret claims.

**2.     CardioNet Has Pled Unlawful Conduct Distinct from Trade Secret Misuse and Misappropriation in support of Its Common Law Claims.**

Another basis to reject Defendants' preemption argument is that CardioNet has pled

unlawful conduct other than the misuse and misappropriation of trade secrets. For example, CardioNet pled that Defendants' tampered with its devices, in violation of their contractual obligations, by transmitting false signals of cardiac emergency to the CardioNet monitoring center. SAC ¶¶ 21-25, 36, 39, 40. Further, after unlawfully using fraudulent prescriptions to obtain the two CardioNet MCOT devices, Defendants kept those devices for over two months despite repeated demands for their return, and only returned them after CardioNet's counsel intervened, despite having a contractual obligation to return the devices immediately once monitoring ceased. SAC ¶¶ 21-33, 49, 52-57, 64-67. (Through discovery, CardioNet has confirmed that Defendants never intended to return the devices.) Defendants' fraud, attempted theft, tampering with the CardioNet devices, and disregard of their contractual obligations are distinct from claims under the ITSA — these are common law claims for which CardioNet should be allowed to prove its damages at trial. *See, e.g., IDX Systems*, at 586-87 (interference with contract claim not preempted); *Stopka v. Alliance of American Ins.*, 1996 WL 494269 (N.D. Ill. 1996) (defendant could not undo conversion by returning property); *Standard Car Truck Co. v. Consolequip, Inc.*, 2001 WL 1665221, *2 (N.D. Ill. 2001) (rejecting argument that a conversion claim was moot because the articles at issue were returned).

For all these reasons, the Court should deny Defendants' motion to dismiss CardioNet's claims for fraud, intentional interference with contract, conversion and common law unfair competition.

### B. CardioNet Has Satisfied Requirements for Pleading Damages under the Computer Fraud and Abuse Act.

Defendants misread the Computer Fraud and Abuse Act ("CFAA") in arguing that CardioNet's failed to plead the requisite damages element. In fact, CardioNet pled damages and losses of at least $5,000 based on the investigative and remedial measures necessitated by

LifeWatch's scheme.  (SAC ¶¶ 38-39.)  This is enough under the CFAA.  *See, e.g.,* 18 USC § 1030(g); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001) (fees to determine whether website was compromised are compensable loss under the CFAA); *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Information Sys., Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) (damage assessment and remedial measures compensable losses under the CFAA).

## IV.    CONCLUSION

For the reasons detailed above, the Court should deny Defendants' Motion to Dismiss in its entirety.  However, if the Court should find that any of CardioNet's claims fail to meet the liberal notice pleading standards of Rule 8(a), CardioNet respectfully requests that the Court treat Defendants' motion as an FRCP 12(e) Motion for a More Definite Statement, and allow CardioNet an opportunity to submit an amended complaint.  Amendment would allow CardioNet to incorporate additional facts learned to date in discovery, which further establish unlawful conduct by Defendants distinct from their misappropriation of CardioNet's trade secrets.

Dated: February 5, 2008               Respectfully submitted,


                                      CARDIONET, INC.


                                      By:_____\s Julie L. Fieber_
                                         Michael F. Kelleher (admitted pro hac vice)
                                         Julie L. Fieber (admitted pro hac vice)
                                         Amy L. Kashiwabara (admitted pro hac vice)
                                         FOLGER LEVIN & KAHN LLP
                                         Embarcadero Center West
                                         275 Battery Street, 23rd Floor
                                         San Francisco, CA  94111
                                         Telephone: (415) 986-2800
                                         Facsimile: (415) 986-2827

                                         Thomas L. Duston
                                         Gregory J. Chinlund
                                         Julianne M. Hartzell
                                         MARSHALL, GERSTEIN & BORUN LLP
                                         233 South Wacker Drive, 6300 Sears Tower
                                         Chicago, Illinois 60606-6357
                                         Telephone: (312) 474-6300
                                         Facsimile: (312) 474-0448


                                      Attorneys for Plaintiff and Counter-defendant
                                      CARDIONET, INC.

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing CARDIONET'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, II, III, V, AND VII OF CARDIONET'S SECOND AMENDED COMPLAINT was served via the court's CM/ECF system to the email address on file with the Court on February 5, 2008 to:

Sean Gallagher
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

Kevin J. Perra (admitted pro hac vice)
Alexander Kaplan (admitted pro hac vice)
PROSKAUER ROSE LLP
1585 Broadway Street
New York, NY 10036-8299

Attorneys for Defendants

          /s/ Julie L. Fieber
          Julie L. Fieber

          Attorney for Plaintiff CardioNet, Inc.

19084\2010\586782.1