UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff | Case No. 07C 6625 |
| v. | District Judge Suzanne B. Conlon |
| LIFEWATCH CORP., HANNA KONARZEWSKA, M.D., JOEL LEHMAN and LISA AMENT. | Magistrate Judge Morton Denlow |
| Defendants. | |
| LIFEWATCH CORP., | |
| Counter-plaintiff | |
| v. | |
| CARDIONET, INC., | |
| Counter-defendant. | |

---

**AFFIDAVIT OF JULIE L. FIEBER IN SUPPORT OF PLAINTIFF CARDIONET'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, II, III, V, AND VII OF CARDIONET'S SECOND AMENDED COMPLAINT**

---

I, Julie L. Fieber, hereby declare as follows:

1.      I am a partner at Folger Levin & Kahn LLP, attorneys for CardioNet, Inc. ("CardioNet"), plaintiff in the above-captioned action.  I have personal knowledge of the following matters and could and would testify competently with respect to them.

2.      Attached as **Exhibit A** are a true and correct copies of excerpts from the deposition transcript of Lisa Ament.

3.      Attached as **Exhibit B** are a true and correct copies of excerpts from the deposition transcript of Joel Lehman.

I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct.

Executed this 5th day of February, 2008, in San Francisco, California.


____\s Julie L. Fieber_____
Julie L. Fieber

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing AFFIDAVIT OF JULIE L. FIEBER

IN SUPPORT OF PLAINTIFF CARDIONET'S OPPOSITION TO DEFENDANTS'

MOTION TO DISMISS COUNTS I, II, III, V, AND VII OF CARDIONET'S SECOND

AMENDED COMPLAINT was served via the court's CM/ECF system to the email

address on file with the Court on February 5, 2008 to:

Sean Gallagher
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

Kevin J. Perra (admitted pro hac vice)
Alexander Kaplan (admitted pro hac vice)
PROSKAUER ROSE LLP
1585 Broadway Street
New York, NY 10036-8299
Attorneys for Defendants

 /s/ Julie L. Fieber
Julie L. Fieber
Attorney for Plaintiff CardioNet, Inc.

19084\2010\586535.1

# EXHIBIT A

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CARDIONET, INC., | ) | CASE NO. |
| Plaintiff, | ) | 07 CV 6623 |
| vs. | ) | DISTRICT JUDGE |
| LIFEWATCH CORP., HANNA KONARZEWKA, | ) | CONLON |
| M.D., DOE 1 and DOES 2, | ) | MAG. JUDGE |
| Defendants. | ) | DENLOW |

CONTAINS CONFIDENTIAL MATERIAL

The videotaped 30(b)(6) deposition of LIFEWATCH
CORPORATION, by LISA AMENT, called as a witness herein
for examination, taken pursuant to the Federal Rules of
Civil Procedure of the United States District Courts
pertaining to the taking of depositions, taken before
LISA SCHWAM, CSR No. 84-004650, a Notary Public within
and for the County of Cook, State of Illinois, and a
Certified Shorthand Reporter of said state, at 6300 Sears
Tower, 233 South Wacker Drive, Chicago, Illinois,
commencing, on the 19th day of December, A.D. 2007, at
2:30 p.m.

Page 2

```
 1   PRESENT:

 2        FOLGER LEVIN & KAHN,

 3        (275 Battery Street, 23rd Floor,

 4        San Francisco, California 94111,

 5        415-986-2800), by:

 6        MS. JULIE L. FIEBER,

 7            appeared on behalf of Plaintiff;

 8

 9        PROSKAUER ROSE LLP,

10        (1581 Broadway Street,

11        New York, New York 10036-8299,

12        212-969-3671), by:

13        MR. KEVIN J. PERRA,

14            appeared on behalf of the Defendants.

15

16

17        VIDEOTAPED BY:  SCOTT JOHNSON,

18                        Esquire Deposition Services.

19        REPORTED BY:    LISA SCHWAM, CRR, RPR,

20                        CSR License No. 84-004650.

21

22

23

24
```

