UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

CARDIONET, INC.,

              Plaintiff,

    v.

LIFEWATCH CORP., HANNA
KONARZEWKA, M.D., JOEL LEHMAN
and LISA AMENT,

              Defendants.


LIFEWATCH CORP.,

              Counter-plaintiff,

    v.

CARDIONET, INC.,

              Counter-defendant.

_____

Case No. 07 C 6625

Judge Suzanne B. Conlon

Magistrate Judge Morton Denlow


## LIFEWATCH CORP.'S MEMORANDUM IN OPPOSITION TO CARDIONET, INC.'S MOTION TO DISMISS COUNTS II-VI OF LIFEWATCH CORP.'S COUNTERCLAIMS


February 15, 2008

## <u>PRELIMINARY STATEMENT</u>

CardioNet's brief in support of its motion to dismiss incorrectly focuses on LifeWatch's actions, rather than the conduct by <u>CardioNet</u> that gives rise to LifeWatch's Counterclaims. Prior to filing its Complaint, CardioNet engaged in the same (and, indeed, worse) conduct for which it has sued LifeWatch. Through bilateral expedited discovery that the Court ordered (over CardioNet's objection), LifeWatch learned that CardioNet improperly obtained a LifeWatch device and opened it, scrutinized its contents and extensively photographed its circuitry. CardioNet's top executives, including its director of product development, undertook this inspection at the very same time that CardioNet was developing its next generation device, which gives rise to LifeWatch's concern that CardioNet's device incorporates LifeWatch's technology. (<u>See</u> <u>generally</u> LifeWatch's Counterclaims.)

LifeWatch has also learned that CardioNet has been engaged in a false, disparaging and malicious marketing campaign intended to interfere with LifeWatch's sales of its competing heart monitoring device. LifeWatch filed Counterclaims addressing CardioNet's campaign, including claims for false advertising under the Lanham Act (Count 2); violation of Illinois Uniform Deceptive Trade Practices Act (Count 3) and Illinois Consumer Fraud and Deceptive Trade Practices Act (Count 4) (together, the "Illinois Consumer Fraud Statutes"); interference with expectation of business relationships (Count 5); and unfair competition (Count 6).[1]

As explained below, all of CardioNet's arguments for dismissal of these claims fail. The basis of CardioNet's motion is a hyper-technical analysis that simply ignores many of the facts and allegations in LifeWatch's complaint. Further, to the extent CardioNet argues that it has not

---

[1]  LifeWatch also brought a claim for misappropriation of trade secrets (Count 1) based on CardioNet's inspection of LifeWatch's heart monitor as described above.  CardioNet has not moved to dismiss that claim.

been given sufficient specificity as to the nature of LifeWatch's claims, its own motion papers – which readily identify the CardioNet conduct at issue – disprove the argument.

Finally, to the extent that LifeWatch has not pled certain facts with the specificity desired by CardioNet, that is the result of CardioNet's dilatory and incomplete document production during expedited discovery, and the lack of knowledge of one of its 30(b)(6) witnesses, combined with directions to that witness by CardioNet's counsel not to answer questions directly related to CardioNet's claims and LifeWatch's defenses. Therefore, if the Court concludes that any of LifeWatch's claims are insufficiently plead, LifeWatch should be afforded leave to file amended counterclaims to conform to newly learned evidence supporting those claims.

## RELEVANT ALLEGATIONS

CardioNet has made multiple advertising and marketing claims that are false, misleading and disparaging, the heart of which are set forth in Paragraphs 29-31 of LifeWatch's Counterclaims. The claims are pled as follows:

- CardioNet "advertised to and told physicians and governmental and private third party insurers ('Insurers') that it was the only FDA approved and Medicare reimbursed arrhythmia detection and alarm system." (herein referred to as the "Only FDA Approved Claim") (See Counterclaims ¶ 29);

- CardioNet "advertised to and told physicians and Insurers that the LifeStar ACT device did not and could not meet FDA's requirements for approval of an arrhythmia detection and alarm system." (herein referred to as the "Lack of FDA Approval Claim") (Id. ¶ 30); and

- CardioNet "advertised and made other statements to physicians and Insurers to the effect that its device is superior to and/or safer [than the] LifeStar ACT device." (herein referred to as the "Superiority Claim") (Id. ¶ 31).

