UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., | |
| Plaintiff, | Case No. 07C 6625 |
| v. | District Judge Conlon |
| LIFEWATCH CORP., HANNA KONARZEWSKA, M.D., JOEL LEHMAN and LISA AMENT, | Magistrate Judge Denlow |
| Defendants. | |
| LIFEWATCH CORP., | |
| Counter-plaintiff, | |
| v. | |
| CARDIONET, INC., | |
| Counter-defendant. | |

_____

**CARDIONET'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS II-VI OF LIFEWATCH CORPORATION'S COUNTERCLAIMS**
_____

## I.    INTRODUCTION

"[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983).  Here, LifeWatch has plead non-specific allegations that CardioNet somehow maligned its products solely to obtain leverage in the parties' ongoing trade secret dispute, which arose after LifeWatch attempted to steal two CardioNet heart monitoring devices.  LifeWatch's counterclaims appear based on a single banner CardioNet displayed at a March 2007 trade show, advertising its device as "The ONLY FDA Cleared and Medicare Reimbursed Wireless ECG Arrhythmia Detection and Alarm System.  PERIOD."  Although LifeWatch does not admit this in its opposition brief, that statement was literally true when made,[1] and in the context of a trade show for sophisticated medical professionals, it is highly improbable that LifeWatch could show that it deceived anyone or influenced any purchasing decision affecting LifeWatch.

LifeWatch's opposition argument that unspecified "newly discovered evidence" somehow supports its allegations is not a sufficient response to CardioNet's motion, which CardioNet brought so that the sufficiency of LifeWatch's counterclaims could be tested <u>before</u> expensive and disruptive discovery begins.  LifeWatch should be ordered to allege specific information in its claims to satisfy the applicable pleading standards if it can (which CardioNet believes is improbable).  LifeWatch appears to concede its pleadings are insufficient, asking to be allowed to amend its pleadings if the Court grants this motion.  Because Counts II through VI of LifeWatch's Counterclaims are deficient as currently plead, the Court should dismiss them.

---

[1] *See* CardioNet's January 28, 2008 Request for Judicial Notice (showing December 14, 2007 date for FDA approval of LifeWatch device for arrhythmia detection and alarm).

## II.    ARGUMENT

### A.    LifeWatch Failed to Plead Required Lanham Act Elements.

LifeWatch struggles to avoid admitting the obvious, which is that its pleadings lack all the necessary elements required to state a Lanham Act claim.  Specifically, LifeWatch did not plead or state any grounds for finding that the alleged CardioNet misrepresentations were "actually or likely to deceive a substantial segment of their audience," or "material in their effects on purchasing decisions."  If, as held in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), a complaint that merely recites the elements of a claim, without some statement of supporting circumstances, occurrences and events, cannot withstand a motion to dismiss, one that completely omits claim elements surely warrants dismissal.  LifeWatch's pleadings fail to provide CardioNet "fair notice" of the nature of its claims and to identify the "grounds" on which those claims rest.  *Id.* at 1965 n.3.

LifeWatch invites the Court to infer the missing claim elements from two sentences in its Counterclaims, in which LifeWatch tries to explain why the alleged representations are misleading.  These two sentences are:  (1) "That statement was and is false and misleading because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device has no FDA approval when, in fact, the LifeStar ACT device had and has FDA approval;" and (2) "That statement also was and is false and misleading because it mistakenly leads physicians and Insurers into believing that the LifeStar ACT device is somehow less safe or reliable than CardioNet's device when, in fact, the LifeStar ACT device is as safe and reliable as the CardioNet device."  Counterclaims ¶¶ 29, 30.  Neither sentence discusses whether the representations would deceive a substantial segment of the customer audience, or their materiality to customer purchasing decisions.  Thus, neither supplies the missing elements for

-2-

LifeWatch's Lanham Act claim.[2]

