IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARDIONET, INC.,                          )
                                          )
                        Plaintiff,        )
                                          )    Civil Action No.: 07 C 6625
    v.                                    )
                                          )    Suzanne B. Conlon, Judge
LIFEWATCH CORP., HANNA                    )
KONARZEWSKA, M.D., JOEL LEHMAN            )
and LISA AMENT,                           )
                                          )
                        Defendants.       )

## MEMORANDUM OPINION AND ORDER

CardioNet, Inc. ("CardioNet") sues LifeWatch Corp. ("LifeWatch"), Hanna

Konarzewska, M.D., Joel Lehman and Lisa Ament (collectively, "defendants") for violation of

the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"; Count I), conversion

(Count II), fraud (Count III), breach of contract (Lehman and Ament only; Count IV), intentional

interference with contract (LifeWatch only; Count V), misappropriation of trade secrets (Count

VI), and unfair competition (Count VII). Defendants move to dismiss Counts II, III, V, and VII

because they are preempted by the Illinois Trade Secrets Act ("ITSA"). Defendants also move to

dismiss Count I because CardioNet fails to allege "damage" under the CFAA.   For the reasons

stated below, defendants' motion is granted in part.

### I.    MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the complaint on the basis of a

failure to state a claim on which relief can be granted.  In ruling on the motion, the court accepts

as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from

those facts in CardioNet's favor. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). CardioNet need only provide enough detail to give defendants fair notice of its claims, show that the claims are plausible, rather than merely speculative, and that relief is warranted. *EEOC v. Concentra Health Care Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1964 (further citations omitted)). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## II.    BACKGROUND

The following is taken from CardioNet's second amended complaint.[1] CardioNet and LifeWatch are competitors in the heart monitoring business. CardioNet developed a medical device – the "Mobile Cardiac Outpatient Telemetry" ("MCOT") – that monitors a patient's heart throughout the day. The device is composed of sensors and a small mobile monitor that can easily be carried. When a patient experiences cardiac events, the MCOT automatically sends a signal to CardioNet's monitoring center.

The MCOT is not sold to patients. Physicians prescribe the device for short-term periods up to 21 days. As a condition to activate the device, patients must agree to (1) return the device to CardioNet immediately after the short-term period (when monitoring is completed); (2) solely use the MCOT for heart monitoring; and (3) refrain from tampering or reverse engineering the device or transferring it to third-parties.

---

[1]Both parties improperly refer to materials beyond pleadings. These materials are not considered on defendants' Rule 12(b)(6) motion. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002)

LifeWatch acquired two CardioNet MCOTs by obtaining false prescriptions for LifeWatch employees Lehman and Ament.  On or about September 11, 2007, LifeWatch employee/contractor Dr. Konarzewska prescribed the MCOT for Lehman and Ament.  CardioNet provided devices to Lehman and Ament for diagnostic tests.  Lehman and Ament paid cash for the tests, and agreed that they would return the MCOTs to CardioNet immediately after monitoring was completed.

On October 26, 2007, while using the MCOT, Lehman faked a heart attack using a cardiac simulator.  The MCOT sent a signal to CardioNet's monitoring center, which contacted emergency rescue personnel to visit Lehman's home.  However, there was no emergency – the cardiac event was merely staged.

Lehman and Ament failed to timely return their MCOT kits.  Lehman returned the MCOT on November 15, 2007.  Ament, however, repeatedly claimed she lost her MCOT.  As a result, CardioNet's counsel issued cease and desist letters to LifeWatch and Dr. Konarzewska to demand return of the MCOT kit.  LifeWatch's counsel admitted that the company had the MCOT kit.  Counsel stated that it was investigating whether CardioNet infringed on LifeWatch's proprietary rights.  LifeWatch eventually allowed a CardioNet representative to pick up the MCOT.  CardioNet claims defendants improperly acquired the MCOT kits to obtain confidential, proprietary, and trade secret information.  Defendants do not dispute that the **data** contained in the MCOT kits are allegedly protectable trade secrets, but argue that the alleged "confidential or proprietary" information also rises to the level of a trade secret.

