IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARDIONET, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 07 C 6625 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| LIFEWATCH CORP., HANNA ) | |
| KONARZEWSKA, M.D., JOEL LEHMAN ) | |
| and LISA AMENT, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| LIFEWATCH CORP., ) | |
| ) | |
| Counter-plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CARDIONET, INC., ) | |
| ) | |
| Counter-defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Counter-plaintiff LifeWatch Corp. ("LifeWatch") sues counter-defendant CardioNet, Inc. ("CardioNet") for trade secret misappropriation under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* (Count I), violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/2 (Count III), violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/2 (Count IV), interference with expectation of business relationships (Count V), and unfair competition (Count VI). CardioNet moves to dismiss Counts II, III, IV, V, and VI. For the reasons stated below, CardioNet's motion is granted in part.

**I.      MOTION TO DISMISS STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a counterclaim on the basis of a failure to state a claim on which relief can be granted. In ruling on the motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in LifeWatch's favor. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). The counterclaim must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). LifeWatch need only provide enough detail to give CardioNet fair notice of its claims, show that the claims are plausible, rather than merely speculative, and that relief is warranted. *EEOC v. Concentra Health Care Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1964 (further citations omitted)).

## II.   BACKGROUND

CardioNet and LifeWatch are competitors that make heart monitoring devices. In January 2007, LifeWatch launched a heart monitoring device called the LifeStar Ambulatory Cardiac Telemetry (the "LifeStar ACT") in the United States. The LifeStar ACT is comprised of wireless sensors worn by patients and a cellular phone that monitors a patient's heart rhythm. If irregular heart events occur, the LifeStar ACT transmits data to a LifeWatch service center for analysis and response.

The LifeStar ACT is not sold to users; rather, it is only prescribed to patients. LifeWatch and affiliated companies have expended significant time and resources in developing and protecting the confidential, proprietary, and trade secret software that makes up the LifeStar ACT system.

In June 2007, a physician improperly arranged to have a LifeStar ACT system delivered to CardioNet's CEO in San Diego, California. Without LifeWatch's knowledge, CardioNet's CEO, its head of research, and its head of product development, examined and tampered with the LifeStar ACT device. They took detailed photographs of it, copied written materials, removed the circuit board and shielding material from the sensor, and performed electrical tests.

CardioNet then allowed the device to be delivered to the patient for whom it was prescribed. The device was eventually returned to LifeWatch for circulation to other patients. CardioNet did not inform LifeWatch that it tampered with the device, and denied ever doing so. CardioNet used the information obtained from inspection of the LifeStar ACT to develop the next generation of its competing device.

CardioNet also used information it learned from the device to further its marketing strategy. CardioNet misrepresented in advertisements and statements to physicians and governmental and private third party insurers that (1) its device was the only FDA approved and Medicare reimbursed arrhythmia detection and alarm system; (2) the LifeStar ACT device did not and could not meet the FDA's requirements for approval of an arrhythmia detection and alarm system; and (3) its device was superior and/or safer than the LifeStar ACT device. LifeWatch contends these statements were false and misleading because the LifeStar ACT had and has FDA approval, and the statements wrongfully suggest that the LifeStar ACT is less safe or reliable than CardioNet's device.

CardioNet moves to dismiss LifeWatch's counterclaims premised on false and misleading advertisements (Counts II-VI). CardioNet advances the following: (1) LifeWatch failed to plead required elements of its Lanham Act and intentional interference claims; (2) LifeWatch's

3

statutory claims are a species of fraud and do not satisfy Rule 9(b)'s particularity requirements; (3) allegations that CardioNet's device is "superior," more "reliable" or "safer" than LifeWatch's are non-actionable puffery; and (4) allegations regarding FDA requirements for the parties' medical devices fail because they are not subject to consumer fraud statutes.[1]

## III.   DISCUSSION

### A.   Rule 9(b)

CardioNet argues LifeWatch's Lanham Act, IUDTPA, and ICFA counterclaims (Counts II-IV) are insufficient to state a claim. However, the sufficiency of the allegations cannot be properly assessed because the claims fail to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) (Zagel, J.) (citations omitted). IUDTPA and ICFA claims sounding in fraud must also meet the pleading requirements of Rule 9(b). *Id.* (ICFA claim); *Am. Top English, Inc. v. Lexicon Mktg. (USA), Inc.*, No. 03 C 7021, 2004 WL 1403695, at *4-5 (N.D. Ill. June 21, 2004) (Conlon, J.) (ICFA claim); *Gold v. Golden G.T., LLC*, No. 05 C 288, 2005 WL 2465815, at *6 (N.D. Ill. Oct. 4, 2005) (Filip,

---

[1] CardioNet improperly refers to materials beyond the pleadings, which are not considered on a Rule 12(b)(6) motion. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002). CardioNet also requests judicial notice of two documents indicating that the FDA approved the LifeStar ACT device as an arrhythmia detector and alarm on December 18, 2007. Because judicial notice is unnecessary in resolving CardioNet's motion, the questionable request is moot.