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

1      THE VIDEOGRAPHER:  We're going on the video

2    record at 2:30 p.m.  My name is Scott Johnson,

3    and I'm a legal videographer in association with

4    Esquire Deposition Services.  Our address is 311

5    West Monroe Street, Chicago, Illinois.  The court

6    reporter today is Lisa Schwam, also of Esquire

7    Deposition Services.

8           Here begins the videotaped deposition of Lisa

9    Ament, taking place at 233 South Wacker Drive, Chicago,

14:30:56 10    Illinois.  Today's date is December 19th, 2007.

11           This deposition is being taken in the matter of

12    CardioNet versus LifeWatch, Case No. 07 CV 6625.

13           Counsel please state your appearances.

14      MS. FIEBER:  Julie Fieber for Plaintiff,

15    CardioNet, Inc.

16      MR. PERRA:  Kevin Perra from Proskauer Rose

17    on behalf of the Defendants.

18      THE VIDEOGRAPHER:  Would the court reporter

19    please swear in the witness.

20                  LISA AMENT,

21    called as a witness herein, having been first duly sworn,

22    was examined and testified as follow:

14:31:29 23      MS. FIEBER:  So as an initial matter, pursuant to

24    the protective order we've all been negotiating, I just

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 15

1      Q.   I'm going to give you a document previously

2   marked as Exhibit 67.

3      A.   Do I still need this one?

4      Q.   You can set it aside.

5      MR. PERRA:  I'll make a stack over here in

14:42:58  6   case she wants to refer back to it.

7      MS. FIEBER:  And I'll represent that this is a true

8   and correct transcript of the wave file produced as

9   CN00002, and that this conversation took place on

10   November 12th, 2007.

11   BY MS. FIEBER:

12      Q.   Ms. Ament, would you look through this

13   transcript and see if you recollect this conversation.

14      A.   Yes.

14:43:29  15   MR. PERRA:  Take your time to look through

16   it to make sure you familiarize yourself with it.

17          While she is looking at that, I'd just

18   like to reserve an objection as to these.

19   There's some issues of law -- and I don't have

20   the conclusions right now -- about these

21   particular conversations and as to whether there

22   was permission to tape these conversations in a

14:43:59  23   state that I understand is a "both parties

24   consent" state.

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 16

1          So I'd like to lodge that and reserve that

2    objection.  In allowing her to testify about that today,

3    I don't want you to argue that somehow we've waived the

4    objection to the admissibility or the legality of these

5    tapes.

6    BY MS. FIEBER:

7          Q.   So Ms. Ament, on the -- Turning to the second

8    page down towards the bottom.  You're speaking with

14:44:29    9    someone named Nicole, correct?

10         A.   Yes.

11         Q.   And who is Nicole?

12         A.   She is a device retrieval supervisor at

13    CardioNet.

14         Q.   Is that what she told you?

15         A.   Yes.  In this conversation?

16         Q.   In any conversation.

17         A.   Yes.

18         Q.   And she was trying to help you out, correct?

19         MR. PERRA:  Objection to form.

20    BY THE WITNESS:

21         A.   Yes.

22    BY MS. FIEBER:

23         Q.   In fact, she had been trying to help you out a

24    fair amount, hadn't she?

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 17

1          A.    Yes.

14:44:59  2          Q.    And so towards the bottom of page 2, Nicole

3     says, "Yeah, I got your voicemail, and that is why I told

4     you before to make sure you let me know if anybody had

5     called.  We have so many lists and so many different

6     systems that I was afraid something like that would

7     happen.  You would get some random phone call at least

8     one more time.  You have been officially moved out of our

9     system to the loss monitor area, but they called you in

10     error."

11          "Lisa:  Is there something, so I can just give

14:45:28  12     it to my lawyer, because now I have to tell him about

13     this.  And if it is going to go to a collection, can I

14     just get something in writing for that so that I can know

15     that this is all done and over with?  Please.  I'm sorry

16     to ask you."