LifeWatch's Counterclaims allege that the Only FDA Approved Claim "was and is false and misleading because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device has no FDA approval when, in fact, the LifeStar ACT device had and has

FDA approval . . . [and] because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device is somehow less safe or reliable than CardioNet's device when, in fact, the LifeStar ACT device is as safe and reliable as the CardioNet device."  (Counterclaims ¶ 29.)

LifeWatch's Counterclaims allege that the Lack of FDA Approval Claim "was and is false and misleading [because] contrary to CardioNet's statement, the LifeStar ACT device meets the FDA requirements for approval as an arrhythmia detection and alarm system [and] because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device is somehow less safe or reliable than CardioNet's device when, in fact, the LifeStar ACT device is as safe and reliable as the CardioNet device."  (Id. ¶ 30.)

LifeWatch's Counterclaims allege that CardioNet's Superiority Claim is "false and misleading because, in fact, CardioNet's device is neither superior to nor safer than the LifeStar ACT device."  (Id. ¶ 31.)

The allegations in LifeWatch's Counterclaims were based on its knowledge of CardioNet's advertising and marketing documents prior to expedited discovery, and on documents and deposition testimony LifeWatch discovered from CardioNet during the very beginning of expedited discovery.  After LifeWatch filed its Counterclaims, CardioNet produced additional documents containing significant information that further support all of LifeWatch's allegations.  These documents contain multiple representations concerning LifeWatch and its heart monitoring device that are false, misleading and/or disparaging.  LifeWatch has reason to believe that CardioNet has additional documents that would provide further detail surrounding its campaign to disparage LifeWatch's heart monitoring device, and has demanded their production.

## ARGUMENT

As an initial matter, the deposition testimony cited by CardioNet (and any other "facts" outside of LifeWatch's pleading) are not properly before the Court and should not be considered on CardioNet's motion to dismiss.  See Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d  969, 971 (7th Cir. 2002) (refusing to consider documents defendant cited to in its motion to dismiss where the documents were "neither included in plaintiff's complaint nor central to the claim").  Where a motion to dismiss is based on evidence outside the pleadings, that evidence should only be considered if the motion is converted to one for summary judgment, which would be inappropriate at this early stage.  Fed. R. Civ. P. 12(b)(6).

## I.     LIFEWATCH HAS ALLEGED FACTS TO PLEAD EACH ELEMENT OF A LANHAM ACT CLAIM

Despite CardioNet's contention, LifeWatch has, in fact, included allegations establishing each and every element of a Lanham Act claim.  Indeed, CardioNet's Brief specifically acknowledges the existence of certain of these elements.  CardioNet simply cannot deny that LifeWatch's pleadings provide fair notice of LifeWatch's false advertising claim under the Lanham Act and the grounds on which that claim rests – precisely what a complaint must do. See Conley v. Gibson, 355 U.S. 41, 47 (1957).

CardioNet identifies three elements of a Lanham Act claim it argues LifeWatch has not plead:  that CardioNet's goods entered interstate commerce; that CardioNet's advertising is likely to deceive a substantial number of consumers; and that the advertising materially affects purchasing decisions.  CardioNet simply admits in its Brief (at 5) that its goods have entered interstate commerce.  With respect to the latter two elements, LifeWatch has pleaded facts to satisfy each and CardioNet does not deny the existence of these facts.

Specifically, LifeWatch alleged that CardioNet's false and misleading claims "mistakenly lead physicians and Insurers into believing that the LifeStar ACT device has no FDA approval when, in fact, the LifeStar ACT device had and has FDA approval" and "that the LifeStar ACT device is somehow less safe or reliable than CardioNet's device when, in fact, the LifeStar ACT device is as safe and reliable as the CardioNet device."  (Counterclaims ¶¶ 29 and 30.)

By asserting that CardioNet's claims are leading physicians and insurers into believing important facts that are incorrect about LifeWatch's product, LifeWatch has alleged that CardioNet's claims are likely to deceive a substantial number of consumers.  Moreover, while it cannot be used in support of CardioNet's motion to dismiss, the testimony CardioNet attaches to its motion explicitly states that LifeWatch learned that consumers were deceived by CardioNet's false advertising.  (Fieber Aff. Ex. B at 186-87, 190.)

That CardioNet's false and misleading advertising materially affects consumers' purchasing decisions is also expressed in the allegations in Paragraphs 29 and 30, set forth above.  It can clearly be understood, without expressly using the term "material," that statements concerning the safety, reliability and status of FDA approval of a medical device materially affect consumers' purchasing decisions with respect to both parties' competing devices. Notably, CardioNet does not and cannot deny that FDA approval of CardioNet's and LifeWatch's devices – the heart of its advertising and marketing claims – are material to consumers.