LifeWatch argues that it is excused from pleading these Lanham Act elements because the alleged misrepresentations concern an "inherent quality or characteristic of the advertised product," specifically, "FDA approval and product effectiveness and safety." LifeWatch Opp'n at 5. As authority, LifeWatch cites, without discussion, five cases, none of which involved a motion to dismiss, and all of which highlight the inadequacies of its pleading.[3] The five cited cases are: *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002) (appeal from partial summary judgment); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002) (appeal from preliminary injunction); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2nd Cir. 2001) (appeal from permanent injunction); *Cincinnati Sub-Zero Prods., Inc. v. Augustine Medical, Inc.*, 800 F. Supp. 1549 (S.D. Ohio 1992) (appeal from preliminary injunction); *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223 (E.D. Mich. 1991) (appeal from partial summary judgment).

Significantly, in each of these cases, the court and the parties knew what specific advertisements were at issue, the context in which they were made, the audience, and a factual record existed for determining whether they were literally false. Only in that limited situation were courts then able to determine whether the plaintiff had met its burden of proving the advertisements concerned material matters, such that it might rely on a presumption that the

---

[2] If LifeWatch's claim rests on the banner described in CardioNet's motion (which LifeWatch appears to now concede), it seems highly improbable that a literally true statement about the FDA certification of CardioNet's device could deceive sophisticated medical professionals about the FDA status of LifeWatch's device, let alone a "substantial segment" of that audience. Moreover, LifeWatch's lack of FDA clearance as an arrhythmia detector and alarm during the relevant time period was surely more material to purchasing decisions than any of the statements LifeWatch attributes to CardioNet.

[3] Of course, LifeWatch's *post hoc* rationalization regarding inherent qualities highlights the fact that, although it could have included this explanation in its Counterclaims, it did not.

advertisement influenced purchasing, rather than being required to put on customer survey data to prove that point. *See, e.g., Johnson & Johnson Vision Care*, 299 F.3d at 1250 (defendant's use of the term "eye doctor" instead of "eye care practitioner" was not material, and thus not presumed to impact purchasing decision). Moreover, these cases make clear that the context, timing, audience, and content of the alleged misrepresentations are paramount to determining whether any presumption would apply. *See, e.g., S.C. Johnson & Son, Inc.*, 241 F.3d at 238 ("[f]undamental to any task of interpretation is the principle that text must yield to context," and an advertisement must be considered in its entirety, the "entire mosaic should be viewed rather than each tile separately"); *Johnson & Johnson Vision Care*, 299 F.3d at 1248 n.4 (noting the importance of time lapse in interpreting how a customer would likely view advertisements). These cases also concern representations that were literally false. Here, in contrast, at least one (if not all) of the statements at issue, the "Only FDA Approved Claim" as LifeWatch calls it, was literally true.[4] *See* CardioNet's January 28, 2008 Request for Judicial Notice (showing December 14, 2007 date for FDA approval of LifeWatch device for arrhythmia detection and alarm). In short, the presumption discussed in these five cases is inapplicable here.

### B. LifeWatch Failed to Plead Any of Its Statutory Misrepresentation Claims with the Required Specificity.

LifeWatch apparently concedes, and numerous cases have held in ruling on a motion to dismiss, that a Lanham Act claim alleging false advertising must meet the heightened pleading

---

[4] LifeWatch asks the Court to assume that any statement regarding FDA approval is material, but this claim illustrates the importance of context in determining whether there is such a presumption. While the vagueness of LifeWatch's claims allows this issue to be addressed only in the abstract, presumably while the LifeWatch device lacked FDA approval as an arrhythmia detection and alarm, LifeWatch did not market it for that purpose. Thus it would not be material, nor could one presume an impact on customer purchases if CardioNet truthfully stated that LifeWatch's product was not approved for that purpose.