**III.    DISCUSSION**

      **A.    Preemption Under the ITSA**

3

Defendants argue CardioNet's conversion (Count II), fraud (Count III), intentional interference with contract (Count V), and unfair competition (Count VII) claims are subject to dismissal under ITSA preemption. They assert that each of those claims rests on the same conduct giving rise to CardioNet's trade secret misappropriation claim.

The ITSA abolishes claims arising from misappropriated trade secrets, other than those based on contract. 765 ILCS 1065/8;[2] *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005). Illinois courts have had very little to say about ITSA preemption. *See Hecny*, 430 F.3d at 404. The parties cite to non-binding federal district cases applying ITSA preemption, but fail to identify any Illinois authority. Based on a review of other states' decisions interpreting the Uniform Trade Secrets Act of 1985 (on which the ITSA is based), the Seventh Circuit counseled in *Hecny* that claims are foreclosed by the ITSA only when they rest on conduct that allegedly misappropriates trade secrets. *Id.* at 405. In other words, ITSA preemption "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information." *Id.* (citation omitted). Claims not based on trade secret misappropriation are permissible. *See Charles Schwab & Co., Inc. v. Carter, et al.*, No. 04 C 7071, 2005 WL 2369815, at *4 (N.D. Ill. Sept. 27, 2005) (St. Eve., J.) (citation omitted).

### 1.    Conversion

To state a claim for conversion under Illinois law, CardioNet must allege: (1) it has a right to the property; (2) it has an absolute and unconditional right to the immediate possession of

---

[2]The ITSA preemption provision provides: "(a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret. (b) This Act does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret. . . [or]; (2) other civil remedies that are not based upon misappropriation of a trade secret." 765 ILCS 1065/8

the property; (3) it made a demand for possession; and (4) defendants wrongfully and without authorization assumed control, dominion, or ownership over the property. *See Cirrincione v. Johnson*, 184 Ill.2d 109, 114, 703 N.E.2d 67, 70, 234 Ill.Dec. 455 (Ill. 1998). Although defendants assert that CardioNet only pleads conversion of information, CardioNet alleges defendants converted two property items: the MCOT kits *and* trade secret information. Sec. Am. Compl. ¶¶ 28, 49.

CardioNet's claim that defendants converted its MCOT kits is not subject to preemption because the conversion claim is not based on the misappropriation of trade secrets. *See, e.g., Dick Corp. v. SNC-Lavalin Constr., Inc.*, No. 04 C 1043, 2004 WL 2967556, at *10-11 (N.D. Ill. Nov. 24, 2004) (Aspen, J.) (conversion claim preempted only to extent it was premised on misuse of confidential information); *Charles Schwab*, 2005 WL 2369815, at *4-5 (separate conversion claim not preempted). Rather, the claim is based on defendants' misappropriation of the MCOT kits themselves. The MCOT kits have intrinsic value apart from the information it contains. The kits are not for sale, are CardioNet's central product, and are available only through limited means. Sec. Am. Compl. ¶ 12; *compare Dick Corp.*, 2004 Wl 2967556, at *11 (conversion of tangible items preempted under ITSA because they had little value outside of intrinsic ideas); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 973 (N.D. Ill. 2000) (Moran, J.) (same). Accordingly, CardioNet's conversion claim with respect to the MCOT kits is not preempted.

However, CardioNet's conversion claim is preempted to the extent it alleges conversion of confidential, proprietary, and trade secret information derived from the contents of the MCOT kits. This aspect of CardioNet's claim is merely a restatement of its trade secret

misappropriation claim. CardioNet argues it is premature to preempt its conversion claim because the claim encompasses converted trade secrets *and* non-trade secrets. Beyond CardioNet's bare-bones allegation that defendants converted "confidential and proprietary" information, CardioNet fails to allege any non-trade secrets at issue with respect to the contents of the kits.