J.) (ICFA and IUDTPA claims); *Nakajima All Co., Ltd. v. SL Ventures Corp.*, No. 00 C 6594, 2001 WL 641415, *6-7 (N.D. Ill. June 4, 2001) (Gettleman, J.) (ICFA and IUDTPA claims).[2]

LifeWatch's argument that Rule 9(b) does not apply to its IUDTPA and ICFA claims because they do not sound in fraud is belied by its allegations. LifeWatch alleges that after CardioNet inspected the LifeStar ACT device, CardioNet knowingly and deliberately made misrepresentations in its marketing strategy. Countercl. ¶ 28. LifeWatch contends that CardioNet falsely misled physicians and third party insurers into believing that: (1) its device was the only FDA approved and Medicare reimbursed arrhythmia detection and alarm system; (2) the LifeStar ACT device did not and could not meet the FDA's requirements for approval of an arrhythmia detection and alarm system; and (3) its device was superior and/or safer than the LifeStar ACT device. Because these allegations sound in fraud, Rule 9(b)'s specificity requirements apply to LifeWatch's IUDTPA and ICFA counterclaims. *See, e.g., Nakajima*, 2001 WL 641415, at *6-7 (Rule 9(b) applies to allegations of false or misleading advertisements/statements that sound in fraud).

Under Rule 9(b), LifeWatch's Lanham Act, IUDTPA, and ICFA counterclaims must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). In other words, LifeWatch must plead the "who,

---

[2]Under Illinois law, ICFA claims must also be pleaded with the same specificity as common law fraud claims. *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 857, 658 N.E.2d 1325, 1335, 213 Ill.Dec. 304, 314 (Ill. App. Ct. 1995) (citations omitted).

what, when, and where of the alleged fraud." *Uni\*Quality, Inc. v.. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The absence of essential details renders these counterclaims deficient.

LifeWatch does not identify *who* made false and misleading statements, *when* they were made, *where* they were made, or the medium in which they were made. The particulars of the false and misleading statements are also absent. For example, LifeWatch's bare-bones allegation that CardioNet "advertised and made other statements . . . to the effect that its device is superior to and/or safer that then LifeStar ACT device" merely alleges that unspecified advertisements *had the effect* of implying that CardioNet's device was superior and safer. Countercl. ¶ 31. These nebulous allegations fall short of Rule 9(b)'s requirements. *See, e.g., Nakajima*, 2001 WL 641415, at *6-7. CardioNet and the court are left to speculate what specific advertisements and statements underlie LifeWatch's claims. Accordingly, counterclaims II-IV are dismissed.

### B. State Common Law Claims

#### 1. *Intentional Interference With Expectation of Business Relationships*

CardioNet argues LifeWatch's intentional interference with expectation of business relationships counterclaim should be dismissed because LifeWatch did not identify any specific relationships subjected to interference. To state a claim for tortious interference with a prospective economic advantage, LifeWatch must allege: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional and malicious interference inducing or causing a breach of termination of the relationship or expectancy; (4) resultant damage to the party whose relationship has been disrupted. *Small v. Sussman*, 306 Ill.App.3d 639, 648, 239 Ill.Dec. 366, 713 N.E.2d 1216 (Ill. App. Ct. 1999). The acts that form the basis of tortious interference must

6

be directed at parties other than CardioNet. *Cont'l Mobile Tel. Co., Inc. v. Chicago SMSA Ltd. P'ship*, 225 Ill. App. 3d 317, 325, 167 Ill.Dec. 554, 587 N.E.2d 1169 (Ill. App. Ct. 1992). Although LifeWatch contends that CardioNet must *specifically* identify a third party with which it had a potential business relationship, LifeWatch may alternatively allege a prospective class of third parties against whom the conduct was directed. *See Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 529, 137 Ill.Dec. 409, 546 N.E.2d 33 (Ill. App. Ct. 1989).

Construing allegations in its favor, LifeWatch alleges CardioNet's false and misleading advertisements were directed toward physicians, private insurers, and Medicare reimbursement providers – the targeted consumers of their LifeStar ACT product. This constitutes a prospective class of third parties adequate to give CardioNet notice of its claim. *See, e.g., Russian Media Group, LLC v. Cable Am., Inc.*, No. 06 C 3578, 2008 WL 360692, *5 (N.D. Ill. Feb. 7, 2008) (Darrah, J.) (allegations that defendants' conduct was directed against third party consumers was sufficient to withstand dismissal).

LifeWatch also adequately pleads independent wrongful conduct to withstand dismissal of its intentional interference counterclaim. LifeWatch alleges CardioNet intentionally interfered with its prospective relationships by knowingly issuing false and misleading statements to limited consumers of the LifeStar ACT device. This allegation of wrongdoing is sufficient to give CardioNet notice of its intentional interference claim. *See, e.g., Conditioned Ocular Enhancement*, 458 F. Supp. 2d at 712 (intentional interference claim adequately pleaded under Rule 8(a)).

### 2. *Unfair Competition*

Illinois courts have not specifically enumerated the elements of the common law tort of unfair competition. *See Gorgonz Group, Inc. v. Marmon Holdings, Inc.*, No. 00 C 2992, 2001 WL 103406, *3-4 (N.D. Ill. Jan. 30, 2001) (Kennelly, J.) (citing *Custom Bus. Sys., Inc. v. Boise Cascade Corp.*, 68 Ill. App. 3d 50, 52, 385 N.E.2d 942, 944 (Ill. App. Ct. 1979)). However, the allegations underlying a claim of tortious interference with prospective economic advantage also suffice to state a claim for unfair competition. *Id.*; *see also Zenith Elec. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1997 WL 223067, at *5 (N.D. Ill. Mar. 27, 1997) (Manning, J.). Because LifeWatch adequately alleges intentional interference, LifeWatch's unfair competition claim is sufficient as well.

## IV. CONCLUSION

For the foregoing reasons, CardioNet's motion to dismiss is granted in part. Counts II, III, and IV of LifeWatch's counterclaims are dismissed.

ENTER:

*[signature]*
Suzanne B. Conlon
United States District Judge

February 27, 2008