17          Turning to the top of page 3.  "Nicole:  What

18     do you want?  Something that says that you're not going

19     to collections?"

20          "Lisa:  Yes.  And that it has been put to" --

21          "Nicole:  That we know that you lost it?"

22          "Lisa, yeah."

14:45:58  23          "Nicole:  Okay.  Yeah.  Okay.  I can do that."

24          You remember this conversation more or less?

LISA AMENT, DECEMBER 19, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 18

1       A.   Yes.

2       MR. PERRA:  Objection to form.

3    BY MS. FIEBER:

4       Q.   And you were trying to get Nicole to give you

5    something in this conversation, right?

6       A.   Yes.

7       Q.   You had told her a story about having lost the

8    device.  That was a lie, correct?

9       A.   Yes.

10      Q.   And you told her that story to try and get her

11   to rely on that story and give you a letter saying that

14:46:30  12   they weren't going to try and collect on the device,

13   correct?

14      A.   Yes.

15      Q.   So you told her a big lie to try and get her to

16   let you off from having to pay for this device or even

17   having to return this device, correct?

18      MR. PERRA:  Objection to the form as to the

19   size of the lie.

20      THE WITNESS:  I'm sorry.  Was there more

21   than one question in that?

14:46:56  22   MS. FIEBER:  Wait.  Here we go.  Do you want

23   to read back that question, please.

24           (Record read as requested.)

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 19

1    BY THE WITNESS:

2        A.   Yes.

3    BY MS. FIEBER:

4        Q.   And is it correct to say then that as of the

5    date of this conversation, you had decided not to return

6    the device at all, correct?

14:47:31  7        A.   No.

8        Q.   You still intended to return the device to

9    CardioNet at some point?

10        A.   Yes.

11        Q.   But you were asking her to give you a letter so

12    that you wouldn't have to pay for the device?

13        A.   Yes.

14        Q.   So in your mind, when you made this phone call

15    to Nicole and told her a story that was a lie so that she

16    wouldn't come after you for the device, in your mind, you

14:47:59  17    still intended to return the device?

18        A.   Yes.

19        Q.   In your mind, you weren't stealing the device?

20        MR. PERRA:  Objection to form.

21    BY THE WITNESS:

22        A.   No.

23    BY MS. FIEBER:

14:48:33  24        Q.   And I'm going to give you a document previously

LISA AMENT,  DECEMBER 19, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 82

1          My first question is, as part of the activation

2    process, do you recall stepping through a series of

3    screens on the monitor for the CardioNet device where you

4    had to answer questions by hitting yes or no on the

5    screens?

6          A.    Correct.

16:37:57   7          Q.    And did you hit yes to all the questions on the

8    screens?

9          A.    If you hit yes, and it took you to the next

10    screen, then yes.  If you hit no, and it wouldn't take

11    you to the next screen.  Whatever you had to do to get to

12    the next screen.

13          Q.    That's what you did?

14          A.    Correct.

15          Q.    So if you had to -- The first screen -- Well,

16:38:28  16    okay.  The screen number two here -- I'm sure your

17    counsel will correct me if I read this wrong, so you

18    don't have to strain your eyes.

19          It says, "Two - press yes or no."  And below

20    it, it says, "I agree to the terms and conditions in the

21    assignment of benefits and service agreement."  And below

22    that are two boxes.  On the left a box that says yes, and

23    a box that says no.