Indeed, FDA approval and product effectiveness and safety are essential in order to sell a heart monitoring device, the importance of which is reflected in CardioNet's advertising at issue. Advertising claims that concern an inherent quality or characteristic of the advertised product are deemed material without further inquiry under established Lanhan Act law.  See, e.g., Cashmere

& Camel Hair Mfrs. Inst. v. Saks Fifth Avenue, 284 F.3d 302, 312 (1st Cir. 2002); Johnson &

Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1250-51 (11th Cir. 2002); S.C.

Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001); Cincinnati Sub-Zero

Prods., Inc. v. Augustine Medical, Inc., 800 F. Supp. 1549, 1558 (S.D. Ohio 1992); Janda v.

Riley-Meggs Indust., 764 F. Supp. 1223, 1228-29 (E.D. Mich. 1991).[2]

## II.    LIFEWATCH HAS PLED ITS LANHAM ACT AND ILLINOIS CONSUMER FRAUD STATUTE CLAIMS WITH PARTICULARITY

Ironically, although CardioNet alleges that LifeWatch failed to plead its Lanham Act

false advertising claim with particularity, CardioNet's own brief (at 3) describes those false

claims in detail.  The notion that CardioNet is not on notice of the claims being asserted against

it is absurd.

For example, CardioNet explains in its Brief precisely where it made its "Only FDA

Approved" claim, the date the claim was made and the medium of the advertising:  "in a banner

displayed over a CardioNet booth during a March 2007 trade conference, which read "The

ONLY FDA Cleared and Medicare Reimbursed Wireless ECG Arrhythmia And Detection

Alarm System. PERIOD."  (CardioNet Brief at 3.)[3]

With respect to CardioNet's Lack of FDA Approval Claim and Superiority Claim,

LifeWatch has alleged the substance of CardioNet's false and misleading claims.  As discussed

above, at the time it filed its Counterclaims, LifeWatch lacked the documents that contained the

---

[2]  CardioNet half-heartedly argues, again impermissibly citing deposition testimony, that its Only FDA Approved claim is literally true.  Even if CardioNet's argument could be credited by the Court or is correct, a claim that is literally true may nonetheless be actionable under the Lanham Act if it is impliedly false.  Thus, not only are explicitly false claims actionable, but also any claim that "conveys a false impression, is misleading in context or is likely to deceive consumers" (as the decision that CardioNet relies on plainly states).  B.Sanfield, Inc. v. Finlay Fine Jewelry Corp., 76 F. Supp. 2d 868, 874 (N.D. Ill. 1999).

[3]  The case law is clear that statements and representations at a trade show constitute advertising.  See Enesco Grp. Inc. v. Jim Shore Designs, Inc., 2005 U.S. Dist. LEXIS 31718, at *12-13 (N.D. Ill. Dec. 6, 2005).

specific phrasing of CardioNet's claims and the precise time and method of its advertising. LifeWatch now has documents produced by CardioNet that contain this specific information, of which CardioNet is, of course, aware. CardioNet simply cannot claim that it lacks fair notice of LifeWatch's false advertising and consumer fraud claims and the grounds on which those claims rest.

LifeWatch's claims for violation of the Illinois Consumer Fraud Statutes based on CardioNet's advertising claims and marketing claims also incorporate by reference the paragraphs identifying CardioNet's false claims. (See Counterclaims ¶¶ 46 and 53.) Accordingly, for the same reason that LifeWatch's Lanham Act claims have been plead with particularity, so have its Illinois Consumer Fraud Statute Claims.

In all events, LifeWatch is not required to plead its Illinois Consumer Fraud Statute Claims with particularity. It merely needs to satisfy the pleading requirements of Rule 8(a), not 9(b). As its name implies, the Illinois Consumer Fraud And Deceptive Trade Practices Act ("CFA") covers more than just fraud and incorporates any practice that would violate section 2 of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). See Publications Int'l, Ltd. v. Leapfrog Enterprises, Inc., 2002 U.S. Dist. LEXIS 20738, at *17-18 (N.D. Ill. Oct. 23, 2002). Section 2 of the UDTPA sets forth many acts as "deceptive trade practices," not just advertising, including, for example, where one "disparages the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2(8).[4] Such a claim does not