standard under FRCP 9(b).  For example, in *MPC Containment Systems, Ltd. v. Moreland*, 2006 WL 2331148, *3 (N.D. Ill. 2006), the court dismissed a Lanham Act claim because, while the plaintiff had supplied the "who," "what," and "where," it failed to adequately provide the "when" and "how."  *Id.* at *3.  For example, plaintiff's failure to plead the method used to communicate the alleged misstatements not only failed to provide defendant with adequate notice, but also did not allow determination of whether the statements fell within the scope of § 1125(a)(1)(B).  *Id.  See also Fisher & Paykel v. LG Electronics, Inc.*, 2003 WL 21910622, *1 (N.D. Ill. 2003) (dismissing Lanham Act claim where plaintiff alleged defendants made a false statement in an advertisement, but failed to allege the "when and where of the statement");  *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 857 F. Supp. 1241, 1243-44 (N.D. Ill. 1994) (Lanham Act plaintiff must plead who, what, when and where of alleged misrepresentations to provide defendant fair notice and permit it to respond adequately).

LifeWatch claims its pleadings satisfy the FRCP 9(b) heightened pleading standard, but is forced to cite CardioNet's own Motion to Dismiss to find the required detail for its "Only FDA Approved Claim."  LifeWatch Opp'n at 6.  LifeWatch next claims it lacked the documents regarding the specific phrasing, time and method of advertising that support its "Lack of FDA Approval Claim" and "Superiority Claim."  LifeWatch Opp'n at 6-7.  First, this excuse does not explain why LifeWatch could not plead its "Only FDA Approved Claim " more specifically.  Second, LifeWatch's admission only highlights the fact that its pleadings do not meet the test set in *Twombly*, because rather than plead grounds showing it is entitled to relief, LifeWatch intends to rely on discovery to identify such grounds (if they even exist, which CardioNet disputes).  *Twombly*, 127 S. Ct. at 1966 (allegation of parallel conduct in antitrust action comes "close to stating a claim, but without some further factual enhancement it stops short of the line").

While the FRCP 9(b) heightened pleading standard is fatal to its Lanham Act claim, LifeWatch strives to save its other statutory claims by suggesting that standard is inapplicable to claims under the Illinois Consumer Fraud and Deceptive Practices Act and the Illinois Uniform Deceptive Practices Act. LifeWatch Opp'n at 7. Its only authority for this argument is a trademark infringement case, which is not a species of fraud, unlike LifeWatch's claims here. That case, *Publications Int'l v. Leapfrog Enterprises, Inc.*, 2002 WL 31426651 (N.D. Ill. 2002), involved alleged trade name and trademark infringement related to the "LEAPFROG" mark and variants, which is "conduct in addition to fraud" that is not subject to the FRCP 9(b) pleading standard. *See Publications Int'l*, 2002 WL 31426651 at *6.

In contrast, as discussed in CardioNet's opening brief, LifeWatch's various statutory claims are all species of fraud claims, because LifeWatch alleges that CardioNet made misrepresentations about the LifeWatch device. Thus, the standard here is that stated in *American Top English, Inc. v. Lexicon Marketing (USA), Inc.*, 2004 WL 1403695, *5 (N.D. Ill. 2004) and *Saltzman v. Pella Corp.*, 2007 WL 844883, *2 (N.D. Ill. 2007), which have required that false advertising claims under the Illinois consumer fraud statute meet the FRCP 9(b) heightened pleading standard. LifeWatch fails to address or distinguish this authority, but its Illinois statutory claims, which re-hash the same vague allegations as its Lanham Act claim, do not meet the pleading standard set by these cases.

**C.     LifeWatch's Statutory Claims are Based on Non-Actionable Statements.**

LifeWatch seeks to impose liability on CardioNet for subjective statements, such as that the CardioNet product is "superior," "safer" or more "reliable." Devoid of any context, such representations (even if CardioNet made them, which has not been established) are not actionable, because they are not measurable and cannot be proven either true or false. *Rosenthal Collins Group, LLC v. Trading Tech. Int'l*, 2005 WL 3557947, *33-*34 (N.D. Ill. 2005).