CardioNet alleges defendants converted information contained in the MCOT device. Sec. Am. Compl. ¶¶ 18-19, 25, 33. The information was comprised of technical engineering data that CardioNet expended significant resources developing and protecting from its competitors. *Id.* ¶¶ 18-19. This data falls squarely in the ITSA's definition of a trade secret:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d);[3] *see also Universal Imagine Print Group, LLC v. Mullen*, No. 07 C 6720, 2008 WL 62205, at \*2 (N.D. Ill. Jan. 4, 2008) (Kocoras, J.). To the extent CardioNet claims defendants converted its trade secrets in MCOT data, the claim is subject to ITSA preemption. *See, e.g., Sys. Am., Inc. v. Providential Bancorp, LTD*, No. 05 C 2161, 2006 WL 463314, at \*6-7

---

[3]Additional common law factors are significant in determining whether a trade secret exists: (1) the extent to which the information is known outside of CardioNet's business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by CardioNet to guard the secrecy of the information; (4) the value of the information to CardioNet and to its competitors; (5) the amount of effort or money expended by CardioNet in developing the information; and (6) the ease or difficulty with which the information could be properly acquired and duplicated by others. *Delta Med. Sys. v. Mid-Am. Med. Sys.*, 331 Ill.App.3d 777, 791, 772 N.E.2d 768, 780, 265 Ill.Dec. 397, 409 (Ill. App. Ct. 2002) (internal citations and quotations omitted).

(N.D. Ill. Feb. 24, 2006) (St. Eve, J.) (preempting conversion claim); *AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 921-22 (N.D. Ill. 2001) (Moran, J.) (same).

### 2. *Fraud*

To state a claim for fraud, CardioNet must allege: (1) a false statement of material fact; (2) defendants' knowledge that the statement was false; (3) defendants' intent that the statement induce CardioNet to act; (4) CardioNet's reliance upon the truth of the statement; and (5) CardioNet's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 497, 675 N.E.2d 584, 591, 221 Ill.Dec. 389 (Ill. 1996).

CardioNet alleges two types of harm in its fraud claim. First, it alleges fraud with respect to defendants' improper acquisition of the MCOT kits. CardioNet claims defendants crafted a plan to falsely prescribe the kits to Lehman and Ament in order to obtain and retain the kits beyond the allotted time. Because the harm of fraudulently obtaining the kits is separate and independent from the harm of obtaining trade secrets, the fraud claim with respect to the MCOT kits is not preempted. *Cf. J.D.Chapman Group, Ltc. v. Chapman, et al.*, No. 95 C 7716, 1996 WL 89075, at *3 (N.D. Ill. Feb. 28, 1996) (Conlon, J.) (dismissing breach of fiduciary duty claim only to extent it was based on allegedly misappropriated trade secrets).

Second, CardioNet alleges defendants fraudulently appropriated trade secret information contained *in* the MCOT kits. These allegations rest on the same conduct that is essentially misappropriation of trade secrets and are preempted by the ITSA. *See, e.g., C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, No. 05 C 3401, 2005 WL 3077998, at *7 (N.D. Ill. Nov. 16, 2005) (St. Eve, J.) (preempting fraud claim based on misappropriation of trade secrets); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, at *9-10 (N.D.

7

Ill. July 23, 2004) (Pallmeyer, J.) (same). Accordingly, Count III is dismissed to the extent it alleges defendants committed fraud by misappropriating CardioNet's trade secrets involving the information contained in the MCOT kits.