24          Do you remember if you hit yes or no on that

LISA AMENT,  DECEMBER  19,  2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 83

```
            1    screen?
16:39:01    2        A.  I remember.  I hit yes.
            3        Q.  And the fourth box on here says, "Four - press
            4    yes or no."  And below it, it says, "I will return the
            5    CardioNet monitoring equipment immediately upon
            6    completion of monitoring."  Below that are two boxes.  On
            7    the left, yes.  On the right, no.
16:39:28    8            Do you remember, did you hit yes or no on that
            9    screen?
           10        A.  I hit yes.
           11        Q.  So after you went through the activation
           12    process, what happened next with the CardioNet device
           13    that you had?
           14        A.  I wore it for the remainder of the day until I
           15    got home.
           16        Q.  And then what happened?
           17        A.  I took it off.
16:39:59   18        Q.  And then what happened to the device?
           19        A.  It sat in my home.
           20        Q.  Now, on the page labeled -- back to -- I'm
16:40:28   21    sorry.  Going back to Deposition Exhibit 95.
           22        A.  What page?
           23        Q.  On the page Bates labeled CN000336, fifth row
           24    up from the bottom, dated 9-19-2007 at 1:35:33 p.m.  It's
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


CARDIONET, INC.,

     Plaintiff,

    vs.           No.  07 C 6625

LIFEWATCH CORP., HANNA KONRZEWKA
UNITED FIXTURES COMPANY,M.D.

    et al.,

     Defendants.

I hereby certify that I have read the

foregoing transcript of my deposition given at the

time and place aforesaid, consisting of Pages 1

to 111 inclusive, and I do again subscribe and make

oath that the same is a true, correct and complete

transcript of my deposition so given as aforesaid,

and includes changes, if any, so made by me.

LISA AMENT

Subscribed and Sworn to

Before me this 15th day

of January        , 2008

     Notary Public

OFFICIAL SEAL
PATRICIA J WALKER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/31/09


Esquire Deposition Services, LLC
Chicago IL 312-782-8087

LISA AMENT, DECEMBER 19, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1  STATE OF ILLINOIS )

 2                    )  SS:

 3  COUNTY OF COOK    )

 4           I, Lisa S. Schwam, a Notary Public within and

 5  for the County of Cook, State of Illinois, and a

 6  Certified Shorthand Reporter, Registered Professional

 7  Reporter, and Certified Realtime Reporter, do hereby

 8  certify:

 9       That previous to the commencement of the examination

10  of the witness, the witness was duly sworn to testify the

11  whole truth concerning the matters herein;

12       That the foregoing deposition transcript was

13  reported stenographically by me, was thereafter reduced

14  to typewriting under my personal direction and

15  constitutes a true record of the testimony given and the

16  proceedings had;

17       That the said deposition was taken before me at the

18  time and place specified;

19       That I am not a relative or employee or attorney or

20  counsel, nor a relative or employee of such attorney or

21  counsel for any of the parties hereto, nor interested

22  directly or indirectly in the outcome of this action.

23       IN WITNESS THEREOF, I do hereunto set my hand and

24  affix my seal of office at Chicago, Illinois, this 21st
```

LISA AMENT, DECEMBER 19, 2007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1   day of December, 2007.

2                     Lisa Schwam

3

4                     Notary Public, Cook

5                     County, Illinois.

6                     My commission expires July 9, 2011

7

8   CSR No. 84-004650

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

# EXHIBIT B

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CARDIONET, INC., | ) | |
| Plaintiff, | ) | Case No. |
| -vs- | ) | 07 C 6625 |
| LIFEWATCH CORP., HANNA | ) | District Judge |
| KONARZEWKA, M.D., DOE 1 and | ) | Conlon |
| DOE 2, | ) | Mag. Judge |
| Defendants. | ) | Denlow |

CONTAINS CONFIDENTIAL MATERIAL

The videotaped deposition of JOEL LEHMAN,
called as a witness herein for examination, taken
pursuant to the Federal Rules of Civil Procedure of
the United States District Courts pertaining to the
taking of depositions, taken before KAREN PILEGGI, a
Notary Public within and for the County of DuPage,
State of Illinois, and a Certified Shorthand
Reporter of said state, at Marshall, Gerstein &
Borun, 6300 Sears Tower, 233 South Wacker Drive,
Chicago, Illinois, on the 20th day of December, A.D.
2007, at 10:44 a.m.