---

[4] Thus, to the extent, if at all, CardioNet argues that false, misleading and/or disparaging claims that are included in documents mailed to a competitor's consumer base cannot form the basis of a claim under the Illinois Consumer Fraud Statutes, that is incorrect. Additionally, claims in documents mailed to a competitor's consumer base are not per se precluded as a basis of liability under the Lanham Act, as CardioNet suggests. What constitutes advertising is determined by the examination of four factors. See Midwest Canvas Corp. v. Commonwealth Canvas, Inc., 2008 U.S. Dist. LEXIS 3576, at *8 (N.D. Ill. Jan. 16, 2008) ("For a statement to amount to 'commercial advertising or promotion' the statements must be (1) commercial speech (2) by a defendant who is in commercial competition with the plaintiff (3) for the purpose of inducing consumers to buy defendant's goods or services (4) disseminated sufficiently to the relevant purchasing public."). Thus, whether false and misleading claims contained in documents

constitute fraud in a manner that would implicate the heightened pleading requirements of Rule 9(b) and in such a case, a party merely needs to satisfy the simple pleading requirements of Rule 8(a).  See Publications Int'l, 2002 U.S. Dist. LEXIS 20738 at *18 (finding party's claim under the Deceptive Trade Practices Act and Consumer Fraud Act "subject to federal notice pleading, which requires only that the plaintiff 'set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim'" ).

## III.    ALL OF CARDIONET'S FALSE, MISLEADING AND DISPARAGING ADVERTISING AND MARKETING CLAIMS ARE ACTIONABLE

CardioNet's Superiority Claim is not puffery, as CardioNet argues.[5]  While advertising claims that are merely puffery – what CardioNet refers to as non-actionable claims – are not actionable under the Lanham Act, claims that are capable of measurement are not puffery.  See, e.g., Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 945-46 (3d Cir. 1993).  Put another way, puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  See, e.g., Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc., 2005 U.S. Dist. LEXIS 37504, at *35 (N.D. Ill. Dec. 26, 2005) ("In this case, 'innovative' and 'leveling the playing field' are not specific, not concrete, not measurable, and therefore puffery."); Gillette Co. v. Wilkinson Sword, Inc., 1991 U.S. Dist. LEXIS 21006, at *53 (S.D.N.Y. Jan. 9, 1991) ("puffing in advertising is a claim that is 'not capable of measurement or which consumers would not take seriously – for example an advertisement touting a foreign sports car as 'the sexiest European'").  Claims that one product is superior or safer than another are capable of measurement and are often the subject of Lanham Act claims.  See, e.g., Castrol,

---

mailed to consumers constitute advertising or promotion depends on several factors, including the portion of the relevant marketplace that receives the mailing and the contents of the mailing.

[5] CardioNet's puffery argument concerns only one of the three claims LifeWatch set forth in its Counterclaims. CardioNet does not allege that its Only FDA Approved Claim or the Lack of FDA Approval Claim are non-actionable.

987 F.2d at 945-46 (advertisements claiming "superior" engine protection actionable because claims that are "subject to measurement are not puffery").

IV.    **CARDIONET'S FALSE CLAIMS CONCERNING FDA APPROVAL MAY BE THE SUBJECT OF LANHAM ACT AND ILLINOIS CONSUMER FRAUD CLAIMS BEFORE THIS COURT**

CardioNet's false claims and marketing materials relating to the parties' devices satisfying particular FDA requirements and whether those devices received FDA approval undoubtedly can be the subject of Lanham Act and Illinois Consumer Fraud Statute claims. Contrary to CardioNet's contentions, determining whether its FDA-related claims are false and misleading will not involve "second-guessing" the FDA.

The only issues concerning the FDA that LifeWatch's Counterclaims raise is CardioNet's representations concerning the status of FDA approval of its and LifeWatch's heart monitoring device and the messages physicians and insurers take away from those representations. (See Counterclaims ¶¶ 30 and 31.) The Court has to look no further than case law CardioNet itself relies on to see that representations concerning FDA approval are actionable under the Lanham Act. CardioNet cited a recent circuit court opinion, the holding of which CardioNet describes as finding that a drug manufacturer could be liable under the Lanham Act for advertising that falsely maintained its product as FDA approved. (See CardioNet's Brief at 4 n.2 (citing Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 939-41 (8th Cir. 2005)).) Indeed the court in Alpharma held that claims concerning representations about whether a product had received FDA approval were actionable under the Lanham Act. Id.; see also Genderm Corp. v. Biozone Labs, 1992 WL 220638, at *12 (N.D. Ill. Sept. 3, 1992) ("A private litigant does … have a private right of action under the Lanham Act for misrepresentation and false description of … goods which are governed by the FDCA [Food, Drug and Cosmetic Act] such as

pharmaceuticals and foods.")  Misrepresentations concerning FDA approval may also be the subject of claims under the Illinois Consumer Fraud Statutes.  <u>See</u>, <u>e.g.</u>,  <u>Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.</u>, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987) ("allegations of misrepresentations concerning approval by the Food and Drug Administration . . . plainly state a claim for injunctive relief under [the Illinois Deceptive Trade Practice Act]").