"[A]dvertising which merely states in general terms that one product is superior is not actionable." *Smith-Victor Corp. v. Sylvania Elec. Prod., Inc.*, 242 F. Supp. 302, 308 (N.D. Ill. 1965). *See also Tylka v. Gerber Products Co.*, 1999 WL 495126, *8 (N.D. Ill. 1999) (non-specific statements such as "optimum nutrition," "nutritionally, you can't buy a better food than Gerber," or "most wholesome nutritious safe foods you can buy anywhere in the world" not actionable under the ICFA); *Evanston Hosp. v. Crane*, 627 N.E.2d 29, 36 (Ill. App. 1993) (various representations in hospital's publications regarding quality of care were mere expressions of puffing); *Hoffman v. A.B. Chance Co.*, 339 F. Supp. 1385, 1387-88 (M.D. Pa. 1972) (puffing where advertisement stated that product "offered unprecedented safety"); *Mason v. Chrysler Corp.*, 653 So. 2d 951, 953-54 (Ala. 1995) (puffing where national advertising campaign referenced quality of vehicles); *Autohaus, Inc. v. Aguilar*, 794 S.W. 2d 459, 464 (Tex. App. 1990) (comparative statements claiming product superiority not actionable misrepresentations).

LifeWatch cites *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993) as authority for finding statements such as "superior," "safer," or more "reliable" actionable, but that case involved the representation that Pennzoil's motor oil "outperforms any leading motor oil against viscosity breakdown." 987 F.2d at 941. Viscosity breakdown is a measurable quantity, so it could be determined whether the Pennzoil product actually "outperformed" competitors on this feature. *Id.* at 942. Here, in contrast, the alleged misrepresentations LifeWatch cites do not concern any measurable aspect of the parties' devices, particularly given that LifeWatch failed to identify any context for these alleged statements.

Context is paramount in determining whether a statement is actionable. For example, in *Tylka*, an advertisement comparing two baby food brands and suggesting they were nutritionally

equivalent was not deceptive, where it was accompanied by a full nutritional breakdown of the products. 1999 WL 495126 at *9. Similarly, here, comparisons of LifeWatch and CardioNet devices are not actionable if other relevant product information is included. The audience is also important, because courts are less likely to find statements directed to a sophisticated audience actionable. *See, e.g., Rosenthal*, 2005 WL 3557947 at *36 (where press release targeted a sophisticated trade audience, no reasonable consumer would rely on statements that defendant's product was innovative or leveled the playing field). Here, LifeWatch asserts the alleged statements were made to a sophisticated audience of "physicians and Insurers." Counterclaims ¶¶ 30-31. In this context, advertising CardioNet's device as superior or more reliable is not actionable, because that audience would understand the contextual limits on such statements.

> D.   The Court Should Not Usurp the FDA's Role by Attempting to Evaluate Whether LifeWatch's Device Could Have Met Particular FDA Requirements.

As explained in CardioNet's opening brief, another basis for dismissal is that the alleged misrepresentations relate to LifeWatch's provision of medical services, not ordinary commercial or business activities. *See Tkacz v. Weiner*, 858 N.E.2d 514, 517-18 (Ill. App. 2006); *Gadson v. Newman*, 807 F. Supp. 1412, 1422 (C.D. Ill. 1992). LifeWatch suggests that *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 940-41 (8th Cir. 2005) is contrary authority on this point, but there, the issue was whether the defendant had FDA approval, which is a "yes" or "no" question. Here, in contrast, LifeWatch asks the Court to decide whether its device "did not and could not meet FDA's requirements for approval of an arrhythmia detection and alarm system." Counterclaims ¶ 30. This concerns the provision of medical services, not ordinary commercial

or business activities, and it is not within the domain of consumer fraud statutes.[5]