### 3. Intentional Interference with Contract

In order to state a cause of action for tortious interference with a contract, CardioNet must allege: (1) the existence of a valid and enforceable contract between CardioNet and a third party; (2) LifeWatch's awareness of the contract; (3) LifeWatch's intentional and unjustified inducement of a breach; (4) LifeWatch's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages. *Kehoe v. Saltarelli*, 337 Ill.App.3d 669, 676-77, 272 Ill. Dec. 66, 786 N.E.2d 605, 612 (Ill. App. Ct. 2003). CardioNet claims LifeWatch intentionally interfered with an "Assignment of Benefits and Services Agreement" it entered with Lehman and Ament. The agreement provided that all users of the MCOT device would not "provide access to, tamper with, modify, distribute . . . transfer, disassemble, or reverse engineer or create a derivative work of the System or Service." Sec. Am. Compl. ¶ 16. CardioNet alleges that Lehman and Ament breached this provision at the behest of their employer, LifeWatch. Defendants argue, however, that this interference of contract claim fails because it is also based on trade secret misappropriation.

CardioNet's interference with contract claim is not subject to ITSA preemption. *See, e.g., IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 586-87 (7th Cir. 2002) (Indiana Uniform Trade Secret Act did not preempt plaintiff's claim that competitor tortiously induced customer to breach confidentiality agreement). The tort alleged here is not the misappropriation of a trade secret, but rather the interference with Lehman and Ament's underlying contract with CardioNet.

CardioNet's interference of contract claim does not depend on the existence of a trade secret. *Hecny*, 430 F.3d at 405. Accordingly, dismissal of CardioNet's interference of contract claim is unwarranted.

### 4.    Unfair Competition

CardioNet's unfair competition claim is preempted because it is based on the trade secrets misappropriation claim. Construing the complaint in CardioNet's favor, its unfair competition claim inextricably depends on the allegation that defendants "possess[ed] and use[d]. . . information obtained from examination and testing of the two MCOT kits." Sec. Am. Compl. ¶ 77. Accordingly, CardioNet's unfair competition claim is preempted under the ITSA. *See, e.g., C.H. Robinson*, 2005 WL 3077998, at * 7 (preempting unfair competition claim); *Seaga Mfg, v. Fortune Metal, Inc.*, No. 99 C 50332, 2001 WL 1196184, at *2 (N.D. Ill. Oct. 10, 2001) (Reinhard, J.) (same).

### B.    Computer Fraud and Abuse Act

Defendants argue CardioNet's CFAA claim should be dismissed because CardioNet merely parrots the CFAA language without alleging "damage" as required by the CFAA. 18 U.S.C. Sec. 1030 (a)(5)(A). The CFAA defines damage as "any impairment to the integrity or availability of data, a system, or information." 18 U.S.C. § 1030(e)(8). CardioNet must allege facts indicating that the "completeness, useability, or availability of [the plaintiff's] data was impaired." *Garelli Wong & Assocs., Inc. v. Nichols*, No. 07 C 6227, 2008 WL 161790, at *6 (N.D. Ill. Jan. 16, 2008) (Kocoras, J.) (citing *Worldspan, L.P. v. Orbitz, LLC*, No. 05 C 5386, 2006 WL 1069128, at *5 (N.D. Ill. Apr. 19, 2006) (Grady, J.).

9

Contrary to defendants' characterization, CardioNet has set forth sufficient allegations to withstand dismissal. CardioNet alleges that data on its monitor and the monitoring center were compromised when defendants transmitted simulated cardiac signals to the CardioNet monitoring center. Sec. Am. Compl. ¶¶ 35-36. As a result of this improper use, CardioNet claims its system of monitoring legitimate patients was impaired, and required CardioNet to undertake "investigative and remedial measures." *Id.* ¶¶ 38-39. Broadly construing CardioNet's allegations, dismissal of the CFAA claim is unwarranted. *See, e.g., I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 525 (S.D.N.Y. 2004) (plaintiffs sufficiently pleaded damage to evade dismissal).

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part. Count VII is dismissed in its entirety. Counts II and III are dismissed to the extent they allege defendants converted and fraudulently misappropriated information contained in the MCOT kits.

ENTER:

Suzanne B. Conlon

Suzanne B. Conlon
United States District Judge

February 27, 2008