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 2

 1   PRESENT:

 2        FOLGER LEVIN & KAHN LLP,

 3        (Embarcadero Center West,

 4        275 Battery Street, 23rd Floor,

 5        San Francisco, California  94111,

 6        415-986-2800), by:

 7        MS. JULIE L. FIEBER,

 8        jfieber@flk.com,

 9            appeared on behalf of the Plaintiff;

10

11        PROSKAUER ROSE LLP,

12        1585 Broadway,

13        New York, New York  10036-8299,

14        212-969-3454), by:

15        MR. ALEXANDER KAPLAN,

16        akaplan@proskauer.com,

17            appeared on behalf of the Defendants.

18

19   VIDEOTAPED BY:  SCOTT JOHNSON,

20                  Esquire Deposition Services.

21

22   REPORTED BY:    KAREN PILEGGI, CRR, RMR,

23                  CSR License No. 84-3404.

24

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 3

1        THE VIDEOGRAPHER:  We're going on the video

2   record at 10:44 a.m.  My name is Scott Johnson and

3   I'm a legal videographer in association with Esquire

4   Deposition Services.  Our address is 311 West Monroe

5   Street, Chicago, Illinois.

6            The court reporter today is Karen Pileggi

7   also of Esquire Deposition Services.  Here begins

8   the videotaped deposition of Joel Lehman taking

9   place at 233 South Wacker Drive, Chicago, Illinois.

10           Today's date is December 20th, 2007.

11   This deposition is being taken in the matter of

12   CardioNet versus LifeWatch, case number 07 CV 6625.

13           Will counsel please state their names for

14   the record.

15      MS. FIEBER:  Julie Fieber for plaintiff

16   CardioNet.

17      MR. KAPLAN:  Alexander Kaplan, Proskauer Rose,

18   LLP for the defendants.

19      THE VIDEOGRAPHER:  Will the court reporter

20   please swear in the witness.

21            (WHEREUPON, the witness was

22            duly sworn.)

23      THE WITNESS:  Yes.

24      MS. FIEBER:  An initial matter, some

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 45

1       Q.     You took the entire kit with you to work,

2    all the parts, components?

3       A.     Actually, I brought it in my car and

4    called from my car.

5       Q.     Did you do the activation in your car?

6       A.     Yeah, I did.

7       Q.     I show you a document previously marked

8    as Deposition Exhibit 96 and it may be in the stack

9    in front of you.  There it is.

10            Can you tell me how you went about

11   activating the device?

12      A.     Sure.  Put the electrodes on in the

13   proper locations.  I'm talking to somebody on the

14   phone right now, CardioNet.

15            They instructed me on the electrode

16   placement and then turn on the monitor and then you

17   see these beautiful series of pop-ups display and

18   they give you a little spiel.

19            They elaborate on what's on the screen

20   here that we see.  Tell you the does and don'ts

21   about the device.

22      Q.     Do you have to step through each of these

23   screens as you go through the activation process?

24      A.     Yes, you do.

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 46

1        Q.    So, for example, the screen here, screen

2    number two, it says, "2 - Press Yes or No.  I agree

3    to the Terms & Conditions in the Assignment of

4    Benefits & Service Agreement."

5              Below that there's a box on the left that

6    says "yes" and a box on the right that says "no."

7              Did you hit "yes" for that screen?

8        A.    I believe so.  I hit "no" for a few of

9    them.

10       Q.    What happened when you would hit "no"?

11       A.    It would just move on to the next screen.

12       Q.    So you're saying you hit "no" to some of

13   these screens and the device continued?

14       A.    Yes.

15       Q.    Do you remember which screens you hit

16   "no" for?

17       A.    I do not, no.

18       Q.    Do you remember the screen number four,

19   "Press Yes or No.  I will return the CardioNet

20   Monitoring Equipment immediately upon completion of

21   monitoring."

22              And below that a box on the left "yes"

23   and a box on the right "no."

24              Do you remember what you did at that

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 49

1   No, they didn't.  They had different materials.

2        Q.    What was different?

3        A.    One had two base stations.  One had one

4   base station.