The situation CardioNet cites as "analogous" – bringing claims for professional negligence under the CFA – is anything but analogous.  LifeWatch's claims, which concern the marketing and advertising of CardioNet's heart monitoring products, rather than professional negligence, are about "the business of medicine," which CardioNet acknowledges is covered by the Illinois Consumer Fraud statutes.  (<u>See</u> CardioNet's Brief at 7.)

## V.    LIFEWATCH HAS ALSO SATISFIED ITS RULE 8(a) PLEADING REQUIREMENTS CONCERNING ITS INTERFERENCE AND UNFAIR COMPETITION CLAIMS

CardioNet raises two reasons why LifeWatch's claim for interference with expectation of business relationships should be dismissed.  Neither has merit.  LifeWatch "does not have to plead evidence" in support of its interference claim (<u>Pain Prevention Lab,</u> 657 F. Supp. at 1494) and must satisfy Rule 8(a), rather than 9(b), by including "a short and plain statement of the claim showing that the pleader is entitled to relief." (Fed. R. Civ. P. 8(a)).  LifeWatch's interference claim meets that standard.  CardioNet argues that because LifeWatch did not specifically identify the parties with which it interfered, LifeWatch's claim must be dismissed.  CardioNet's false, misleading and disparaging claims that LifeWatch identified make clear that the parties with which CardioNet interfered are insurance and Medicare reimbursement providers.

Thus, LifeWatch specifically alleged that "CardioNet has interfered, without justification, with LifeWatch's reasonable expectation of maintaining current and forming future prospective business relationships with consumers of heart monitoring systems, the physicians that prescribe such systems and the entities that reimburse patients for the costs of such systems." (Counterclaims ¶ 61.)  CardioNet knows precisely who these parties are because it operates in the same market as LifeWatch with respect to heart monitoring devices and thus understands the business relationships with which it interfered.  The only reason those parties are not identified by name in LifeWatch's Counterclaims is because, at the time LifeWatch filed its Counterclaims, CardioNet was improperly withholding documents identifying the parties, as discussed earlier.

CardioNet's second argument is that LifeWatch's interference claim must be dismissed because it has not plead any independently wrongful conduct on which the interference claim may be based.  Because LifeWatch's Lanham Act and Illinois Consumer Fraud Statute claims are properly alleged in its Counterclaims, the independently wrongful conduct exists.  For the same reason, LifeWatch has adequately plead its common law unfair competition claim.

## **CONCLUSION**

For the above reasons, this Court should deny CardioNet's motion to dismiss in its entirety. If the Court finds that any of LifeWatch's claims are not plead sufficiently, LifeWatch asks the Court to treat CardioNet's motion as one for a more definite statement under Rule 12(e) or, alternatively, seeks leave to amend it Counterclaims.

February 15, 2007

By: /s/ Sean Gallagher

BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP
Sean Gallagher (6239367)
54 W. Hubbard, Suite 300
Chicago, IL 60610
(312) 494-4428
sean.gallagher@bartlit-beck.com

PROSKAUER ROSE LLP
Kevin J. Perra (admitted *pro hac vice*)
Alexander Kaplan (admitted *pro hac vice*)
1585 Broadway
New York, New York 10036
(212) 969-3000
kperra@proskauer.com

*Attorneys for all Defendants*

CERTIFICATE OF SERVICE

I, Sean W. Gallagher, do hereby certify that on this 15th day of February 2008, I caused a true and correct copy of the foregoing **LIFEWATCH CORP.'S MEMORANDUM IN OPPOSITION TO CARDIONET, INC.'S MOTION TO DISMISS COUNTS II -VI OF LIFEWATCH CORP.'S COUNTERCLAIMS** to be served via electronic mail on CardioNet through its counsel listed below:

Thomas Duston
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive, 6300 Sears Tower
Chicago, IL 60606-6357
Telephone: 312-474-6300

Michael Kelleher
FOLGER LEVIN & KAHN, LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: 415-986-2800

By: /s/ Sean W. Gallagher