### E.  LifeWatch Failed to Adequately Plead Claims for Intentional Interference and Unfair Competition.

CardioNet identified two flaws in LifeWatch's interference with prospective economic advantage claim.  First, LifeWatch failed to identify a specific customer relationship interfered with.  LifeWatch ignores *Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 957 F. Supp. 142, 146 (N.D. Ill. 1997), where it was held insufficient on an interference claim to plead interference with unspecified prospective customers.  Without authority, LifeWatch asks the Court to hold otherwise, but that is counter to numerous court decisions requiring plaintiffs in tortious interference actions to plead more than interference with nameless customers.  *See Boxcar Media, LLC v. Redneckjunk, LLC*, 345 F. Supp. 2d 76, 79 (D. Mass. 2004) (dismissing tortious interference counterclaim under Massachusetts law where defendants failed to specify what business relationships were affected); *Emerito Estrada Rivera-Isuzu De P.R., Inc. v. Consumers Union*, 233 F.3d 24, 30 (1st Cir. 2000) (applying Puerto Rico substantive law, dismissing tortious interference claim where no specific business relationship identified in complaint); *Kramer v. Pollock-Krasner Found*, 890 F. Supp. 250, 258 (S.D.N.Y. 1992) (tortious interference claim dismissed for failure to identify specific relationships, and finding insufficient general references to potential contracts with galleries, dealers, and various unnamed entities); *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (under Maryland law, plaintiffs must identify with specificity a possible future relationship likely to occur absent the

---

[5] An analogous situation exists in medical malpractice cases, where courts distinguishing between the business aspects and the practice of medicine routinely recognize that technical judgments are part of the practice of medicine. *See, e.g., Goldberg v. Northeastern University*, 805 N.E.2d 517, 520 (Mass. App. 2004) ("the subject of establishing, staffing, and operating a health care center, including determinations regarding adequate staff configurations on weekends, involves quintessentially medical judgments").

interference). Here, LifeWatch seeks to engage in extensive and costly litigation on the basis of vague, generalized allegations that do not provide CardioNet with fair notice of the grounds of the asserted claims. Because LifeWatch fails to name a single customer with which CardioNet allegedly interfered – as well as when, where and how such interference allegedly occurred – LifeWatch fails to state a claim for tortious interference.

Second, the same faults detailed above with respect to LifeWatch's statutory claims warrant dismissal of both its interference claim *and* its claim for common law unfair competition. Because LifeWatch has failed to identify independently wrongful conduct as a predicate for these tort claims, both should be dismissed under FRCP 12(b)(6).

### III.　　CONCLUSION

For the reasons detailed above, the Court should dismiss Counts II through VI of LifeWatch's Counterclaims.

Dated: February 22, 2008　　　　　　　　By:＿＿\s Julie L. Fieber＿＿＿
　　　　　　　　　　　　　　　　　　　　Michael F. Kelleher (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　　Julie L. Fieber (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　　Amy L. Kashiwabara (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　　FOLGER LEVIN & KAHN LLP
　　　　　　　　　　　　　　　　　　　　Embarcadero Center West
　　　　　　　　　　　　　　　　　　　　275 Battery Street, 23rd Floor
　　　　　　　　　　　　　　　　　　　　San Francisco, CA  94111
　　　　　　　　　　　　　　　　　　　　Telephone: (415) 986-2800
　　　　　　　　　　　　　　　　　　　　Facsimile: (415) 986-2827

　　　　　　　　　　　　　　　　　　　　Thomas L. Duston
　　　　　　　　　　　　　　　　　　　　Gregory J. Chinlund
　　　　　　　　　　　　　　　　　　　　Julianne M. Hartzell
　　　　　　　　　　　　　　　　　　　　MARSHALL, GERSTEIN & BORUN LLP
　　　　　　　　　　　　　　　　　　　　233 South Wacker Drive, 6300 Sears Tower
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606-6357
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 474-6300
　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 474-0448

　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff and Counter-defendant
　　　　　　　　　　　　　　　　　　　　CARDIONET, INC.

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing CARDIONET'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS II-VI OF LIFEWATCH CORPORATION'S COUNTERCLAIMS was served via the court's CM/ECF system to the email address on file with the Court on February 22, 2008 to:

Sean Gallagher
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60610

Kevin J. Perra (admitted pro hac vice)
Alexander Kaplan (admitted pro hac vice)
PROSKAUER ROSE LLP
1585 Broadway Street
New York, NY 10036-8299


Attorneys for Defendants


    /s/ Julie L. Fieber
Julie L. Fieber

Attorney for Plaintiff and Counter-defendant
CardioNet, Inc.

19084\2010\589346.3