5        Q.    Any other differences?

6        A.    One had a DVD -- wait.  I don't think

7   either had a DVD.

8             The patient instruction manual that I

9   received was -- it looked like a copy version of the

10  original.  The original of Lisa's was nice and

11  colored and glossy.  Mine was small and black and

12  white.

13       Q.    Any other differences?

14       A.    Not really.  I guess the boxes.  Her box

15  was in much rougher shape than mine.  That's the

16  only thing that I noticed.

17       Q.    Anything else?

18       A.    No.

19       Q.    Did you understand what your duties were

20  once monitoring was over with respect to the

21  CardioNet device?

22       MR. KAPLAN:  Objection to form.

23  BY THE WITNESS:

24       A.    What my duties were?  To return the

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 50

1   device.

2   BY MS. FIEBER:

3       Q.    Did you understand that you were supposed

4   to return it as soon as monitoring was over?

5       A.    No.

6       Q.    Did you understand it was supposed to be

7   returned within a week of monitoring being over?

8       A.    Yeah.  I think I did that.

9       Q.    How long did you think your monitoring

10  period would last for?

11      A.    I thought 21 days.

12      Q.    When you got the device and you're going

13  through the activation procedure, did you intend to

14  return the device once monitoring was over to

15  CardioNet?

16      A.    Yes.

17      Q.    I'd like to direct your attention to a

18  document previously marked as Deposition Exhibit 15.

19          Do you remember this document from the

20  CardioNet kit?

21      A.    I do not.

22      Q.    Have you seen it since?

23      A.    I can't answer that.

24      Q.    Did you understand there were any

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 51

1    limitations on how you used the CardioNet device

2    while it was in your possession?

3        A.    Can you rephrase that.

4        Q.    Sure.

5              Did you think that you could take it

6    apart?

7        A.    No.

8        Q.    Did you think you had the right to give

9    it to someone else?

10       A.    I don't think you're necessarily supposed

11   to.  I did.

12       Q.    Do you think you had the right to run it

13   with a cardiac simulator?

14       A.    No.  There's no harm done doing that.

15   It's just testing the device.

16       Q.    Do you think you had the right to ship it

17   to Israel?

18       A.    Once again, if you work for Coca-Cola and

19   you drink a Pepsi, you're going to go to court?  No.

20             I don't think there's anything wrong with

21   sending it to Israel.

22       Q.    Do you think you had the right to send it

23   to Israel to be taken apart by engineers?

24       A.    I don't know that it ever did go to

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 52

1    Israel and got taken apart by engineers.

2        Q.    Did you think you had the right to do

3    that, though?

4        A.    Yeah.

5        Q.    So you think you had the right as a

6    patient receiving a CardioNet kit to give it to

7    someone else to take it apart?

8        A.    As a patient, not really.  Because I

9    worked for LifeWatch, yes.

10        Q.    You think anyone has the right to take a

11    LifeWatch product apart, correct?

12        A.    As a patient, no.  As a patient, no.  But

13    if you work for LifeWatch and you wanted to look at

14    what the competitors are doing, then I think it's

15    okay.

16        Q.    You obtained the -- you tried to obtain

17    the CardioNet kit as a non-patient, correct?

18        A.    That's correct.

19        Q.    You were not able to do that, correct?

20        A.    That's correct.

21        Q.    So you obtained the CardioNet kit as a

22    patient, correct?

23        A.    That's correct.

24        Q.    So do you think you were subject to the

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 53

1  same limits on the use of the device as any other

2  CardioNet patient?

3       A.    Yeah.

4       Q.    You didn't abide by those limits,

5  correct?

6       A.    That's correct.

7       Q.    In fact, you used the false prescription

8  to obtain the device in the first instance, correct?

9       MR. KAPLAN:  Objection to form.

10  BY THE WITNESS:

11       A.    Yeah, that's correct.

12  BY MS. FIEBER:

13       Q.    It was basically a lie to obtain the

14  device, correct?

15       MR. KAPLAN:  Objection to form.

16  BY THE WITNESS:

17       A.    Basically.  I'd say it was a lie.  Not

18  even basically.

19  BY MS. FIEBER:

20       Q.    You understand testifying today you don't

21  get to tell any lies, right?

22       A.    That's correct.

23       Q.    You're under oath.  You're subject to

24  perjury if you lie, correct?

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 54

1        A.    That's correct.

2        Q.    Do you often tell lies as part of your

3   work at LifeWatch?

4        MR. KAPLAN:  Objection to form.

5   BY THE WITNESS:

6        A.    Do I often tell lies?  No, I do not.

7   BY MS. FIEBER:

8        Q.    Have you ever had a project before where

9   you were required to lie for LifeWatch?

10       A.    No.

11       Q.    Do you know if other people at LifeWatch

12   are often required to lie as part of their jobs?

13       A.    No, I do not know.

14       Q.    Have you ever had jobs before where you

15   had to tell lies for your employer?

16       A.    Tell lies for my employer?  No.

17       Q.    That's a pretty unusual thing for an

18   employer to come and ask you to lie for them, isn't

19   it?

20       MR. KAPLAN:  Objection to form.

21   BY THE WITNESS:

22       A.    Nobody outright asked me to lie.

23   BY MS. FIEBER:

24       Q.    Cindy Pillar approved you telling lies,

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 55

1    right?

2         A.    She didn't approve me telling lies, per

3    se, no.

4         Q.    She knew you were lying?

5         A.    Yes.

6         Q.    She did nothing to stop you?

7         A.    That's correct.

8         MR. KAPLAN:  Good time for a break?

9         MS. FIEBER:  Yeah, let's take a break right

10   now.

11        THE VIDEOGRAPHER:  Off the record at 11:41 a.m.

12              (WHEREUPON, a recess was had from 11:41

13              a.m. until 11:50 a.m.)

14        THE VIDEOGRAPHER:  Back on the record at

15   11:50 a.m.

16   BY MS. FIEBER:

17        Q.    So, Mr. Lehman, after you activated the

18   device, the CardioNet device, you had the kit in

19   your car, then what happened with it?

20        A.    What happened with the device?

21        Q.    Yeah.  What did you do with it next?

22        A.    I started wearing it.

23        Q.    Were you wearing it at the office?

24        A.    Yes.

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 100

1      Q.    Had you ever tried to before?

2      A.    Have I tried to obtain a CardioNet

3    report?

4      Q.    Yeah.  Before this?

5      A.    No, I have not.

6      Q.    Did you obtain a daily report for the

7    October 26 event where you basically faked a cardiac

8    emergency?

9      A.    Did I do what?

10     Q.    Did you get one of these daily reports

11   for the event when you faked a cardiac emergency and

12   they sent the fire department out?

13     A.    I'm not sure.

14     Q.    Do you remember ever seeing one?

15     A.    No.

16     Q.    Any reason to believe why there wouldn't

17   be a report for that since there's reports for all

18   these other days?

19     A.    No.

20     Q.    Any idea why it might not have been

21   produced in this litigation?

22     A.    No.

23     Q.    Stepping back to Deposition Exhibit 29

24   again.  If you'd go down to the second from the last

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 101

1    page of this.  It ends on October 22nd, 2007.

2              Any idea why these reports didn't

3    continue to be filled out beyond that since you say

4    that you kept wearing the device after that?

5         A.    Why they weren't continued to be filled

6    out?

7         Q.    Did you continue filling it out for the

8    entire time that you kept the device and wore it?

9         A.    No.

10        Q.    Why not?

11        A.    Laziness.

12        Q.    Did you ever fill out a report entry when

13   you sent in the false alarm to the CardioNet that

14   resulted in the fire department going out?

15        A.    No.

16        Q.    Why not?

17        A.    I ran out of the office, kind of lost

18   track and didn't record that.

19        Q.    Did you -- there's an October 22nd date

20   on here.  Does that roughly match your memory of

21   when you stopped keeping these logs?

22        A.    Yeah, that's about right.

23        Q.    Was there any discussion about project

24   SCOUTS being over at that point?

JOEL LEHMAN,    DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

Page 102

1        A.    No, there was no discussion.

2        Q.    When did project SCOUTS end?

3        A.    When the litigation began.

4        Q.    So in your mind it was still ongoing up

5    until the point when litigation began?

6        A.    Yeah, that's right.

7        Q.    What sort of things were still happening

8    in project SCOUTS up to that point?

9        A.    Up to what point?

10       Q.    The point where litigation began.

11       A.    And going back to what other point?

12   What's the two points that you're getting at?

13       Q.    I would be getting at the points from mid

14   October through when litigation began.

15       A.    Mid October -- no, nothing significant.

16   Mid October we, as you can see, made some more

17   entries in the log, but nothing other than that.

18       Q.    You testified a while back that after the

19   October 26 event where the false cardiac emergency

20   signal went out and the fire department came out you

21   subsequently wore the device for a couple more days

22   until it stopped working, correct?

23       A.    Yeah, that's correct.

24       Q.    Then after it stopped working what did

JOEL LEHMAN,  DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL    *216242*

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF ILLINOIS

 3                      EASTERN DIVISION

 4   CARDIONET, INC.,                )

 5                   Plaintiff,      )      Case No.

 6             -vs-                  )      07 C 6625

 7   LIFEWATCH CORP., HANNA          )      District Judge

 8   KONARZEWKA, M.D., DOE 1 and     )         Conlon

 9   DOE 2,                          )      Mag. Judge

10                   Defendants.     )         Denlow

11

12        I hereby certify that I have read the foregoing

13   transcript of my deposition given at the time and

14   place aforesaid, consisting of Pages 1 to 130,

15   inclusive, and I do again subscribe and make oath

16   that the same is a true, correct and complete

17   transcript of my deposition so given as aforesaid,

18   and includes changes, if any, so made by me.

19                              JOEL LEHMAN

20   SUBSCRIBED AND SWORN TO

21   before me this 5th day

22   of January ,A.D., 2008

23      NOTARY PUBLIC
24
```

OFFICIAL SEAL
PATRICIA J WALKER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/31/09

Patricia J Walker

JOEL LEHMAN,  DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

```
 1   STATE OF ILLINOIS    )
 2                        )   SS:
 3   COUNTY OF DUPAGE     )
 4                 I, KAREN PILEGGI, a Notary Public
 5   within and for the County of DuPage, State of
 6   Illinois, and a Certified Shorthand Reporter of said
 7   state, do hereby certify:
 8                 That previous to the commencement of
 9   the examination of the witness, the witness was duly
10   sworn to testify the whole truth concerning the
11   matters herein;
12                 That the foregoing deposition
13   transcript was reported stenographically by me, was
14   thereafter reduced to typewriting under my personal
15   direction, and constitutes a true record of the
16   testimony given and the proceedings had;
17                 That the said deposition was taken
18   before me at the time and place specified;
19                 That I am not a relative or employee
20   or attorney or counsel, nor a relative or employee
21   of such attorney or counsel for any of the parties
22   hereto, nor interested directly or indirectly in the
23   outcome of this action.
24                 IN WITNESS WHEREOF, I do hereunto
```

JOEL LEHMAN,   DECEMBER 20, 2007
CONTAINS CONFIDENTIAL MATERIAL

```
 1   set my hand and affix my seal of office at Chicago,

 2   Illinois this 24th day of December, A.D., 2007.

 3                    Karen Pileggi

 4                    Notary Public, DuPage

 5                    County, Illinois.

 6                    My commission expires 11/05/07.

 7

 8

 9   CSR Certificate No. 84-3404

10

11                    "OFFICIAL SEAL"
                       KAREN PILEGGI
12                Notary Public, State of Illinois
              My Commission Expires 11/05/2007

13

14

15

16

17

18

19

20

21

22

23

24
```